# EXHIBIT A

# STATE COURT FILE

Fax Server          1/17/2018 3:49:12 PM   PAGE   1/001   Fax Server

To: Civil Fas Filing Regular Alameda Count   Page 4 of 12 2018-01-04 21:52:19 (GMT)          14152761902 From: Matthew Mellen

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WELLS FARGO BANK, N.A., a business entity; and DOES 1 through 50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JOSEPH WYMAN, an individual, individually and on behalf of all those similarly situated; LISA WYMAN, an individual

| FOR COURT USE ONLY |
|---|
| *(SOLO PARA USO DE LA CORTE)* |
| **FILED BY FAX** |
| ALAMEDA COUNTY |
| January 04, 2018 |
| CLERK OF THE SUPERIOR COURT |
| By Dajuana Turner, Deputy |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. *AVISO:* Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Alameda County Superior Court<br>1225 Fallon Street, Oakland, CA | CASE NUMBER:<br>*(Número del Caso):*<br>**RG18889478** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Matthew Mellen; One Embarcadero Ctr., 5th Fl., San Francisco, CA 94111; 415-315-1653

| DATE:<br>*(Fecha)* January 04, 2018 | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Wells Fargo Bank, N.A., a business entity

under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Fax Server          1/17/2018 3:48:01 PM  PAGE   1/001   Fax Server

To: Civil Fas Filing Regular Alameda Count   Page 2 of 12  2018-01-04 21:52:19 (GMT)          14152761902 From: Matthew Mellen

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): Matthew Mellen (Bar No. 233350) | FOR COURT USE ONLY |
|---|---|
| MELLEN LAW FIRM<br>One Embarcadero Ctr., 5th Fl.<br>San Francisco, CA 94111<br>TELEPHONE NO: 415-315-1653   FAX NO: 415-276-1902<br>ATTORNEY FOR (Name): Joseph Wyman and Lisa Wyman | **FILED BY FAX**<br>ALAMEDA COUNTY<br><br>January 04, 2018<br><br>CLERK OF<br>THE SUPERIOR COURT<br>By Dajuana Turner, Deputy<br><br>CASE NUMBER:<br>**RG18889478** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA
BRANCH NAME:

CASE NAME:
Wyman v. Wells Fargo Bank, N.A.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ✓ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter  ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ✓ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint (not specified above) (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition (not specified above) (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ✓ is  ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☐ monetary  b. ✓ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action (specify): 1
5. This case ✓ is  ☐ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: January 4, 2018
Matthew Mellen
_____        ► _____
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

Exhibit A - Page 8

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
            or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]                    **CIVIL CASE COVER SHEET**                    Page 2 of 2

1  Matthew D. Mellen (Bar No. 233350)
2  MELLEN LAW FIRM
   One Embarcadero Center, Fifth Floor
3  San Francisco, CA 94111
   Telephone:   (415) 315-1653
4  Facsimile:   (415) 276-1902

5  Attorney for Plaintiffs,
   JOSEPH WYMAN
6  LISA WYMAN

**FILED BY FAX**
ALAMEDA COUNTY

January 04, 2018

CLERK OF
THE SUPERIOR COURT
By Dajuana Turner, Deputy

CASE NUMBER:
**RG18889478**

7
8              **SUPERIOR COURT OF THE STATE OF CAIFORNIA**

9                            **ALAMEDA COUNTY**

10  JOSEPH WYMAN, an individual, individually     Case No.:
    and on behalf of all those similarly situated;
11  LISA WYMAN, an individual                     **COMPLAINT FOR DAMAGES AND**
                                                  **EQUITABLE RELIEF**
12              Plaintiffs,
                                                  1.  Violation of Civil Code § 2966
13      vs.

14  WELLS FARGO BANK, N.A., a business
    entity; and DOES 1 through 50, inclusive,     **CLASS ACTION**
15                                                (CCP § 378)
                Defendants.
16                                                **DEMAND FOR JURY TRIAL**

17
18      COMES NOW PLAINTIFFS, JOSEPH WYMAN and LISA WYMAN, who allege as
    follows:

19                        **PRELIMINARY ALLEGATIONS**

20  1.      In the case at hand, Defendants transformed Plaintiffs' fully amortizing loan into a

21  balloon-payment loan without providing Plaintiffs notice of their newly acquired balloon-

22  payment, as required by California law. Specifically, Defendant modified Plaintiffs' loan by

23  creating a "New Principal Balance" and then breaking down the "New Principal Balance" into a

24  "Secondary Principal Balance" and an "Interest Bearing Principal Balance". However, the loan

25  agreement wholly fails to place Plaintiffs on notice that they would be responsible for a balloon

26  payment at loan maturity, as required by California law.

27  2.      Plaintiffs believe that this conduct is an unlawful business practice by Defendant

28  warranting class action treatment. This lawsuit follows.

                                    1
                    COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**JURISDICTION AND VENUE**

3.      This is an action asserting violations of California State Law.  Plaintiffs are adult residents of Alameda County and bring this action as a result of Defendant's misconduct relating to an ongoing mortgage relationship with Defendant for the property located at 4903 Stoneridge Court, Oakland, CA 94605.

4.      This court has personal jurisdiction over the parties as Defendants engage in business within the State of California and in the City of Oakland and County of Alameda.

5.      Venue is proper in this Court because a substantial part of the events giving rise to the claims herein occurred in the City of Oakland and County of Alameda.  Venue is therefore proper in Alameda, County.

**PARTIES**

6.      Plaintiffs JOSEPH WYMAN and LISA WYMAN ("Plaintiffs") are adult residents of Alameda County. Plaintiffs are the owners of the Property located at 4903 Stoneridge Court, Oakland, CA 94605 (the "Property").

7.      The term "the Class" includes Plaintiffs and all class members.

8.      Plaintiffs are individuals residing in California, as are all members of the Class.

9.      Plaintiffs and the Class are all identifiable, similarly situated persons whose loans were modified into balloon-payment loan agreements without being notified of the creation of a balloon payment by a loan modification agreement.

10.     Plaintiffs are informed and believe and thereon allege that Defendant Wells Fargo Bank, N.A. (hereafter "Wells Fargo") , is diversified financial marketing and/or services company engaged in residential mortgage banking and/or related businesses Plaintiffs are informed and believe and thereon allege that Defendant Wells Fargo is the current owner and/or servicer of Plaintiffs' loan for the property located at 4903 Stoneridge Court, Oakland, CA 94605 (the "Property"). Plaintiffs are informed and believe and thereon allege that Defendant Wells Fargo regularly conducts business in Alameda County, California.

11.     Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, each of the Defendants was acting as the agent, servant, employee, partner, co-conspirator, and/or

2

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

joint venture of each of the remaining Defendants, and was acting in concert with each remaining

Defendant in doing the things herein alleged, and, additionally has inherited any violations and/or

the liability of their predecessors-in-interest, and has also passed on liability to their successors-

in-interest, and at all times was acting within the course and scope of such agency, employment,

partnership, and/or concert of action.

## STATEMENT OF FACTS

12.     In or around August 2006, Plaintiffs purchased the Property, obtaining financing for the

purchase with Wells Fargo Bank, N.A.  To secure financing, Plaintiffs executed a Promissory

Note and Deed of Trust in favor of Defendant Wells Fargo.

13.     Plaintiffs' August 2006 loan was an Adjustable Rate mortgage loan, which fully

amortized over thirty years. The last scheduled payment for the loan was in September 1, 2036.

14.     In February 2012, Plaintiffs' received a loan modification.

15.     Section 1 of the loan modification provides:

        "As of FEBRUARY 9, 2012, the new amount payable under the Note and the

        Security Instruments U.S. $722,770.50 ("New Principal Balance"), consisting of

        the unpaid amount(s) loaned to Borrower by Lender plus any interest and other

        amounts capitalized with this modification. $30,659.32 of the New Principal

        Balance shall be deferred (the "Secondary Principal Balance") and I will not pay

        interest or make monthly payments on this amount.

16.     Section 2 of the loan modification provides:

        "Borrower promises to pay U.S. $692,118.18 (the "Interest Bearing Principal

        Balance"), plus interest, to the order of Lender. Interest will be charged on the

        Interest Bearing Principal Balance less any principal reduction due to payments

        from Borrower at the yearly rate of 6.5000% from FEBRUARY 1, 2012. The

        interest rate Borrower will pay will change 60 months from the date of the Loan

        Modification Agreement. Borrower promises to pay monthly payments of

        INTEREST ONLY U.S. $3,748.94, beginning MARCH 1, 2012 until

        FEBRUARY 1, 2017.  Effective FEBRUARY 1, 2017, interest will be charged on

3
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1  the Interest Bearing Principal Balance from the Borrower at the yearly rate of

2  6.5000% and the Borrower promises to pay monthly payments of INTEREST

3  ONLY of U.S. $3,748.94, beginning on MARCH 1, 2017 until the EXPIRATION

4  OF THE INTEREST ONLY PERIOD on OCTOBER 1, 2016 (the "Conversion

5  Date"), which is in accordance with the Note.  As of the Conversion Date, the

6  original terms regarding the determination of the interest only rate and monthly

7  payment will change in accordance with the terms of the Note. Borrower will

8  continue to make monthly payments on the same day of each succeeding month

9  until principal and interest are paid in full, except that, if not sooner paid, the final

10  payment of principal and interest are payable on SEPTEMBER 1, 2036 (the

11  "Maturity Date").

12  17.   Section 3 of the Loan Modification Agreement provides:

13  Borrower promises to pay the Secondary Principal Balance without interest

14  thereon, to the order of the Lenders and any other amounts still owed under the

15  Note and Security Instrument by the earliest of the date I sell or transfer an

16  interest in the property or am in default.

17  18.   Section 4 of the Loan Modification Agreement provides:

18  If on the Maturity Date, Borrower still owes amounts under the Note and Security

19  Instrument, as amended by this Agreement, Borrower will pay these amounts in

20  full on the Maturity Date

21  19.   The loan modification agreement makes no other reference to the amounts due on the

22  maturity date.

23  **CLASS ACTION ALLEGATIONS**

24  20.   Plaintiffs bring this action on behalf of themselves and all others similarly situated.

25  Therefore, under California Code of Civil Procedure §378, Plaintiffs will ask the Court to certify

26  the following Class defined as: all persons residing in California in a contractual relationship with

27  Defendant, subject to California law, who received balloon payment loan modifications which in

28

4
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1   which the loan modification agreement did not contain the requisite balloon payment notice

2   require by California Civil Code § 2966.

3   1.   This claim is particularly well-suited for class treatment because of the following:

4          (a)   Predominance: The applicability of Civil Code §2966 is universal to balloon

5                payment mortgage loans under California law. Therefore, questions of law and fact

6                common to the Class predominate over the questions affecting only individual

7                members of the Class.

8          (b)   Superiority: A class action is superior to other available means for the fair and

9                efficient adjudication of this dispute. Additionally, effective redress for each and

10               every class member against Defendant, in his or her own lawsuit, would be

11               difficult or unlikely because of the difficulty in finding or affording competent

12               counsel in this field of law and the cost of individual lawsuits would be

13               prohibitive. Even if individual class members could afford or justify the

14               prosecution of their separate claims, the court system may not be up to the task.

15               Individualized litigation may lead to incongruous and conflicting judgments

16               against Defendant.  To the contrary, a class action procedure involving all class

17               members, Defendant and the court present fewer management difficulties, and

18               provide the benefit of a single adjudication, economy of scale, and judicial

19               efficiency and fairness  Furthermore, Defendant is in possession of all the names

20               and contact information of individuals whose loans have been modified to include

21               balloon payments.

22         (c)   Numerosity: Defendant services thousands of loans. Plaintiffs are informed and

23               believes that it is standard practice for Defendant to modify mortgage loans into

24               balloon payment loans without providing the requisite notice to borrowers. Thus,

25               the Class involved is so numerous that joinder of all members individually would

26               be impracticable. The precise identities, numbers, and addresses of members of the

27               Class are unknown to Plaintiffs, but are easily known to Defendant.

28         (d)   Commonality: There are questions of law and/or fact that are common to each

5

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

member of the class. The common questions of law and fact are:

(1) Did Defendant include the notice require by Civil Code 2966 in the loan modification agreements it offered for loans which were modified to include balloon payments?

(e) Typicality: Plaintiffs' claims are typical of the claims of the members of the Class because the class is defined as those individuals who suffered from the exact same conduct, namely the modification of a mortgage loan into a balloon payment mortgage loan, without proper notice of the balloon payment. This would be the identical allegation for every other Class member. Plaintiffs and all members of the Class have suffered a similar harm arising from Defendant's violations of law.

(f) Adequacy of Representation: Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs have retained competent counsel for this class action and Plaintiffs intend to prosecute this action vigorously. Counsel for Plaintiffs is experienced in class action jurisprudence, has defended numerous wage and hour class actions successfully, and has successfully obtained certification and litigated to completion a prevailing wage class action. Likewise, counsel for Plaintiffs is extremely experience in mortgage litigation, having represented over one thousand individuals against their lenders in the last seven years. Plaintiffs and their counsel will fairly and adequately protect the interests of all of the members of the Class.

### FIRST CAUSE OF ACTION
### Violation of Civil Code § 2966

21. Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

22. Defendant's conduct, as alleged above, constitutes a violation of Civil Code § 2966.

23. California Civil Code § 2966(d) provides, "[e]very note subject to the provisions of this section shall include the following statement:

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1

2       This note is subject to Section 2966 of the Civil Code, which provides that the

3       holder of this note shall give written notice to the trustor, or his successor in

4       interest, of prescribed information at least 90 and not more than 150 days before

        any balloon payment is due.

5   24.    In August 2006, Plaintiffs purchased the Property, securing the purchase through

6   financing obtained from Wells Fargo Bank. Plaintiffs' original loan was an adjustable rate

7   mortgage loan, which fully amortized over thirty years.

8   25.    In February 2012, Defendant Wells Fargo modified Plaintiffs' loan. However, despite

9   transforming Plaintiffs' loan into a balloon bearing loan agreement, Defendant failed to provide

10  Plaintiffs the notice required by California law.

11  26.    In fact, to date, Defendant has never provided Plaintiffs the noticed required by Civil

12  Code 2966.

13  27.    Pursuant to Cal. Civ. Code § 2966(b), Defendants' failure to provide Plaintiff with the

14  required notice entitles Plaintiff to an extension of the due date for the balloon payment pursuant

15  to the terms of his loan.

16

17              [END OF PAGE INTENTIONALLY LEFT BLANK]

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES

WHEREFORE, Plaintiffs JOSEPH WYMAN and LISA WYMAN demand a trial by jury.

Plaintiffs pray for judgment and order against Defendant, as follows:

1. That judgment is entered in Plaintiffs' favor and against Defendants, and each of them;

2. For an order requiring Defendant to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of the action;

3. For damages, disgorgement, and injunctive relief;

4. For compensatory and statutory damages, attorneys' fees, and costs according to proof at trial;

5. For exemplary damages in an amount sufficient to punish Defendant's wrongful conduct and deter future misconduct;

6. For such other and further relief as the Court may deem just and proper.

DATED: January 4, 2018                      Respectfully Submitted,

                                            MELLEN LAW FIRM


                                            Matthew Mellen, Esq.
                                            Attorney for Plaintiffs
                                            JOSEPH WYMAN
                                            LISA WYMAN

8

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Mellen Law Firm
Attn: Mellen, Matthew
One Embarcadero Center
Fifth Floor
San Francisco, CA  94111____

Wells Fargo Bank N.A.

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Wyman

Plaintiff/Petitioner(s)

VS.

Wells Fargo Bank N.A.

Defendant/Respondent(s)
(Abbreviated Title)

No. RG18889478

NOTICE OF HEARING

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

Complex Determination Hearing
Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE: 03/20/2018    TIME: 03:00 PM    DEPARTMENT: 23
LOCATION:  Administration Building, Fourth Floor
            1221 Oak Street, Oakland

Case Management Conference:
DATE: 04/24/2018    TIME: 03:00 PM    DEPARTMENT: 23
LOCATION:  Administration Building, Fourth Floor
            1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 23 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 267-6939.  Please consult Rule 3.30(c) of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 23.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions.  Case Management Statements may be filed by E-Delivery, by submitting directly to the E-Delivery Fax Number (510) 267-5732.  No fee is charged for this service.  For further information, go to **Direct Calendar Departments** at

13                                    Exhibit A - Page 18

http://apps.alameda.courts.ca.gov/domainweb.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be scheduled for hearing in Department 23.

If the information contained in this notice requires change or clarification, please contact the courtroom clerk for Department 23 by e-mail at Dept.23@alameda.courts.ca.gov or by phone at (510) 267-6939.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request form to (888) 883-2946. This service is subject to charges by the vendor.

Dated: 01/24/2018                    Chad Finke  Executive Officer / Clerk of the Superior Court

                                     By _____
                                                                   Deputy Clerk

---

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

        Executed on 01/24/2018.

                                     By _____
                                                                   Deputy Clerk

**FILED BY FAX**    POS-010

ALAMEDA COUNTY

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Jessica Galletta, 281179<br>Mellen Law Firm<br>One Embarcadero Center, Fifth Floor<br>San Francisco, CA 94111<br>TELEPHONE NO.: (415) 315-1653<br>ATTORNEY FOR *(Name)*: Plaintiff | March 12, 2018<br><br>CLERK OF<br>THE SUPERIOR COURT<br>By Alicia Espinoza, Deputy<br><br>CASE NUMBER:<br>RG18889478 |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF | |
|---|---|
| Superior Court of California, Alameda County<br>24405 Amador Street<br>Hayward, CA 94544 | |

| PLAINTIFF/PETITIONER: Joseph Wyman, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Wells Fargo Bank, N.A., et al. | RG18889478 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

**BY FAX**

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.
2. I served copies of:    Civil Case Cover Sheet, Complaint, Notice of Hearing, Summons

3. a. Party served:  Wells Fargo Bank, N.A., a business entity

   b. Person Served: Steve Cassidy-CSC - Person Authorized to Accept Service of Process

4. Address where the party was served:  2710 N Gateway Oaks Dr, Ste 150
   Sacramento, CA 95833
5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party (1) on (date): 02/16/2018          (2) at  (time): 1:45PM
6. The "Notice to the Person Served" (on the summons) was completed as follows:


   d. on behalf of:

Wells Fargo Bank, N.A., a business entity
under: CCP 416.10 (corporation)
7. **Person who served papers**
   a. Name:       Spenser G. Fritz
   b. Address:    One Legal - 194-Marin
                  504 Redwood Blvd #223
                  Novato, CA 94947

   c. Telephone   415-491-0606
   d. The fee for service was: $ 40.00
   e I am:
      (3) registered California process server.
          (i) Employee or Independent contractor.
          (ii) Registration No.: 2016-05
          (iii) County: Sacramento
8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.
Date: 02/16/2018

Spenser G. Fritz
(NAME OF PERSON WHO SERVED PAPERS)                    (SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California POS-010
[Rev. Jan 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

OL# 11743717

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| **Wyman** | **No. RG18889478** |
| Plaintiff/Petitioner(s) | |
| **VS.** | **Minutes** |
| **Wells Fargo Bank N.A.** | |
| Defendant/Respondent(s) | |
| **(Abbreviated Title)** | |

Department    23                     Honorable  Brad Seligman                , Judge

Cause called for: Complex Determination Hearing on March 20, 2018.

COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of
Court.  Counsel are advised to be familiar with the Alameda County Local Rules concerning complex
litigation, including Rule 3.250 et seq. An order assigning the case to one of the three complex judges and
an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but
has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The
complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER
PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or
jointly, up to a maximum of $18,000 for all adverse parties.  All payments must identify on whose behalf
the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the
Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA  94612.  Please
make check(s) payable to the Clerk of the Superior Court.  Documents may continue to be filed as allowed
under Local Rule 1.9.  Note that for those admitted pro hac vice, there is also an annual fee.  (Gov't Code
section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at
http://www.alameda.courts.ca.gov/domainweb/.   All counsel are expected to be familiar and to comply
with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda
County Superior Court Local Rules.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined
parties defendant not listed on the proof of service of this order and file proof of service. Each party
defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order
on newly joined cross-defendants and to file proof of service.

Minutes of     03/20/2018
Entered on     03/21/2018

          Chad Finke  Executive Officer / Clerk of the Superior Court

**Minutes**

M12045669

By    _____

Deputy Clerk

Mellen Law Firm                                              Wells Fargo Bank N.A.
Attn:  Mellen, Matthew
One Embarcadero Center
Fifth Floor
San Francisco, CA   94111____

---

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

---

| | |
|---|---|
| Wyman | No. <u>RG18889478</u> |
| Plaintiff/Petitioner(s) | |
| VS. | Order |
| | Complaint Other Real Property |
| Wells Fargo Bank N.A. | |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

The Complex Determination Hearing was set for hearing on 03/20/2018 at 03:00 PM in Department 23 before the Honorable Brad Seligman.  The Tentative Ruling was published and has not been contested.

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court.  Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to one of the three complex judges and an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties.  All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA  94612.  Please make check(s) payable to the Clerk of the Superior Court.  Documents may continue to be filed as allowed under Local Rule 1.9.  Note that for those admitted pro hac vice, there is also an annual fee.  (Gov't Code section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/.   All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined

---

Order

parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

Dated:  03/20/2018

facsimile

_____
Judge Brad Seligman

_____
Order

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number:  RG18889478
Order After Hearing Re: of 03/20/2018

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addressed as shown on the foregoing document or on the attached, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed on 03/26/2018.

Chad Finke  Executive Officer / Clerk of the Superior Court

By _____

Deputy Clerk



A.5

*14963149*

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

FILED
ALAMEDA COUNTY

APR 0 9 2018

CLERK OF THE SUPERIOR COURT

By _____
Deputy

| | |
|---|---|
| Wyman, | |
| Plaintiffs | |
| | |
| Wells Fargo Bank N.A. | |
| Defendants | |

Case No.  RG18889478

INITIAL CASE MANAGEMENT ORDER

ASSIGNED FOR ALL PRE-TRIAL
PURPOSES  TO: JUDGE BRAD
SELIGMAN, DEPARTMENT 23

The following order shall apply to all parties in this action:

1.   CASE MANAGEMENT CONFERENCES

At Case Management Conferences the Court will address discovery issues, schedules, and other subjects pursuant to CRC 3.750.  Counsel thoroughly familiar with the case shall attend the Case Management Conferences.  See LRC, Rule 3.290.

At the Initial CCMC, the parties must be prepared to discuss at length the nature of the case, both factually and legally, as well as the projected management of the case at each stage.  This is not a perfunctory exercise.  The primary objective of the CCMC is to develop a comprehensive plan for a just, speedy and economical determination of the litigation.

Case Management Statements may be filed by fax-filing via the designated Fax Number, (510) 267-5732.

However, courtesy copies of statements must be delivered directly to Dept. 23. The filing and delivery date is not later than five court days before the conference.

1

The Court strongly prefers joint CCMC statements prepared in narrative form, and not using Form CM-110, after counsel have met and conferred as required by CRC 3.724. CCMC statements must address the following issues when applicable:

A. A brief factual summary to assist the Court in understanding the background of the case, a statement of the issues presented, including each theory of liability and defense and a summary of the facts supporting each position taken, and the relief sought, including an estimate of damages.

B. The number of parties and their posture, including a proposed structure of representation, (e.g., liaison/lead counsel or by committee) if applicable;

C. Deadlines and limits on joinder of parties and amended or additional pleadings;

D. Class discovery and class certification, if applicable;

E. A proposed schedule for the conduct of the litigation including, but not limited to, a discovery plan, a plan for hearing remaining law and motion, and a projected trial date;

F. An identification of all potential evidentiary issues involving confidentiality or protected evidence;

G. A detailed description of the procedural posture of the case, describing any outstanding procedural problems, including, but not limited to:

(1) unserved parties and the reasons for the failure to serve;

(2) unserved and/or unfiled cross-complaints;

(3) related actions pending in any jurisdiction and the potential for coordination or consolidation;

2

(4)  any possible jurisdictional or venue issues that may arise;

(5)  the status of discovery, including a description of all anticipated discovery and incomplete or disputed discovery issues;

(6)  unresolved law and motion matters;

(7)  requests for, or opposition to, any ADR proceedings, including but not limited to mediation, judicial or contractual arbitration;

(8)  severance of issues for trial; and

(9)  calendar conflicts for any attorney, witness, or party, and any other matter which may affect the setting of a trial date.

H.  Counsel may make suggestions for streamlining the litigation, including, but not limited to, a master file system, designation of lead counsel [for plaintiff(s) and/or defendant(s)] to streamline service of process and/or management of discovery, the use of e-filing, and the use of a web-page maintained by lead counsel for the purpose of posting the litigation schedule and agenda. Counsel may also address ways of structuring the trial of the action such as bifurcation, severance, bell-weather trials, use of special masters, use of expedited jury procedures and/or waiver of jury.

Parties are advised to check the court's register of action before appearing at any case management conference, including the Initial Case Management, at least one day before any scheduled appearance to determine if the court has issued a tentative case management order.  If published, this tentative case management order will become the order of the Court unless counsel or self represented party notifies the Court and opposing counsel/self-represented party by email not less than one court day prior to the CMC that s/he intends to appear in person at the CMC to discuss some aspect of the

3

order, and specifies the nature of the party's concern. (Please note that the Tentative Rulings posted on the website are for tentative rulings on law and motion matters and will not display tentative Case Management Orders. The tentative Case Management Orders are found in the Register of Action). Department 23 may be reached at Dept.23@alameda.courts.ca.gov.

2.  NOTICE OF FEE CHANGES - JURY TRIAL FEE

Effective July 2, 2012, the advance jury fee is fixed at $150.00, and is no longer refundable. With certain exceptions, the jury trial fee is due on or before the date scheduled for the initial case management conference. See, C.C.P. 631(b).

3.  DISCOVERY

Discovery Conference: Motions related to discovery (i.e. motions to compel, protective orders etc.) may not be filed without leave of the court after an informal discovery conference. The discovery conference is not a pro forma step before a motion. Requests for a discovery conference may be made, after meaningful meet and confer, by sending an email to the department clerk, copied to all counsel that briefly describes the issue to be presented, and the extent of parties' meet and confer. The court will provide proposed dates. Parties are to meet and confer as to availability for the proposed dates. If one or more parties are not available on the proposed date(s), additional dates may be requested. Upon request, the court will consider telephonic appearances as well as calls from depositions in progress.

4.  EMAILS TO COURT

Emails to the court are not part of the court record in this case and may be deleted without notice. Email is not a substitute for required filings. Any emails should be

4

copied to all counsel. The Department 23 email may only be used for the following

purposes: to seek a reservation to schedule a proceeding on the court's calendar, to give

notice that a hearing has been dropped or a settlement reached, to request a discovery

conference, emergency scheduling issues (i.e. running late to a hearing), to give notice

that a litigant intends to appear to contest a tentative ruling, to reply to an inquiry from

the clerk or research attorney of Department 23, to communicate with the courtroom

clerk regarding department 23 procedures, or other matters that the court has expressly

authorized in this case.

**5.** Pro Hac Vice Process

The court prefers to resolve pro hac vice applications on the papers only. Before

submitting an ex parte application on the papers, (a) email Dept. 23 to advise when

papers will be filed, and (b) provide CRC 3.1203(a) notice to all parties. Any written

opposition must be filed within 24 hours of receipt of notice. If a matter is time sensitive,

opposition is expected, and/or personal appearances are otherwise warranted, the parties

may request a time for appearance via email to Dept. 23, copied to all parties.

6.  NOTICE

Parties are advised that CASE MANAGEMENT ORDERS, including trial setting

orders, and FINAL RULINGS ON LAW AND MOTION that are issued by Dept. 23 will

be published in the Court's website in the Register of Action for this case.  The clerk of

the court WILL NOT serve each party a copy of future orders.  Instead, unless otherwise

ordered, counsel shall obtain copies of all future orders from the Register of Action in

this case.

SERVICE OF THIS ORDER

5

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service. The clerk is directed to serve a copy of this CASE MANAGEMENT ORDER upon counsel for Plaintiff(s).

DATED: April 9, 2018

_____
BRAD SELIGMAN, JUDGE

---

CLERK'S CERTIFICATE OF SERVICE

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addresses shown below, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Dated:  April 9, 2018

*Maya Greer*
Courtroom Clerk, Dept. 23

▼   Mellen, Matthew
Mellen Law Firm
One Embarcadero Center
Fifth Floor
San Francisco,  CA 94111_____

6

1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2     Including Professional Corporations
  EDWARD D. VOGEL, Cal. Bar No. 110081
3   JOHN C. DINEEN, Cal. Bar No. 222095
  MARK G. RACKERS, Cal. Bar No. 254242
4   501 West Broadway, 19th Floor
  San Diego, California 92101-3598
5   Telephone:  619.338.6500
  Facsimile:  619.234.3815
6   E-mail:      evogel@sheppardmullin.com
             jdineen@sheppardmullin.com
7              mrackers@sheppardmullin.com

8   Attorneys for Defendant
  WELLS FARGO BANK, N.A.
9

ENDORSED
FILED
ALAMEDA COUNTY

APR 1 0 2018

CLERK OF THE SUPERIOR COURT
By: D. OLIVER, Deputy

10         SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                COUNTY OF ALAMEDA

12

| | |
|---|---|
| 13  JOSEPH WYMAN, an individual, individually and on behalf of those 14  similarly situated; LISA WYMAN, an individual, 15 <br><br>        Plaintiffs, 16 <br><br>        v. 17 <br><br>WELLS FARGO BANK, N.A., a business 18  entity; and DOES 1 through 50, inclusive, 19 <br><br>        Defendants. | Case No. RG18889478 <br><br>ASSIGNED FOR ALL PURPOSES TO: JUDGE BRAD SELIGMAN DEPARTMENT 23 <br><br>**DEFENDANT WELLS FARGO BANK'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFFS' COMPLAINT; DECLARATION OF JOHN C. DINEEN IN SUPPORT OF DEMURRER [C.C.P. § 430.41]** <br><br>DATE:  May 22, 2018 <br>TIME:  3:00 p.m. <br>DEPT:  23 <br><br>Reservation No.  R-1952800 <br><br>Complaint Filed: January 4, 2018 |

20

21

22

23

24

25

26

27

28

-1-

Case No. RG18889478
WELLS FARGO BANK'S NOTICE OF DEMURRER AND DEMURRER TO COMPLAINT

1   **TO THE HONORABLE COURT, ALL PARTIES AND THEIR**

2   **ATTORNEYS OF RECORD:**

3        **PLEASE TAKE NOTICE** that on Tuesday, May 22, 2018 at 3:00 p.m., or

4   as soon thereafter as the matter may be heard in Department 23 of the Superior Court of

5   the State of California for the County of Alameda, located at the Administration Building,

6   1221 Oak Street, Oakland, California 94612, Defendant Wells Fargo Bank, N.A. ("Wells

7   Fargo") will bring on for hearing its Demurrer to Plaintiffs Joseph Wyman's and Lisa

8   Wyman's ("Plaintiffs'") complaint pursuant to California Code of Civil Procedure §

9   430.10, *et seq.*  Prior to bringing this demurrer, Wells Fargo complied with its meet and

10  confer obligations under C.C.P. § 430.41.  See Dineen Decl., filed concurrently herewith.

11       Wells Fargo demurs on the grounds that Plaintiffs' sole cause of action for

12  violation of California Civil Code § 2966 fails as a matter of law.  Plaintiffs' action, which

13  alleges that Wells Fargo failed to provide Plaintiffs with a required notice when it modified

14  their loan, fails because it is barred by claim preclusion, it is barred by the applicable

15  statute of limitations, and the notice requirements in section 2966 do not apply to

16  Plaintiffs' loan modification.

17       Wells Fargo's demurrer is based on this Notice of Demurrer and Demurrer,

18  the Memorandum of Points and Authorities filed concurrently herewith, Wells Fargo's

19  Request for Judicial Notice, all pleadings and other papers filed in this case, and such other

20  evidence and argument as may properly be presented to the Court at the hearing on this

21  demurrer.

22  Dated:  April 9, 2018

23       SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

24

25       By

26                 EDWARD D. VOGEL
                  JOHN C. DINEEN

27                Attorneys for Defendant

28                WELLS FARGO BANK, N.A.

-2-

1    **DEMURRER TO PLAINTIFFS' COMPLAINT**

2        Defendant Wells Fargo Bank, N.A. demurs to Plaintiffs' Complaint on the

3    following grounds:

4

5        <u>Demurrer to Plaintiffs' First Cause of Action for Violation of Civil Code §</u>

6    <u>2966</u>:  Plaintiff's first cause of action fails to state facts sufficient to

7    constitute a cause of action against Defendants. Code Civ. Proc. § 430.10(e).

8    Plaintiffs' claim fails to state a cause of action as it is barred by claim

9    preclusion, it is time-barred under Civil Code § 2967, and Civil Code § 2966

10    does not apply to Plaintiffs' loan modification.

11

12    Dated:  April 9, 2018

13                     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

14

15             By                                      

16                     EDWARD D. VOGEL
                 JOHN C. DINEEN

17                     Attorneys for Defendant

18                     WELLS FARGO BANK, N.A.

19

20

21

22

23

24

25

26

27

28

-3-

1    **DECLARATION OF JOHN C. DINEEN**

2    I, John C. Dineen, state and declare as follows:

3    1.    I am a partner in the law firm of Sheppard, Mullin, Richter & Hampton LLP,

4    counsel of record for defendant Wells Fargo Bank, N.A. ("Wells Fargo") in the above-

5    captioned matter.  I am admitted to practice law in California.  Except as expressly noted

6    below, I have personal and firsthand knowledge of the facts set forth herein, and I could

7    and would testify competently thereto if called and sworn as a witness.

8    2.    Plaintiffs Joseph Wyman and Lisa Wyman ("Plaintiffs") served their

9    complaint on Wells Fargo on February 16, 2018.

10    3.    On March 6, 2018, I attempted to call Plaintiffs' counsel to meet and confer

11    regarding their complaint and Wells Fargo's anticipated demurrer, but could not reach

12    Plaintiffs' counsel.  On March 8, 2016, I emailed Plaintiffs' counsel, asking him to provide

13    a convenient time to schedule a call.  Counsel responded, offering to meet and confer on

14    either March 13 or 14.

15    4.    As Plaintiffs' counsel's proposed dates would not have complied with Wells

16    Fargo's meet and confer obligations under C.C.P. § 430.41, counsel agreed to grant Wells

17    Fargo an extension to respond to the complaint so that the parties could meaningfully meet

18    and confer as contemplated by the statute.

19    5.    We continued to exchange emails and agreed to meet and confer on March

20    19, 2018 at 11:00 a.m.

21    6.    Unfortunately, Plaintiffs' counsel had an emergency on March 19, and

22    counsel rescheduled the call for March 21, 2018.

23    7.    On March 21, 2018, counsel for the parties met and conferred regarding

24    Plaintiffs' complaint.  The parties discussed Wells Fargo's grounds for demurrer in

25    significant detail, including Wells Fargo's arguments that the case is barred by claim

26    preclusion, is time-barred under the applicable statute of limitations, and the fact that the

27    notice requirements in Civil Code § 2966 do not apply to Plaintiffs' loan modification.

28    Plaintiffs' counsel informed me that he disagreed with Wells Fargo's position, but would

-4-

1  look into the points I raised and get back to me if Plaintiffs decided to amend or dismiss

2  their complaint.

3      8.    As of the date of this filing, Plaintiffs had not agreed to amend or dismiss

4  their complaint, and Wells Fargo filed this demurrer.

5

6      I declare under penalty of perjury under the laws of California that the

7  foregoing is true and correct.

8      Executed on April 9, 2018, at San Diego, California.

9

10

11  _____

JOHN C. DINEEN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:485827769.3

Case No. RG18889478

WELLS FARGO BANK'S NOTICE OF DEMURRER AND DEMURRER TO COMPLAINT

1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
       A Limited Liability Partnership
2      Including Professional Corporations
    EDWARD D. VOGEL, Cal. Bar No. 110081
3   JOHN C. DINEEN, Cal. Bar No. 222095
    MARK G. RACKERS, Cal. Bar No. 254242
4   501 West Broadway, 19th Floor
    San Diego, California 92101-3598
5   Telephone:    619.338.6500
    Facsimile:    619.234.3815
6   E-mail:        evogel@sheppardmullin.com
                      jdineen@sheppardmullin.com
7                     mrackers@sheppardmullin.com

8   Attorneys for Defendant
    WELLS FARGO BANK, N.A.
9

10                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                             COUNTY OF ALAMEDA

12

13  JOSEPH WYMAN, an individual,              Case No. RG18889478
    individually and on behalf of those
14  similarly situated; LISA WYMAN,           ASSIGNED FOR ALL PURPOSES TO:
    an individual,                            JUDGE BRAD SELIGMAN
15                                            DEPARTMENT 23
                  Plaintiffs,
16                                            **MEMORANDUM OF POINTS AND**
           v.                                 **AUTHORITIES IN SUPPORT OF**
17                                            **DEFENDANT WELLS FARGO BANK,**
    WELLS FARGO BANK, N.A., a business        **N.A.'S DEMURRER TO PLAINTIFFS'**
18  entity; and DOES 1 through 50, inclusive, **COMPLAINT**

19                Defendants.                 DATE:  May 22, 2018
                                              TIME:  3:00 p.m.
20                                            DEPT:  23

21                                            Reservation No. R-1952800

22                                            Complaint Filed: January 4, 2018

23

24

25

26

27

28
                                                        Case No. RG18889478
    SMRH:485647103.6            MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
                               WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................5

II.   FACTUAL AND PROCEDURAL BACKGROUND ...........................6

III.  LEGAL STANDARD ............................................................8

IV.   PLAINTIFFS' ACTION IS BARRED BY *RES JUDICATA*/CLAIM
      PRECLUSION ...................................................................9

V.    PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF
      LIMITATIONS ..................................................................12

VI.   CIVIL CODE SECTION 2966 DOES NOT APPLY TO PLAINTIFFS'
      LOAN MODIFICATION ........................................................13

VII.  CONCLUSION .................................................................17

SMRH:485647103.6

-2-

Case No. RG18889478

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

Cases

Amin v. Khazinder (2003)
    112 Cal.App.4th 582 ...................................................................................12

Boudway v. Fed. Nat. Mortg. Ass'n (S.D.Cal. Dec. 18, 2013)
    2013 WL 6730204 .....................................................................................13

Busick v. Workmen's Comp. Appeals Bd. (1972)
    7 Cal.3d 967 ..............................................................................................10

C.R. v. Tenet Healthcare Corp. (2009)
    169 Cal.App.4th 1094 .................................................................................9

Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn. (1998)
    60 Cal.App.4th 1053 .................................................................................10

Day v. Sharp (1975)
    50 Cal.App.3d 904 .....................................................................................9

DKN Holdings LLC v. Faerber (2015)
    61 Cal.4th 813 .....................................................................................10, 11

Frommhagen v. Board of Supervisors (1987)
    197 Cal.App.3d 1292 ................................................................................10

Halbert's Lumber, Inc. v. Lucky Stores, Inc. (1992)
    6 Cal.App.4th 1233 ...................................................................................15

Holland v. Assessment Appeals Bd. No. 1 (2014)
    58 Cal.4th 482 ..........................................................................................15

Interinsurance Exchange of the Auto Club v. Superior Court (1989)
    209 Cal.App.3d 177 ..................................................................................11

Mycogen Corp. v. Monsanto Co. (2002)
    28 Cal.4th 889 ..........................................................................................11

Oakland Raiders v. City of Berkeley (1976)
    65 Cal.App.3d 623 ....................................................................................14

Sierra Club v. Superior Court (2013)
    57 Cal.4th 157 ..........................................................................................14

SMRH:485647103.6

Case No. RG18889478

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

*Stewart v. US Bancorp* (9th Cir. 2002)
   297 F.3d 953 ..................................................................................11

*Stonehouse Homes LLC v. City of Sierra Madre* (2008)
   167 Cal.App.4th 531 .........................................................................9

*Vaillette v. Fireman's Fund Ins. Co.* (1993)
   18 Cal.App.4th 680 ...........................................................................9

*Villacres v. ABM Industries, Inc.* (2010)
   189 Cal.App.4th 562 ........................................................................11

*Younger v. Jensen* (1980)
   26 Cal.3d 397 ..................................................................................11

Statutes

12 U.S.C. § 2601. .................................................................................17

15 U.S.C. § 1604. .................................................................................17

Cal. Bus. & Prof. Code § 10240 ..........................................................17

Cal. Civil Code § 2956 ....................................................................15, 16

Cal. Civil Code § 2957 ......................................................................7, 16

Cal. Civil Code § 2958 ....................................................................16, 17

Cal. Civil Code § 2966 .................... 6, 7, 9, 10, 12, 13, 14, 15, 16, 17, 18

Cal. Civil Code § 2967 ....................................................................14, 15

Cal. Code Civ. Proc. § 430.30 .............................................................9

Other Authorities

Fed. R. Civ. P. 41(b)...........................................................................11

Fed. R. Civ. P. 12(b)(6).......................................................................11

Case No. RG18889478
SMRH:485647103.6
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

1    Defendant Wells Fargo Bank, N.A. ("Wells Fargo") hereby submits the following

2    memorandum of points and authorities in support of its demurrer to the complaint filed by

3    Plaintiffs Joseph and Lisa Wyman ("Plaintiffs").

4    <h1 style="text-align:center">I.    <u>INTRODUCTION</u></h1>

5        Plaintiffs' sole claim against Wells Fargo for an alleged violation of California Civil

6    Code § 2966 should never have been brought.  The claim is fatally defective for at least

7    three independent reasons, any one of which requires dismissal.  First, Plaintiffs' claim is

8    barred by claim preclusion as Plaintiffs already filed, and lost, a lawsuit against Wells

9    Fargo that raised, or could have raised, the same claim against the Bank.  Second,

10   Plaintiffs' claim is barred by the applicable two year statute of limitations.  And third, the

11   disclosure requirements of Civil Code § 2966 are inapplicable to Plaintiffs' loan

12   modification.  The statute does not apply and the claimed statutory violation simply does

13   not exist.  For each of these reasons, Wells Fargo's demurrer should be sustained.

14       First, Plaintiffs' action is barred by claim preclusion as Plaintiffs already filed, and

15   lost, a lawsuit against Wells Fargo that alleged various claims arising from their loan (the

16   "Prior Action").  The Prior Action related to the same Wells Fargo loan, the same property,

17   and was filed after Plaintiffs obtained the loan modification that is the subject of this

18   action.  This lawsuit is barred as a matter of law as Plaintiffs could have, and should have,

19   raised their Civil Code § 2966 claim in the Prior Action.  Plaintiffs cannot repeatedly run

20   to Court asserting claims about their home loan every time they conceive of a new legal

21   theory.  Instead, like other civil litigants, Plaintiffs were required to bring all of their

22   claims (and legal theories) challenging their loan and modification in one lawsuit.  Indeed,

23   California's overcrowded court system would be even further strained were litigants

24   allowed to repeatedly file lawsuits challenging the same contracts and legal instruments

25   over and over again.  For this reason alone, Plaintiffs' claim is legally barred.

26       Second, Plaintiffs' claim is also time-barred.  The statute of limitations for a Civil

27   Code § 2966 claim is two years.  Plaintiffs allege that Wells Fargo modified their loan in

28   February 2012.  Although they contend that the modification lacked the written disclosure

Case No. RG18889478

SMRH:485647103.6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

1  allegedly required by Civil Code § 2966, they failed to file this lawsuit until January 4,

2  2018, almost six years later.  Plaintiffs filed four years too late.  For this additional reason,

3  Plaintiffs' claim is barred.

4     Finally, Plaintiffs' claim is also fatally flawed because Civil Code § 2966 does not

5  apply to Plaintiffs' loan modification.  Plaintiffs' loan fails to satisfy the three conditions

6  required for the application of section 2966.  First, the modification is not a transaction for

7  the purchase of a dwelling.  Rather, it is the modification of a loan more than five years

8  after the Plaintiffs purchased their residence.  Second, the modification of the loan by

9  Wells Fargo is not an extension of credit (take-out financing) by the seller of the property.

10  Third, Plaintiffs fail to allege the participation of an "arranger of credit" as defined in Civil

11  Code § 2957.  Additionally, no disclosure by Wells Fargo was required as Plaintiffs were

12  entitled to disclosures pursuant to the Federal Truth-In-Lending Act and Real Estate

13  Settlement Procedures Act when they originally purchased the residence.  Since no

14  disclosure was required as a matter of law, Plaintiffs' claim is barred.

15     For each of these reasons, any one of which is sufficient, Plaintiffs' single cause of

16  action against Wells Fargo fails as a matter of law.  As Plaintiffs cannot amend to cure the

17  defects in their action, the Court should sustain the Bank's demurrer without leave to

18  amend.

19  ## II.    FACTUAL AND PROCEDURAL BACKGROUND

20     On August 11, 2006, Plaintiffs purchased their residence.  Plaintiffs obtained a loan

21  from Wells Fargo in the principal amount of $704,000 to finance the purchase (the

22  "Loan").  Complaint, ¶ 12; Request for Judicial Notice ("RJN"), Exh. A.  The Loan was

23  secured by the residence located at 4903 Stoneridge Court, Oakland, CA 94605 (the

24  "Property").  *Id.*  Plaintiffs do not assert that the sale of the property included seller take-

25  back financing or that the loan modification at issue was a seller take-back loan.  Plaintiffs

26  also do not allege that the purchase of their residence involved an arranger of credit.

27     Unfortunately, shortly into their loan term Plaintiffs found themselves in financial

28  distress and defaulted on their Loan.  In February 2012, Wells Fargo agreed to modify

-6-

Case No. RG18889478
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

1   Plaintiffs' Loan which, among other things, (i) included a new principal balance of

2   $722,770.50, and (ii) deferred $30,659.32 of Plaintiffs' loan arrearage as a "Secondary

3   Principal Balance," on which Plaintiffs would *not* be required to pay interest or make

4   monthly payments. Complaint, ¶¶ 15-17; RJN, Exh. B (the "Modification" and, together

5   with the note and deed of trust, the "Loan Documents"). Under the Modification,

6   Plaintiffs were only required to pay back the Secondary Principal Balance upon the

7   occurrence of one of the following events: (1) loan maturity; (2) the sale or transfer of the

8   Property; or (3) default of their obligations under the Loan Documents. *Id.* In their

9   complaint, Plaintiffs describe the Secondary Principal Balance as a "balloon payment."

10  See e.g. Complaint, ¶ 25.

11      On November 3, 2016, prior to filing this lawsuit, Plaintiffs filed a complaint

12  against Wells Fargo in this Court. See RJN, Exh. C (the "Prior Action"). Despite the

13  modification, Plaintiffs had defaulted on their Loan and sought to challenge an imminent

14  foreclosure sale by alleging fraud, quiet title, predatory lending practices and a number of

15  alleged statutory violations. Prior Action, generally. The Prior Action, brought over four

16  years *after* the Modification, dealt with the same loan, the same property and asserted that

17  Plaintiffs were being charged the wrong amount. Throughout the Prior Action, Plaintiffs

18  alleged that Wells Fargo failed "to comply with statutory disclosure requirements", that

19  their loan documents with Wells Fargo were "fraudulent and forged," and that Wells

20  Fargo's notice of default was illegal because it failed to accurately depict the amount of

21  Plaintiffs' indebtedness. Prior Action, ¶¶ 30, 39, 46, 51, 81, 101, 132, 164.

22      Wells Fargo removed the Prior Action to the United States District Court for the

23  Northern District of California and filed a motion to dismiss the complaint. The District

24  Court granted the Bank's motion, and on February 28, 2017, Plaintiffs filed a first

25  amended complaint (RJN, Exh. C). Wells Fargo moved to dismiss Plaintiff's first

26  amended complaint. On April 27, 2017, the Honorable William H. Alsup granted the

27  Bank's motion and dismissed the Prior Action with prejudice. RJN, Exh. D. Plaintiffs did

28  not appeal.

-7-                                    Case No. RG18889478

SMRH:485647103.6
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

38                        Exhibit A - Page 43

1    Less than a year after losing in federal court, on January 4, 2018, Plaintiffs filed the

2  within class action.  Plaintiffs assert one cause of action against Wells Fargo, for an

3  alleged violation of Civil Code § 2966.  Plaintiffs assert that their written Modification

4  agreement did not contain the disclosure allegedly required by Civil Code § 2966.

5  Complaint, ¶¶ 21-26.  Plaintiffs purport to bring this claim on behalf of themselves, as well

6  as a class of similarly situated borrowers whose loan modification agreements also did not

7  contain a Civil Code § 2966 notice.

8    **III.    LEGAL STANDARD**

9    The Court should sustain a demurrer "[w]hen any ground for objection to a

10  complaint . . . appears on the face thereof, or from any matter of which the court is

11  required to or may take judicial notice."  See Code Civ. Proc. § 430.30(a).  A demurrer

12  accepts as true all well-pleaded facts in the complaint and those facts of which the court

13  can take judicial notice, but not deductions or conclusions of law or fact.  *Stonehouse*

14  *Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 538.  A court may

15  consider recorded documents that are contrary to the allegations in the complaint (*C.R. v.*

16  *Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1102) and while a court cannot take

17  judicial notice of hearsay allegations in a court record, it can take judicial notice of the

18  truth of facts asserted in documents such as orders, findings of fact and conclusions of law,

19  and judgments.  *Day v. Sharp* (1975) 50 Cal.App.3d 904, 914.  And, upon sustaining a

20  demurrer, "leave to amend should not be granted where, in all probability, amendment

21  would be futile."  *Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685

22  (internal citations omitted).

23

24

25

26

27

28

SMRH:485647103.6

-8-                                          Case No. RG18889478
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

39                          Exhibit A - Page 44

IV.    **PLAINTIFFS' ACTION IS BARRED BY *RES JUDICATA*/CLAIM PRECLUSION**

Claim preclusion[1] bars Plaintiffs' complaint and their claim for violation of Civil Code § 2966.  Since Plaintiffs brought, and lost, the Prior Action, in which they at a minimum had the opportunity to bring their section 2966 claim, Plaintiffs are precluded from bringing that claim here.

"Claim preclusion 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.'" *DKN Holdings, supra,* 61 Cal.4th at 824.  This doctrine "rests upon the ground that the party to be affected, or some other with whom he is in privity, *has litigated, or had the opportunity to litigate* the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent.  Public policy and the interest of litigants alike require that there be an end to litigation." *Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065 (emphasis added).  The application of claim preclusion may properly be determined at the pleading stage.  "If all of the facts necessary to show that an action is barred by [claim preclusion] are within the complaint or subject to judicial notice, a trial court may properly sustain a general demurrer" on that basis.  *Frommhagen v. Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1299.

Claim preclusion bars litigation not only of issues that were actually litigated in the prior proceeding, but also issues that could have been litigated in that proceeding.  *Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 974-75.  "The fact that different forms of relief are sought in the two lawsuits is irrelevant, for if the rule were otherwise, 'litigation finally would end only when a party ran out of counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual

---

[1]    To avoid confusion, the California Supreme Court now uses the term "claim preclusion" to describe the primary aspect of the *res judicata* doctrine.  *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.

-9-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

1  background.'" *Interinsurance Exchange of the Auto Club v. Superior Court* (1989) 209

2  Cal.App.3d 177, 181-182.  Thus, if the matter raised in the subsequent suit "was within the

3  *scope* of the [prior] action, related to the *subject matter* and *relevant* to the issues, so that it

4  *could* have been raised, the judgment is conclusive on it despite the fact that it was not in

5  fact expressly pleaded or otherwise urged." *Villacres v. ABM Industries, Inc.* (2010) 189

6  Cal.App.4th 562, 583-584 (emphasis in original).  "A predictable doctrine of [claim

7  preclusion] benefits both the parties and the courts because it 'seeks to curtail multiple

8  litigation causing vexation and expense to the *parties* and wasted effort and expense in

9  *judicial administration.*'" *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 889, 897

10 (emphasis in original).

11     "Claim preclusion arises if a second suit involves (1) the same cause of action (2)

12 between the same parties (3) after a final judgment on the merits in the first suit." *DKN*

13 *Holdings, supra*, 61 Cal.4th at 824.  "If claim preclusion is established, it operates to bar

14 relitigation of the claim altogether." *Id.*

15     Here, all three elements of claim preclusion are met.  The second element is

16 satisfied as both actions involve the same parties as Plaintiffs again bring their current

17 action against Wells Fargo challenging their loan and modification.  See Complaint, ¶¶ 10,

18 25.

19     The third element is also satisfied as the District Court reached a final judgment on

20 the merits in the Prior Action.  "[A] dismissal for failure to state a claim under Rule

21 12(b)(6) is a 'judgment on the merits' to which [claim preclusion] applies." *Stewart v. US*

22 *Bancorp* (9th Cir. 2002) 297 F.3d 953, 957; see also Fed. R. Civ. P. 41(b); *Younger v.*

23 *Jensen* (1980) 26 Cal.3d 397, 411 (a federal judgment "has the same effect in the courts of

24 this state as it would have in federal court").  In the Prior Action, Judge Alsup granted the

25 defendants' Rule 12(b)(6) motion on April 27, 2017, dismissing Plaintiffs' Prior Action

26 with prejudice.  See RJN, Exh. D.  Plaintiffs did not appeal that ruling.

27     Claim preclusion's first and final element is also satisfied.  Plaintiffs' Prior Action

28 and their current complaint are both premised on the same primary right – the validity and

-10-

SMRH:485647103.6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

1  enforceability of Plaintiffs' Loan Documents, including Wells Fargo's right to collect on

2  Plaintiffs' loan – and there is no reason why Plaintiffs' current Section 2966 claim could

3  not have been raised in the Prior Action. An issue is one that could have been raised in a

4  prior proceeding "if the matter was within the scope of the action, related to the subject

5  matter and relevant to the issues." *Amin v. Khazinder* (2003) 112 Cal.App.4th 582, 589-

6  90. All these elements are satisfied.

7          Here, both actions relate to the same Property located at 4908 Stoneridge Court,

8  Oakland, California. (Prior Action, ¶ 9; Complaint, ¶ 6). Both actions relate to the same

9  loan and were filed after the parties entered into their Modification agreement in February

10 2012. (Prior Action, ¶ 15; Complaint, ¶ 12; see also RJN, Exh. A). Both actions also

11 relate to the same cause of action. In their Prior Action, filed over four years after their

12 Modification agreement, Plaintiffs asserted broad claims and sought comprehensive relief

13 that included, or could have included, the claim Plaintiffs assert herein. Among Plaintiffs'

14 claims in the Prior Action, they asserted that the Notice of Default was illegal because it

15 failed to accurately depict the amount of Plaintiffs' indebtedness. Prior Action, ¶ 101, 132.

16 Plaintiffs sought comprehensive relief including treble, compensatory, special, general and

17 punitive damages, restitution, quiet title and attorneys' fees. Prior Action, ¶ 150-161,

18 prayer.

19         The claim Plaintiffs assert herein falls within the scope of, or could have been

20 brought in, the Prior Action. Plaintiffs now assert that in February 2012, Wells Fargo

21 modified Plaintiffs' loan, but failed to provide Plaintiffs the notice required by Civil Code

22 § 2966, the Bank's failure to provide notice meant that Plaintiffs were entitled to an

23 extension of the due date for their balloon payment and therefore, as a result, Wells Fargo

24 sought to collect an inaccurate amount from Plaintiffs. Complaint, ¶¶ 25, 27. Plaintiffs

25 seek compensatory, statutory and punitive damages, restitution and attorneys' fees.

26 Complaint, Prayer.

27         In sum, Plaintiffs' current claims relate to the same defendant, the same mortgage

28 loan transaction, the same Loan Documents (including the same Modification), and the

-11-

SMRH:485647103.6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

1   same real property as Plaintiffs' previously adjudicated claims.  None of the conduct

2   alleged in the current complaint occurred after the dismissal of Plaintiffs' Prior Action.  To

3   the contrary, Plaintiffs assert in *both* actions that the Bank sought to collect an incorrect

4   amount from the Plaintiffs.  Moreover, even if the Court concludes that Plaintiffs' current

5   claim was not specifically raised in the Prior Action, it is still barred as Plaintiffs could

6   have, and were required to, bring it then.  Plaintiffs' current claim, that the Bank failed to

7   give proper notice and seeks to collect an inflated amount under the Loan, is within the

8   scope of the issues raised in the Prior Action, is related to the subject matter of the Prior

9   Action and is relevant to the issues raised in the Prior Action.  *See Boudway v. Fed. Nat.*

10  *Mortg. Ass'n* (S.D.Cal. Dec. 18, 2013) 2013 WL 6730204, at *3 (dismissing action against

11  lender based on claim preclusion where "[a]ll of the claims in this case and in the state

12  court action challenge the 2011 foreclosure sale of the subject property, and Defendant's

13  rights to collect on Plaintiff's loan. ... The issues raised in this case are within the scope of

14  the issues raised in the state court action, related to the subject matter of the state court

15  action, and relevant to the issues raised in the state court action.").

16          In 2016, Plaintiffs elected to pursue a host of failed legal theories to challenge their

17  obligation to repay the Loan and, when that action was not successful, they brought a new

18  legal theory to pursue against their lender in the form of this lawsuit.  However, Plaintiffs

19  are not permitted to take a second bite of the apple, and because all of Plaintiffs' claims

20  relate to the same primary right – the validity and enforceability of their Loan Documents

21  – claim preclusion bars their claims and the Court should sustain Wells Fargo's demurrer

22  without leave to amend.

23  **V.      PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF**

24  **LIMITATIONS**

25          The second, independent basis for granting Wells Fargo's demurrer is that

26  Plaintiffs' claim is barred by the applicable statute of limitations.  The statute of limitations

27  to bring a claim under Civil Code § 2966 is "two years from the date on which the liability

28  arises, except that where any material disclosure under this article has been materially and

-12-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

1   willfully misrepresented, the action may be brought within two years of discovery of the

2   misrepresentation." Cal. Civ. Code § 2967.

3        Plaintiffs allege that Wells Fargo agreed to modify their loan in February, 2012 and

4   that the written loan modification agreement "failed to provide Plaintiffs the notice

5   required by California law." Complaint, ¶ 25. Plaintiffs do not allege that Wells Fargo

6   willfully misrepresented a material disclosure. Instead, they allege that the disclosure was

7   never made. Thus, by their own allegation, Plaintiffs' claim under Civil Code § 2966

8   arose in February, 2012 when they received the Modification. Yet, Plaintiffs did not bring

9   their claim until January, 2018 – almost four years after the statute of limitations expired.

10       As Plaintiffs' claim is time-barred, the Court should sustain Defendants' demurrer

11  without leave to amend.

12  **VI.    CIVIL CODE SECTION 2966 DOES NOT APPLY TO PLAINTIFFS' LOAN**

13                          **MODIFICATION**

14       A third separate and independent reason Plaintiffs' claim fails is because the notice

15  requirement of Civil Code § 2966 does not apply to the loan modification obtained by

16  Plaintiffs. To the contrary, as both the statutory language and the legislative history make

17  clear, the application of section 2966 is limited to sales of residential properties involving

18  both seller take-back financing and an arranger of credit. Section 2966 does not apply to

19  the modification of an existing loan by a conventional lender. The statute is simply

20  inapplicable and Wells Fargo's demurrer should be sustained for this reason as well.

21       It is well settled that statutory interpretation is within the authority of the courts and

22  may properly be determined on demurrer. *Oakland Raiders v. City of Berkeley* (1976) 65

23  Cal.App.3d 623, 629. The Supreme Court in *Sierra Club v. Superior Court* (2013) 57

24  Cal.4th 157, 165 recently restated the object of statutory interpretation:

25       "When we interpret a statute, '[o]ur fundamental task . . . is to determine the
         Legislature's intent so as to effectuate the law's purpose. We first examine
26       the statutory language, giving it a plain and commonsense meaning. We do
         not examine that language in isolation, but in the context of the statutory
27       framework as a whole in order to determine its scope and purpose and to
         harmonize the various parts of the enactment.'"

28

SMRH:485647103.6                    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
                                    WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

1    Moreover, when the statute at issue in susceptible to more that one interpretation, courts

2    "may consider various extrinsic aids, including the purpose of the statute, the evils to be

3    remedied, the legislative history, public policy, and the statutory scheme encompassing a

4    statute." *Holland v. Assessment Appeals Bd. No. 1* (2014) 58 Cal.4th 482, 490.  See also

5    *Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1239 ("If the

6    meaning of the words [of the statute] is not clear, courts must take the second step and

7    refer to the legislative history").  Here, both the clear meaning of the statutory language

8    and the legislative history are in accord: Civil Code § 2966 does not apply to Plaintiffs'

9    loan from Wells Fargo and Plaintiffs' claim fails.

10         On September 10, 1982, the governor signed into law AB 3531, which became

11   effective July 1, 1983.  The legislation had passed unanimously, garnering 26 yes votes in

12   the Senate and 78 yes votes in the Assembly.  Legislative History, Exh. E, p. 3.  The bill

13   added sections 2956 through 2967 to the Civil Code and specified certain disclosures that

14   must be made to buyers and sellers in transactions involving seller financing of residential

15   real estate after the effective date of the legislation.  RJN, Exh. E, p. 39.

16         The legislation was sponsored by the California Association of Realtors at a time of

17   high interest rates and a shortage of mortgage money from conventional lending sources.

18   RJN, Exh. E, pp. 3, 9.  It was estimated that, at the time, somewhere in the range of 65% of

19   sales of existing homes in California were facilitated by creative financing and that in

20   1982, more than 120,000 real estate transactions involved seller assisted financing.  RJN,

21   Exh. E, pp. 9, 39.  These transactions often included a deed of trust and a short term note

22   with a substantial balloon payment.  RJN, Exh. E, p. 9.  There was significant concern at

23   the time that many buyers and sellers in these transactions did not understand the

24   implications of their contracts, including the risks of balloon payments.  RJN, Exh. E, p.

25   19.

26         The bill was designed to address these seller financing concerns.  The California

27   Senate Judiciary Committee described the purpose of the legislation as follows:

28

-14-                                      Case No. RG18889478

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

1      Existing law generally does not require the disclosure of detailed credit information or possible risks in real property sales which involve seller take-back financing.  Nor does it require the holder of a balloon payment note to notify the debtor of the note becoming due at least 60 days before the fact.

2

3

4      ***This bill would require the disclosure of specified information by the parties in certain home sales which involve seller take-back financing and an arranger or credit,*** as defined.  The arranger of credit would also be required to make the disclosures.

5

6      ***This bill would also require the holder of the balloon payment note created by seller take-back financing to give the debtor written notice of the balloon payment becoming due at least 60 days prior to that fact.***

7

8      The bill would become operative on July 1, 1983.

9      ***The purpose of this bill is to provide for specific disclosures and warnings to parties in real property sales which involve seller take-back financing.***

10

11  RJN, Exh. E, p. 24 (emphasis added).

12      The statutory provisions enacted by the legislature and signed by the governor are

13  consistent with this legislative history.  The legislation, which added Article 3 (sections

14  2956-2967) to the Civil Code, entitled the Article "Disclosures on Purchase Money Liens

15  on Residential Property."  Section 2956 sets forth the scope of the Article's application.  It

16  provides, in pertinent part:

17      ***In a transaction for the purchase of a dwelling*** for not more than four families ***in which there is an arranger of credit, which purchase includes an extension of credit by the vendor [seller],*** a written disclosure with respect to that credit transaction shall be made, as required by this article . . .

18

19

20  Civil Code § 2956 (emphasis added).

21      Thus, for the disclosure requirements to apply, three conditions must be satisfied.

22  First, the transaction must involve the purchase of a dwelling of four or fewer families.

23  Second, the seller must extend credit to the buyer for the purchase (take-back financing).

24  And third, the transaction must involve an arranger of credit.  Modification of an existing

25  loan by a conventional lender falls well outside of the scope of Article 3.

26      The fact that Article 3, including Civil Code § 2966, does not apply to loans by

27  conventional lenders (as opposed to seller take-back financing) is further confirmed by

28  Civil Code § 2958.  That provision provides, in pertinent part:

Case No. RG18889478

SMRH:485647103.6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

*A disclosure is not required under this article*, to a purchaser when that purchaser is entitled to receive, a disclosure pursuant to the Federal Truth-In-Lending Act (15 U.S. Code 1604, as amended), the Real Estate Settlement Procedures Act (12 U.S. Code 2601, as amended), *or* Section 10240 of the Business and Professions Code. . .

Civil Code § 2958 (emphasis added). Here, Plaintiffs admit that they purchased the property in August 2006 and obtained financing for the purchase from Wells Fargo Bank. Complaint, ¶ 12. Having obtained their financing from Wells Fargo, Plaintiffs were entitled to (and did) receive disclosures pursuant to both the Federal Truth-In-Lending Act and the Real Estate Settlement Procedures Act. See e.g., 15 U.S.C. § 1604 *et seq.*; 12 U.S.C. § 2601 *et seq.*; RJN, Exh. A (§ 3). Pursuant to section 2958, no disclosure to the Plaintiffs was required pursuant to Article 3, including Civil Code § 2966.

The language of Civil Code § 2966 further confirms that it is not applicable to Plaintiffs' loan modification. Limiting language is set forth in both subsections (a) and (d) which provide, in pertinent part:

(a) *In a transaction regulated by this article*, which includes a balloon payment note when the term for repayment is for a period in excess of one year . . .

and

(d) *Every note subject to the provisions of this section* shall include the following statement . . .

Civil Code § 2966 (emphasis added). By its terms, the scope of section 2966 is limited to transactions regulated by Article 3. As demonstrated above, these transactions must: (1) involve the purchase of a dwelling of four or fewer families; (2) the seller must extend credit to the buyer for the purchase (take-back financing); and (3) the transaction must involve an arranger of credit. Since these requirements are not satisfied here, section 2966 does not apply.

In addition to the statutory language, the limited scope of the disclosure requirements of section 2966 is further confirmed by the statute's legislative history. The Senate Judiciary Committee made the following official comment regarding section 2966:

1. Required notice of pending balloon payment.

-16-

Case No. RG18889478

SMRH:485647103.6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

1    At the urging of Senator Sieroty, *this bill has been amended to require the*
      *holder of a balloon payment note created by seller take-back financing to*
2    *give the debtor written notice* of the payment becoming due 60 to 150 days
      prior to that fact . . .
3

4    RJN, Exh. E, pp. 24-25 (emphasis added).  As both the statutory language and legislative

5    history confirm, the disclosure requirements of section 2966 apply only to the holder of a

6    balloon payment note created by seller take-back financing.  They do not apply to

7    conventional lender financing.

8        As Plaintiffs' allegations demonstrate, section 2966 does not apply to Plaintiffs'

9    loan.  Plaintiffs allege that they purchased their residence in August 2006, and obtained

10   their financing for the purchase from Wells Fargo.  Complaint, ¶ 12.  Plaintiffs further

11   allege that over five years later, after they had defaulted, Wells Fargo modified their loan

12   to allow Plaintiffs to delay repayment of their arrearage interest free.  Complaint, ¶¶ 14-19.

13   Since Plaintiffs' loan was conventional, and not seller take-back financing as would be

14   required by section 2966, the disclosure requirements are inapplicable and Plaintiffs' claim

15   fails as a matter of law.  Wells Fargo's demurrer should be sustained for this reason as

16   well.

17                    **VII.    CONCLUSION**

18       For each of these three reasons, any one of which is sufficient, the Court should

19   sustain Wells Fargo's demurrer to Plaintiffs' complaint.  As Plaintiffs cannot amend to

20   cure the fatal defects regarding their claim, the demurrer should be sustained without leave

21   to amend.

22   Dated:  April 9, 2018

23                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

24                    By    _____

25                              EDWARD D. VOGEL
                                JOHN C. DINEEN
26

27                    Attorneys for Defendant
                      WELLS FARGO BANK, N.A.
28

                                                    -17-            Case No. RG18889478
SMRH:485647103.6           MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
                                        WELLS FARGO BANK'S DEMURRER TO PLAINTIFFS' COMPLAINT

48                        Exhibit A - Page 53

1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2 |      Including Professional Corporations
EDWARD D. VOGEL, Cal. Bar No. 110081
3 | JOHN C. DINEEN, Cal. Bar No. 222095
MARK G. RACKERS, Cal. Bar No. 254242
4 | 501 West Broadway, 19th Floor
San Diego, California 92101-3598
5 | Telephone:    619.338.6500
Facsimile:    619.234.3815
6 | E-mail:       evogel@sheppardmullin.com
                jdineen@sheppardmullin.com
7 |                 mrackers@sheppardmullin.com

8 | Attorneys for Defendant
WELLS FARGO BANK, N.A.

9

ENDORSED
FILED
ALAMEDA COUNTY

APR 1 0 2018

CLERK OF THE SUPERIOR COURT
By: D. OLIVER Deputy

10 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

11 | COUNTY OF ALAMEDA,

12

| | |
|---|---|
| 13 JOSEPH WYMAN, an individual, individually and on behalf of those 14 similarly situated; LISA WYMAN, an individual, 15 | Case No. RG18889478 ASSIGNED FOR ALL PURPOSES TO: JUDGE BRAD SELIGMAN DEPARTMENT 23 |
| 16                   Plaintiffs, 17 v. 18 WELLS FARGO BANK, N.A., a business entity; and DOES 1 through 50, inclusive, 19               Defendants. | **DEFENDANT WELLS FARGO BANK'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS DEMURRER TO PLAINTIFFS' COMPLAINT** DATE:  May 22, 2018 TIME:   3:00 p.m. DEPT:   23 Reservation No.  R-1952800 Complaint Filed: January 4, 2018 |

20

21

22

23

24

25

26

27

28

1    **TO THE HONORABLE COURT, ALL PARTIES AND THEIR**

2    **ATTORNEYS OF RECORD:**

3    A court may take judicial notice of the records of any court of record of the

4    United States. Evid. Code § 452(d)(2). Furthermore, when "… the contents of the

5    [documents] form the basis of the allegations in the complaint, it is essential that [the

6    court] evaluate the complaint by reference to these documents." *Ingram v. Flippo* (1999)

7    74 Cal.App.4th 1280, 1285, n. 3; *Dryden v. Tri-Valley* (1977) 65 Cal.App.3d 990, 997

8    (taking judicial notice of documents "incorporated" in the complaint). In addition, a court

9    may take judicial notice of facts and propositions "that are not reasonably subject to

10   dispute and are capable of immediate and accurate determination by resort to sources of

11   reasonably indisputable accuracy." Evid. Code § 452. "[A] court may take judicial notice

12   of the fact of a document's recordation, the date the document was recorded and executed,

13   the parties to the transaction reflected in a recorded document, and the document's legally

14   operative language, assuming there is no genuine dispute regarding the document's

15   authenticity." *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 265.

16   Moreover where, as here, a court is determining whether to sustain a

17   demurrer on claim preclusion grounds, judicial notice may be taken of a prior judgment

18   and other court records. *Citizens for Open Access to Sand and Tide, Inc. v. Seadrift*

19   *Association* (1998) 60 Cal.App.4th 1053, 1065. Finally, judicial notice of the relevant

20   legislative history is appropriate in considering the interpretation of a statute. *Martin v.*

21   *Szeto* (2004) 32 Cal.4th 445, 452, fn. 9; *Kaufman & Broad Communities, Inc. v.*

22   *Performance Plastering* (2005) 133 Cal.App.4th 26. Here, as set forth below, Wells Fargo

23   Bank ("Wells Fargo") requests judicial notice of portions of the legislative history of

24   Assembly Bill 3531, the legislation that included Civil Code § 2966, the statute at issue

25   herein.

26   Pursuant to California Evidence Code § 452, and the authorities cited herein,

27   Wells Fargo hereby requests that this Court take judicial notice of the below-identified

28   documents:

-1-

A.  Plaintiffs' deed of trust, relating to the subject property, recorded with the Alameda County Recorder's Office on August 18, 2006, a true and correct copy of which is attached hereto as Exhibit A

B.  Plaintiffs' loan modification with Wells Fargo, which is cited in Plaintiffs' complaint and forms the basis of their claims, a true and correct copy of which is attached hereto as Exhibit B

C.  Plaintiffs' first amended complaint against Wells Fargo (the "Prior Action"), filed on November 3, 2016, in the United States District Court, Northern District of California, Case No. 16-cv-07079, a true and correct copy of which is attached hereto as Exhibit C

D.  Judge William H. Alsup's April 27, 2017 Order, granting Wells Fargo's motion to dismiss Plaintiffs' Prior Action with prejudice, and Judge Alsup's April 27, 2017 Judgment in favor of Wells Fargo, true and correct copies of which are attached hereto as Exhibit D

E.  Portions of the Legislative History for Assembly Bill 3531, which included California Civil Code § 2966, the statute at issue herein. A true and correct copy of relevant portions of the Legislative History is attached hereto as Exhibit E. The complete Legislative History encompasses 371 pages. Should the Court or opposing counsel prefer a complete copy of the Legislative History, counsel for Wells Fargo will supply one upon request.

Dated: April 9, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____

EDWARD D. VOGEL
JOHN C. DINEEN

Attorneys for Defendant
WELLS FARGO BANK, N.A.

-2-

# EXHIBIT A

...G REQU...
CHICAGO TITLE

Recording Requested By:

MVN

WELLS FARGO BANK, N.A.
1401 WILLOW PASS RD #300
CONCORD, CA 94520-

2006318642 08/18/2006 02:40 PM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE: 79.00

24 PGS

Return To:
WELLS FARGO BANK, N.A.
FINAL DOCUMENTS X9999-01M
1000 BLUE GENTIAN ROAD
EAGAN, MN 55121-1663

Prepared By:
PROCESSING WHOLESALE
WELLS FARGO BANK, N.A.
1401 WILLOW PASS RD #300
CONCORD, CA 94520-

[Space Above This Line For Recording Data]

# DEED OF TRUST

0154653315

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **AUGUST 11, 2006**, together with all Riders to this document.

(B) **"Borrower"** is
**JOSEPH R. WYMAN AND LISA D. WYMAN, HUSBAND AND WIFE**

Borrower is the trustor under this Security Instrument.

(C) **"Lender"** is **WELLS FARGO BANK, N.A.**

Lender is a **National Association**
organized and existing under the laws of **THE UNITED STATES OF AMERICA**

MO
5850/733-KL

Lender's address is
P. O. BOX 5137, DES MOINES, IA  50306-5137
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is  FIDELITY NATIONAL TITLE INSURANCE COMPANY

(E) "Note " means the promissory note signed by Borrower and dated AUGUST 11, 2006
The Note states that Borrower owes Lender SEVEN HUNDRED FOUR THOUSAND AND
NO/100                                                                              Dollars
(U.S. $ ......704,000.00...........) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than   SEPTEMBER 1, 2036
(F) "Property" means the property that is described below under the heading "Transfer of
Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider    [ ] Condominium Rider          [ ] Second Home Rider
[ ] Balloon Rider            [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider                 [ ] Biweekly Payment Rider       [ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as
well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a
condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an
electronic terminal, telephonic instrument, computer, or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account. Such term includes,
but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers
initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be
amended from time to time, or any additional or successor legislation or regulation that

SCA02   Rev 12/18/00            Page 2 of 18        Initials  JRW  PBM      FORM 3005   1/01

governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's convenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|  | **County** | of | **ALAMEDA** |
|---|---|---|---|
|  | [Type of Recording Jurisdiction] |  | [Name of Recording Jurisdiction] |

**LEGAL DESCRIPTION IS ATTACHED HERETO AS SCHEDULE "A" AND MADE A PART HEREOF.**

**THIS IS A PURCHASE MONEY MORTGAGE.**

Parcel ID Number:                                   which currently has the address of
**4903 STONERIDGE COURT**                                                [Street]
**OAKLAND**                       [City] , California      **94605**      [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

SCA03    Rev 11/09/00          Page 3 of 18       Initials: JRHS/JHDTV    FORM 3005    1/01

EXHIBIT A - Page 3

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

SCA01   Rev 11/09/00          Page 4 of 18          Initials _____ JRN/JSIM          FORM 3005   1/01

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be

EXHIBIT A - Page 5

required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination

SICA06   Rev 09/22/00              Page 6 of 18          Initials: _____      FORM 3005   1/01

or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In

SCA07  Rev 11/09/00          Page 7 of 16       Initials: _____       FORM 3005    1/01

either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or

SCA02    Rev 09/22/08              Page 8 of 16           Initials:_____          FORM 3005    1/01

(c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

SGA00    Rev 11/13/00                    Page 9 of 18        Initials: _____        FORM 3005    1/01

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage Insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

SCA10    Rev 03/22/00                  Page 10 of 16          Initials: _____          FORM 3005    1/01

EXHIBIT A - Page 10

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by

SCA11    Rev 11/09/00              Page 11 of 16         Initials:              FORM 3005    1/01

EXHIBIT A - Page 11

this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entitles or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower s notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly

SCA12    Rev 11/09/00          Page 12 of 18          Initials:          FORM 3005    1/01

requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

SC-A13    Rev 11/25/00        Page 13 of 18        Initials _____        FORM 3005    1/01

EXHIBIT A - Page 13

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or**

before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

SCA16    Rev 09/22/00                    Page 16 of 16        Initials: _____        FORM 3005    1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                     JOSEPH R. WYMAN        Borrower

                                     _____ (Seal)
                                     LISA D. WYMAN          Borrower

SCA17   Rev 12/27/00          Page 17 of 18     Initials: _____     FORM 3005   1/01

EXHIBIT A - Page 17

# EXHIBIT B

Investor.:
Loan No: (scan barcode)

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 9TH day of FEBRUARY, 2012, between JOSEPH R. WYMAN AND LISA D. WYMAN ("Borrower") whose address is 4903 STONERIDGE COURT, OAKLAND, CALIFORNIA 94605 and WELLS FARGO BANK, N.A. ("Lender") whose address is 3476 STATEVIEW BLVD, MAC# X7801-03K, FORT MILL, SC 29715, amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated AUGUST 11, 2006 and recorded on  in , of the OFFICIAL Records of ALAMEDA, CALIFORNIA, and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

4903 STONERIDGE COURT, OAKLAND, CALIFORNIA 94605
(Property Address)

the real property described being set forth as follows:

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of FEBRUARY 9, 2012 , the new amount payable under the Note and the Security Instrument is U.S. $722,770.50 ("New Principal Balance"), consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized with this modification. $30,659.32 of the New Principal Balance shall be deferred (the "Secondary Principal Balance") and I will not pay interest or make monthly payments on this amount.

Wells Fargo Bank Secondary Loan Modification Agreement 01122012_72
First American Mortgage Services                    Page 1                    708 |IIII|IIII|IIII|IIII|

EXHIBIT B - Page 1

2.  Borrower promises to pay U.S. $692,111.18 (the "Interest Bearing Principal Balance"), plus interest, to the order of Lender. Interest will be charged on the Interest Bearing Principal Balance less any principal reduction due to payments from Borrower at the yearly rate of 6.5000%, from FEBRUARY 1, 2012. The interest rate Borrower will pay will change 60 months from the date of this Loan Modification Agreement. Borrower promises to pay monthly payments of INTEREST ONLY of U.S. $3,748.94, beginning on MARCH 1, 2012 until FEBRUARY 1, 2017. Effective FEBRUARY 1, 2017, interest will be charged on the Interest Bearing Principal Balance from the Borrower at the yearly rate of 6.5000% and the Borrower promises to pay monthly payments of INTEREST ONLY of U.S. $3,748.94, beginning on MARCH 1, 2017 until the EXPIRATION OF THE INTEREST ONLY PERIOD on OCTOBER 1, 2016 (the "Conversion Date"), which is in accordance with the Note. As of the Conversion Date, the original terms regarding the determination of the interest rate and monthly payment will change in accordance with the terms of the Note. Borrower will continue to make monthly payments on the same day of each succeeding month until principal and interest are paid in full, except that, if not sooner paid, the final payment of principal and interest are payable on SEPTEMBER 1, 2036, (the "Maturity Date"). In addition to monthly principal and interest, Borrower shall make monthly escrow deposits as defined in the Note. Escrow deposit payments may be subject to change in the future.

3.  Borrower promises to pay the Secondary Principal Balance without interest thereon, to the order of the Lender and any other amounts still owed under the Note or Security Instrument by the earliest of the date I sell or transfer an interest in the property or am in default. I will be in default if I do not (i) pay the full amount of a monthly payment on the date it is due, or (ii) comply with the terms of the Note and Security Instrument, as modified by this Agreement.

4.  If on the Maturity Date, Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

5.  Borrower understands and agrees that:

    (a)  Borrower agrees that certain amounts owed will not be capitalized, waived, or addressed as part of this Agreement, and will remain owed until paid. These amounts owed are referenced in the Cover Letter to this Agreement, which is incorporated herein, and are to be paid with the return of this executed Agreement. If these amounts owed are not paid with the return of this executed Agreement, then Lender may deem this Agreement void.

    (b)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (c)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(d)  Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

(e)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(f)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(g)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(h)  If included, the undersigned Borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

6.   If I make a partial prepayment of principal, the Lender may apply the partial prepayment first to any remaining Secondary Principal Balance before applying such partial prepayment to other amounts due under this Agreement or the Note and Security Instrument.

Wells Fargo Bank Secondary Loan Modification Agreement 01122012_72
First American Mortgage Services                    Page 3

EXHIBIT B - Page 3

Exhibit A - Page 78

In Witness Whereof, the Lender has executed this Agreement.

*Christine M Coughlin*

WELLS FARGO BANK, N.A.

By _____

**Christine M. Coughlin**

7.13.12
Date        Vice President Loan Documentation

In Witness Whereof, I have executed this Agreement.

_____ (Seal)
Borrower
JOSEPH R. WYMAN
6·14·12
Date

JOE R. WYMAN (Seal)
Borrower
6·14·12
Date

_____ (Seal)
Borrower

_____
Date

*Lisa D. Wyman*
_____ (Seal)
Borrower
LISA D. WYMAN
6·14·12
Date

LISA D. WYMAN (Seal)
Borrower
6·14·12
Date

_____ (Seal)
Borrower

_____
Date

EXHIBIT B - Page 4

# EXHIBIT C



1   JOSEPH R WYMAN
2   LISA D WYMAN
    4908 STONERIDGE COURT
3   OAKLAND, CA 94605

4   PLAINTIFFS IN PRO PER

5

6

7

8                         U.S. DISTRICT COURT
9           CALIFORNIA NORTHERN DISTRICT (SAN FRANCISCO)

10  JOSEPH R WYMAN ,                    )
    LISA D WYMAN,                       )   Federal Case No. C 16-07079 WHA
11                                      )
                                        )
12              Plaintiffs,             )   State Case No.:
                                        )
13                                      )   _____
                                        )
14  vs.                                 )   FIRST AMENDED COMPLAINT FOR:
                                        )
15                                      )   1.  VIOLATIONS OF CALIFORNIA
                                        )       HOMEOWNERS BILL OF
16  FIRST AMERICAN TITLE INSURANCE      )        RIGHTS/TREBLE DAMAGES
    COMPANY, WELLS FARGO BANK, N.A.,    )   2.  INJUNCTIVE RELIEF
17  as Servicing Agent for HSBC BANK USA,)  3.  PREDATORY LENDING
    National Association as Trustee for Wells)     PRACTICES
18  Fargo Asset Securities Corporation, Mortgage)  4.  VIOLATION OF CALIFORNIA
    –Pass Through Certificates, Series 2006-)       B&P CODE § 17200 ET SEQ
19  AR18, WELLS FARGO BANK, N.A., and   )   5.  CONSTRUCTIVE FRAUD
    DOES 1 THROUGH 35 INCLUSIVE,        )   6.  FRAUD IN THE CONCEALMENT
20                                      )   7.  FRAUD IN THE INDUCEMENT
                                        )   8.  SLANDER OF TITLE
21                                      )   9.  QUIET TITLE
              Defendants.               )   10. DECLARATORY RELIEF
22                                      )   11. RECISSION
                                        )
23                                      )
                                        )
24                                      )
                                        )
25  _____)   *DEMAND FOR JURY TRIAL*
26

27

28

EXHIBIT C - Page 1

76                    Exhibit A - Page 81

Plaintiffs, JOSEPH R WYMAN and LISA D WYMAN, ("Plaintiffs"), allege as follows:

I
PRELIMINARY ALLEGATIONS

1.   Plaintiffs bring this action for declaratory judgment, injunctive and equitable relief, and for compensatory, special, general, punitive damages and treble damages against above named Defendants and each of them.

2.   On information and belief, Plaintiffs allege that the Notice of Default, Substitution of Trustee, and Notice of Trustee's Sale were recorded on Plaintiffs' real property by the Defendants herein sued, were based upon a fraudulent and forged Deed of Trust, and fraudulent Real estate documents, thus triggering the injunctive relief provisions of Civil Code § 2924.12 & § 2924.17(a) (b).

3.   Plaintiffs further allege that, Failure to comply, as here, with the requirements set forth under California Homeowner Bill of Rights and California Civil Code 2923.5 forms the gravamen of a cause of action to set aside any notice of trustee's sale, and the availability of a private right of action predicated on a violation of section 2923.5.   Please see *Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159, 1166 (S.D. Cal. 2009).

4.   Plaintiffs allege that, a homeowner may have a private right of action to enjoin material Violations, as here, and to injunctive relief, which will remain in place as the trustee sale is postponed, until the court has an opportunity to determine if there was any material violation. If the trustee's deed upon sale has already been recorded and the court finds that there is a material violation that has not been corrected, the mortgage servicer may be liable for actual damages. Additionally, if the violation is found in court to have been intentional or reckless, the mortgage servicer may be liable to treble actual damages or $50,000, whichever is greater. The court may also award attorney's fees and costs to the prevailing homeowner. *See Civil Code §2924.12*

2

EXHIBIT C - Page 2

77          Exhibit A - Page 82

5.   Plaintiffs allege that, California Civil Code § 2924.12 authorizes actions to enjoin foreclosures, or for damages after foreclosure, for breaches of §§ 2923.55 or 2924.17. This right of private action is "in addition to and independent of any other rights, remedies, or procedures under any other law.

6.   Plaintiffs allege that, in their attempt to conduct, illegal, fraudulent and willful oppressive sale of Plaintiffs' real property, Defendants failed to comply with express requirements of the California Homeowner Bill of Rights which mandates that, prior to recording of the Notice of Default, the Loan Servicer and/ or the Lender must contact homeowner in person or by telephone to discuss options of avoiding foreclosure.

II.
JURISDICTION AND VENUE

7.   The transactions and events which are the subject matter of this Complaint all occurred within the County of Alameda, State of California and the amount in controversy exceeds $25,000.00.

8.   This action arises under California law and venue is proper in this judicial district pursuant to Cal. Civ. Proc. Code §395.  Defendants' obligation and liability arise in this County and some of the Defendants reside and/ or conduct business in the State of California.

III.
THE PARTIES

9.   Plaintiffs, JOSEPH R WYMAN and LISA D WYMAN, ("Plaintiffs"), are now, and at all times relevant to this action, residents of the County of Alameda, State of California.   Plaintiffs are the rightful owners of the real property commonly describe as: 4908 Stoneridge Court, Oakland, CA 94605, ("the subject property").

3

EXHIBIT C - Page 3

Exhibit A - Page 83

10. Plaintiffs are informed and believe and thereon allege that at all relevant times mentioned in this Complaint, Defendant, FIRST AMERICAN TITLE INSURANCE COMPANY, is organized and existing under the laws of United States and under the laws of the State of Nebraska and at all times pertinent, was conducting business in the County of Alameda, State of California.

11. Plaintiffs are informed and believe and thereon allege that at all relevant times mentioned in this Complaint, Defendant, WELLS FARGO BANK, N.A., as Servicing Agent for HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage –Pass Through Certificates, Series 2006-AR18, is organized and existing under the laws of United States; was at all times pertinent, conducting business in the County of Alameda, State of California.

12.  Defendant, WELLS FARGO BANK, N.A., is organized and existing under the laws of United States, and at all relevant times herein, was conducting business in the County of Alameda, State of California and is the purported master Servicer and /Lender.  Prior to recoding the Notice of Default, Defendant failed to contact the Plaintiffs to explore the option of avoiding foreclosure as mandated under the <u>California Homeowner Bill of Rights</u>.

13. Plaintiffs do not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 35, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiffs, or claims some right, title, or interest in the Property.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe, and therefore allege, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiffs so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

4

EXHIBIT C - Page 4

79                    Exhibit A - Page 84

IV.
FACTUAL AND GENERAL ALLEGATIONS

14. Plaintiffs allege that, prior to FIRST AMERICAN TITLE INSURANCE COMPANY recording the Notice of Default, neither the Loan Servicer nor the Lender contacted Plaintiffs in person or by telephone to discuss option of avoiding foreclosure as required by the California Homeowner Bill of Rights.

15. On or about August 11, 2006, (hereinafter referred to as "Closing Date"), Plaintiffs JOSEPH R WYMAN and LISA D WYMAN entered into a consumer credit transaction with, WELLS FARGO BANK, N.A., by obtaining a Seven Hundred Four Thousand dollars (US$704, 000.00) mortgage loan secured by the DEED OF TRUST of Plaintiffs' real property commonly described as: 4908 Stoneridge Court, Oakland, CA 94605 ("the Subject Property"). The true and correct copy of the Deed of Trust is attached hereto as Plaintiffs' **Exhibit "A"** and incorporated herein by reference as if set forth in full herein.

16. Plaintiffs are informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture and enterprise in intrastate and interstate commerce.

17. On or about March 11, 2011, WELLS FARGO BANK., unlawfully issued a purported assignment of deed of trust and purported to transfer and convey all beneficial interest in Plaintiffs' real property, to HSBC BANK, USA, National ASSOCIATION AS Trustee for WELLS FARGO Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-AR18. The true and correct copy of the purported Assignment of Deed Trust" is attached hereto as Plaintiffs' **Exhibit "B"** and incorporated herein by reference as if set forth in full herein.

5

EXHIBIT C - Page 5

Exhibit A - Page 85

1  Plaintiffs allege that, the assignment of deed of trust is void and of no force and effect because

2  WELLS FARGO BANK unlawfully recorded the assignment of deed of trust.

3      18.  On or about May 17, 2016, without notice to Plaintiffs, Defendant, WELLS FARGO

4  BANK, N.A., acting as a purported Servicing Agent for HSBC BANK USA, National Association

5  as Trustee for Wells Fargo Asset Securities Corporation, Mortgage –Pass Through Certificates,

6  Series 2006-AR18, unlawfully substituted FIRST AMERICAN TITLE INSURANCE

7  COMPANY, as trustee under the deed of trust executed by Plaintiffs.   The copy of the

8  "SUBSTITUTION OF TRUSTEE" is attached hereto as Plaintiffs' **Exhibit "C"** and incorporated

9  herein by reference as if set forth in full herein.   Plaintiffs allege, that the substitution of trustee is

10  void and that, FIRST AMERICAN TITLE INSURANCE COMPANY is not a duly appointed

11  trustee.

12      19.   On or about 05/18/2016, Defendant FIRST AMERICAN TITLE INSURANCE

13  COMPANY, unlawfully recorded the "NOTICE OF DEFAULT AND ELECTION TO SELL

14  UNDER THE DEED OF TRUST" of Plaintiffs' real property in the Official Records of the

15  County of Alameda Recorder's office.   The true and correct copy of the "NOTICE OF

16  DEFAULT AND ELECTION TO SELL UNDER THE DEED OF TRUST" is attached hereto as

17  **Exhibit "D"** and incorporated herein by reference as if set forth in full hereto.

18      20.  Plaintiffs are informed and believe, and thereon allege that, the notice of default

19  is false because it fails to accurately depict the amount of Plaintiffs indebtedness if any.

20      21.   Plaintiffs further allege that, the Notice of Default is void because, prior to FIRST

21  AMERICAN TITLE INSURANCE COMPANY recording the Notice of Default, neither the Loan

22  Servicer nor the Lender contacted Plaintiffs in person or by telephone to discuss option of

23  avoiding foreclosure as required by the California Homeowner Bill of Rights.

24      22.  Plaintiffs also seeks redress from Defendants identified herein for damages, for other

25

26

27

28

6

EXHIBIT C - Page 6

Exhibit A - Page 86

injunctive relief, and for cancellation of written instruments based upon: violating California Homeowner Bill of Rights and incomplete and ineffectual perfection of a security interest in Plaintiffs' Home.

23.  Plaintiffs alleges that an actual controversy has arisen and now exists between the Plaintiffs and Defendants, and each of them.  Plaintiffs desires a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Deed of Trust.

24. Plaintiffs are informed and believe, and thereon allege, that the purchase mortgage on the Property, the debt or obligation evidenced by the Note and the Deed of Trust executed by Plaintiffs in favor of the original lender was not properly assigned and/or transferred to Defendants operating the pooled mortgage funds.

25.  Plaintiffs allege that as of the date of the filing of this Complaint, the Deed of Trust had not been legally assigned to any other party or entity.

26.  Plaintiffs are also informed and believe, and thereon alleges that at all times herein mentioned, and any assignment of a Deed of Trust without proper transfer of the obligation that it secures, is a legal nullity.

27.  Plaintiffs are informed and believes, and thereon alleges, that the Mortgage Originator (i.e., the original lender herein) agreed to transfer and endorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiffs' herein and all other mortgage loans.

28.  Plaintiffs allege that the Defendant Trustees are estopped and precluded from asserting any secured or unsecured claim in this case.

29. Plaintiffs are further informed and believes, and thereon alleges, that as a result of the PSA and other documents signed under oath in relation thereto, the Mortgage Originator, sponsor

7

EXHIBIT C - Page 7

82                    Exhibit A - Page 87

1    and Depositor are estopped from claiming any interest in the Note that is allegedly secured by the

2    Deed of Trust on Plaintiffs' real property.

3        30.    Through this action, Plaintiffs seek damages against Defendants, FIRST AMERICAN

4    TITLE INSURANCE COMPANY, WELLS FARGO BANK, N.A., as Servicing Agent for HSBC

5

6    BANK USA, National Association as Trustee for Wells Fargo Asset Securities Corporation,

7    Mortgage –Pass Through Certificates, Series 2006-AR18, and WELLS FARGO BANK, N.A.,

8    resulting from the unlawful and wrongful encumbering of Plaintiffs' real property and for  Treble

9    Damages for Defendants' willful **violation of California Homeowner Bill of Rights**.

10

11

12                    <u>FIRST CAUSE OF ACTION</u>

13    (VIOLATIONS OF CALIFORNIA HOMEOWNERS BILL OF RIGHTS/ TREBLE DAMAGES)

14                        (Against All Defendants)

15

16        31.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as

17    though fully set forth herein.

18        32.    Plaintiffs allege that, WELLS FARGO BANK, N.A., alleged Master Servicers and

19    Lender and the remaining Defendants, (hereinafter "the foreclosing Defendants"), and each of

20    them failed to comply with the express requirements of the Pre-Notice of Default Outreach

21    Requirements mandated by the California Homeowners Bill of Rights.

22        33. On information and belief, Plaintiffs allege that the Notice of Default, Substitution of

23    Trustee, and Notice of Trustee's Sale were recorded on Plaintiffs' real property by the

24    Defendants, WELLS FARGO BANK, N.A., alleged Master Servicers and Lender and the

25

26    remaining Defendants, were based upon a fraudulent and forged Deed of Trust, and fraudulent

27    Real estate documents, thus triggering the injunctive relief provisions of Civil Code § 2924.12 &

28    § 2924.17(a) (b).

                        8

EXHIBIT C - Page 8

Exhibit A - Page 88

34. Plaintiffs further allege that, notwithstanding the declaration provided by the Defendant, prior to the recording the Notice of Default under Plaintiffs' real property, neither the Loan Servicer nor the Lender contacted Plaintiffs in person or by telephone in order to assess Plaintiffs' financial situation and explore options for Plaintiffs to avoid foreclosure as mandated by the express requirement of California Homeowner Bill of Right and the express requirement of the California Civil Code 2923.5.

35.     Plaintiffs contend that, Civil Code § 2924.12 authorizes actions to enjoin foreclosures, or for damages after foreclosure, for breaches of §§ 2923.55 or 2924.17. This right of private action is "in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law." Civil Code § 2924.12(h). Any Notice of Default, or Substitution of Trustee recorded on Plaintiffs' real property based upon a fraudulent and forged Deed of Trust shall be considered a "Material Violation", thus triggering the injunctive relief provisions of Civil Code § 2924.12 & § 2924.17(a) (b).

36. Plaintiffs allege that the servicer and the foreclosing Defendants did not exercise due diligence to contact Plaintiffs as required under the California Homeowner Bill of Rights.

37.     Plaintiffs contends that During the 30 days period prior to Foreclosing Defendants, filing a Notice of Default, Plaintiffs were never contacted in person or by telephone in order to assess their financial situation or to explore options to avoid foreclosure and consider or offer a possible permanent loan modification as mandated by the express requirements of the Pre-Notice of Default Outreach under the California Homeowners Bill of Rights.

38.     On information and believe, Plaintiffs allege that there is no Statute of Limitation impediment to their cause of action for violation of California Homeowner Bill of Rights because Borrowers will have authority to seek redress of "material" violations of the new foreclosure

9

EXHIBIT C - Page 9

84                    Exhibit A - Page 89

1  process protections. Injunctive relief will be available prior to a foreclosure sale and recovery of

2  damages will be available following a sale. (AB 278, SB 900):

3

4                              **California Homeowner Bill of Rights**

5  The California Homeowner Bill of Rights became law on January 1, 2013 to ensure fair lending
   and borrowing practices for California homeowners.

6  The laws are designed to guarantee basic fairness and transparency for homeowners in the
7  foreclosure process. Key provisions include:

8      • **Restriction on dual track foreclosure:** Mortgage servicers are restricted from advancing
         the foreclosure process if the homeowner is working on securing a loan modification.
9        When a homeowner completes an application for a loan modification, the foreclosure
         process is essentially paused until the complete application has been fully reviewed.
10
       • **Guaranteed single point of contact:** Homeowners are guaranteed a single point of
11       contact as they navigate the system and try to keep their homes – a person or team at the
         bank who knows the facts of their case, has their paperwork and can get them a decision
12       about their application for a loan modification.

13     • **Verification of documents:** Lenders that record and file multiple unverified documents
         will be subject to a civil penalty of up to $7,500 per loan in an action brought by a civil
14       prosecutor. Lenders who are in violation are also subject to enforcement by licensing
15       agencies, including the Department of Business Oversight, the Bureau of Real Estate.

16     • **Enforceability:** Borrowers will have authority to seek redress of "material" violations of
         the new foreclosure process protections. Injunctive relief will be available prior to a
17       foreclosure sale and recovery of damages will be available following a sale. (AB 278, SB
         900)
18
       • **Tenant rights:** Purchasers of foreclosed homes are required to give tenants at least 90
19       days before starting eviction proceedings. If the tenant has a fixed-term lease entered into
20       before transfer of title at the foreclosure sale, the owner must honor the lease unless the
         owner can prove that exceptions intended to prevent fraudulent leases apply. (AB 2610)
21
       • **Tools to prosecute mortgage fraud:** The statute of limitations to prosecute mortgage-
22       related crimes is extended from one to three years, allowing the Attorney General's office
         to investigate and prosecute complex mortgage fraud crimes. In addition, the Attorney
23       General's office can use a statewide grand jury to investigate and indict the perpetrators of
         financial crimes involving victims in multiple counties.
24       (AB 1950, SB 1474)

25     • **Tools to curb blight:** Local governments and receivers have additional tools to fight blight
         caused by multiple vacant homes in their neighborhoods, from more time to allow
26       homeowners to remedy code violations to a means to compel the owners of foreclosed
27       property to pay for upkeep.
         (AB 2314)
28

                                              10

EXHIBIT C - Page 10

85                    Exhibit A - Page 90

The California Homeowner Bill of Rights marked the third step in Attorney General Harris' response to the state's foreclosure and mortgage crisis. The Mortgage Fraud Strike Force was created in May 2011 to investigate and prosecute misconduct at all stages of the mortgage process. In February 2012, Attorney General Harris secured a commitment from the nation's five largest banks for up to $18 billion for California borrowers.

39. Plaintiffs allege on information and believe, that they are entitled to notice by foreclosing Defendants, prior to the recording of Notice of Default and Notice of Trustee's sale of their real property.   Plaintiffs further allege that no Notice was accorded to Plaintiffs by the Defendants herein sued.

40. Plaintiffs allege, that their real property is unique and their constitutional protected liberty interest in their real property is sacrosanct; as such, due process requires proper notice before any encumbrance or sale thereof.

41. As a direct and proximate result of the Servicer and the Foreclosing Defendants' failure to comply with the express requirement of the California Homeowners Bill of Rights, Plaintiffs have suffered general and special damages in an amount to be determined at jury trial.

42. As a direct and proximate result of the Servicer and the Foreclosing Defendants' failure to comply with the express requirement of the California Homeowners Bill of Rights, Plaintiff is entitled to treble damages against the foreclosing Defendants and each of them.

43. As a direct and proximate result of the Servicer and the Foreclosing Defendants' failure to comply with the express requirement of the California Homeowners Bill of Rights, Plaintiffs have suffered general and special damages in an amount to be determined at jury trial.

## PRAYER FOR TREBLE DAMAGES

44. WHEREFORE, Plaintiff further seek TREBLE DAMAGES for disparagement and for putting cloud on title on Plaintiffs' real property.

11

EXHIBIT C - Page 11

86        Exhibit A - Page 91

45. As a direct and proximate result of the Servicer and the Foreclosing Defendants' failure to comply with the express requirement of the California Homeowners Bill of Rights, Plaintiffs have suffered injury in fact and Plaintiffs' injuries are fairly traceable the Defendants and each of them.

46. On information and belief, Plaintiffs allege that, the assignment of deed of trust, Notice of Default, Substitution of Trustee, and Notice of Trustee's Sale were recorded on Plaintiffs' real property by the Defendants herein sued, were based upon a fraudulent and forged Deed of Trust, and fraudulent Real estate documents, thus triggering the injunctive relief provisions of Civil Code § 2924.12 & § 2924.17(a) (b).

47. Additionally, Plaintiffs allege that, because of Defendants, FIRST AMERICAN TITLE INSURANCE COMPANY, WELLS FARGO BANK, N.A., as Servicing Agent for HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage – Pass Through Certificates, Series 2006-AR18, and WELLS FARGO BANK, N.A unlawful conduct allege herein in this well pled complaint have been intentional or reckless, the mortgage servicer/lender and the Defendants herein sued and each of them is liable to Plaintiffs for treble and actual damages or $50,000, whichever is greater.

## SECOND CAUSE OF ACTION

### (INJUNCTIVE RELIEF)

#### (Against all Defendants)

48.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

49.     An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties regarding the Note and Trust Deed.

12

EXHIBIT C - Page 12

87                    Exhibit A - Page 92

50. On information and belief, Plaintiffs allege that the Notice of Default, Substitution of Trustee, and Notice of Trustee's Sale were recorded on Plaintiffs' real property by the Defendants, WELLS FARGO BANK, N.A., alleged Master Servicers and Lender and the remaining Defendants, were based upon a fraudulent and forged Deed of Trust, and fraudulent Real estate documents, thus triggering the injunctive relief provisions of Civil Code § 2924.12 & § 2924.17(a) (b).

51.    On information and belief, Plaintiffs allege that, Plaintiffs allege that the, Assignment of deed of trust, Notice of Default, Substitution of Trustee, and Notice of Trustee's Sale are void and of no force and effect because they were promulgated by the recording of fraudulent real estate documents by Defendants, FIRST AMERICAN TITLE INSURANCE COMPANY, WELLS FARGO BANK, N.A., as Servicing Agent for HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage –Pass Through Certificates, Series 2006-AR18, and WELLS FARGO BANK, N.A.   Furthermore the recording of the Notice of Default, and Notice of Trustee's Sale are void and are of no force and effect because their recordings failed to comport with the due diligence and express requirements of the California Homeowner Bill of Rights and the requirements of Civil Code Section 2923.5.

52.    Plaintiffs contends that pursuant to the mortgage loans and the Deed of Trust, Defendants, do not have authority to foreclose upon and/or sell Plaintiffs' real properties described above.

53.    Plaintiffs allege that, in addition to violating the California Homeowner Bill of Rights, Defendants knowingly concealed their lack of an enforceable security interests in plaintiffs' real properties by fabricating and recording false documents in the Alameda County Recorder's Office.

54.    Plaintiffs brings this action for preliminary injunction against Defendants, FIRST AMERICAN TITLE INSURANCE COMPANY, WELLS FARGO BANK, N.A., as Servicing

13

EXHIBIT C - Page 13

88                     Exhibit A - Page 93

1  Agent for HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities

2  Corporation, Mortgage –Pass Through Certificates, Series 2006-AR18, WELLS FARGO BANK,

3  N.A and their agents, officers, employees, and affiliates or associated parties for their and their

4  predecessors' actions in engaging in a pattern of unlawful, fraudulent, and unfair predatory real

5  estate practices causing Plaintiffs to become victims of such behavior and to be in jeopardy of

6

7  losing their real property through unlawful non- judicial foreclosure.

8  55.    Plaintiffs have clear legal rights to seek temporary and permanent injunctive relief as

9  Plaintiffs have legal rights to their real property and as Defendants are without any satisfying and

10  necessary legal standing to institute a foreclosure, are seeking, to take possession, custody, and

11  control of Plaintiffs' real property and ultimately remove the Plaintiffs from their home/real

12  property.

13

14  56.    Plaintiffs have no adequate remedy at law to redress the harm complained of, and the

15  sale of the Plaintiff's property, under the circumstances of record, is contrary to equity and good

16  conscience in that such sale is being instituted by Defendants who have no legal standing to

17  institute or maintain the non-judicial foreclosure.

18

19  57.    The specific facts set forth in this Complaint demonstrates that unless an injunctive

20  relief temporary is granted against Defendants from removing Plaintiffs from their real properties

21  during the pendency of this lawsuit, Plaintiffs will suffer irreparable injury, loss, and damage of

22  her real properties and eviction therefrom.   The threatened injury to Plaintiff's properties and

23  personal rights cannot be compensated for by an ordinary damage award in that Plaintiffs real

24  properties are unique.

25  58.    Under the circumstances where the unlawful non-judicial foreclosure sale has occurred

26  and Defendants are threatening to remove Plaintiffs from their property, irreparable loss to

27  Plaintiffs will result if the Injunctive Relief requested herein is not granted immediately.

28

14

EXHIBIT C - Page 14

89                    Exhibit A - Page 94

59.     As Defendants has no legal standing to institute or maintain a foreclosure of the Property, there is no harm to said Defendant with the granting of the requested relief, and any claimed harm is substantially outweighed by the irreparable harm to the Plaintiffs if the relief requested herein is not granted.

60.     The granting of the relief requested herein is in the public interest, as the consuming public, including Plaintiffs, will continue to be harmed by the illegal and unlawful conduct of the Defendants if the relief requested herein is not granted.

61.     Under the circumstances where there is no harm to Defendant with the granting of the requested relief, no bond should be required as a prerequisite to the granting of the relief requested herein as there are no costs or other damages which could be contemplated on the part of Defendants with the granting of the requested relief for which a bond would otherwise be necessary.

**WHEREFORE,** Plaintiffs respectfully request that this Court immediately take jurisdiction of this matter and enter an Order granting temporary and permanent injunctive relief expressly precluding Defendants, FIRST AMERICAN TITLE INSURANCE COMPANY, WELLS FARGO BANK, N.A., as Servicing Agent for HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage –Pass Through Certificates, Series 2006-AR18, WELLS FARGO BANK, N.A and their agents and assigns, from enforcing the non-judicial foreclosure and from removing Plaintiffs from their real property during the pendency of this action.

////

////

15

EXHIBIT C - Page 15

90                    Exhibit A - Page 95

### THIRD CAUSE OF ACTION

#### (PREDATORY LENDING PRACTICES)

##### (Against all Defendants)

62.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

63.   Plaintiffs are informed and believes, and based thereon alleges that Defendants, WELLS FARGO BANK, N.A., and each of the Defendants, have collaborated to engage and engaged in predatory lending practices with respect to Plaintiffs in violation Business and Professions Code §17200 and as Predatory Lending as defined in *American Financial Services Assn. v. City of Oakland* (2005)34 Cal.4th 1239.

64.   Plaintiffs are informed and believes, and based thereon alleges that the statutory violations and unlawful actions or practices of Defendants as alleged in this Complaint constitute unlawful business acts and practices within the meaning of California Business and Professions Code § 17200 et seq.

65.   Plaintiffs allege that, on or about March 11, 2011, WELLS FARGO BANK, unlawfully issued a purported assignment of deed of trust and purported to transfer and convey all beneficial interest in Plaintiffs' real property, to HSBC BANK, USA, National ASSOCIATION AS Trustee for WELLS FARGO Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-AR18.   (Plaintiffs' **Exhibit "B"**).  Plaintiffs allege that, the assignment of deed of trust is void and of no force and effect because WELLS FARGO BANK, and the remaining foreclosing Defendants recorded fraudulent real estate documents when they unlawfully recorded the purported assignment of deed of trust under Plaintiffs' Note and deed of Trust.

16

EXHIBIT C - Page 16

91                          Exhibit A - Page 96

66. Plaintiffs allege that, on or about May 17, 2016, without notice to Plaintiffs, Defendant, WELLS FARGO BANK, N.A., acting as a purported Servicing Agent for HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage –Pass Through Certificates, Series 2006-AR18, unlawfully substituted FIRST AMERICAN TITLE INSURANCE COMPANY, as trustee under the deed of trust executed by Plaintiffs. (Plaintiffs' **Exhibit "C"**). Plaintiffs allege, that the substitution of trustee is void and that, FIRST AMERICAN TITLE INSURANCE COMPANY is not a duly appointed trustee. Plaintiffs allege that this void substitution of trustee formed the basis for unlawfully recording of the Notice of Default and the Notice of Trustee's sale.

67. Plaintiffs allege that, on or about 05/18/2016, Defendant FIRST AMERICAN TITLE INSURANCE COMPANY, unlawfully recorded the "NOTICE OF DEFAULT AND ELECTION TO SELL UNDER THE DEED OF TRUST" of Plaintiffs' real property in the Official Records of the County of Alameda Recorder's office. (Plaintiffs' **Exhibit "D"**). Plaintiffs are informed and believe, and thereon allege that, the notice of default is false because it fails to accurately depict the amount of Plaintiffs indebtedness if any.

68. Plaintiffs further allege that, the Notice of Default is void because, prior to FIRST AMERICAN TITLE INSURANCE COMPANY recording the Notice of Default, neither the Loan Servicer nor the Lender contacted Plaintiffs in person or by telephone to discuss option of avoiding foreclosure as required by the California Homeowner Bill of Rights.

69. Said unlawful business acts and practices include Defendants' failure to comply with statutory disclosure requirements under the Rosenthal Fair Debt Collection Practices Act.

70. Plaintiffs alleges that Defendants' misconduct, as alleged herein, has given them an unfair competitive advantage over their competitors in that, had they complied with their obligations, Plaintiffs and other similarly situated homeowners might have obtained financing

17

EXHIBIT C - Page 17

92                        Exhibit A - Page 97

1   from another lender on better and fair terms.

2       71.    Plaintiffs alleges that as a direct and proximate result of Defendants' actions, they

3   have prospered at Plaintiffs' expense and benefited from collecting mortgage payments and

4   potentially foreclosing on Plaintiffs' property.

5       72.    Plaintiffs are further informed and believes, and based thereon alleges that

6   Defendants, and each of them, have engaged in additional violations of the aforementioned

7   statutes, the specifics of which are unknown, but which are subject to discovery and with respect

8   

9   to which specifics will be alleged by amendment to this Complaint when ascertained.

10  

11  

12  WHEREFORE, Plaintiffs are entitled to equitable relief, including, restitution, and disgorgement

13  of all profits obtained by Defendants by virtue of their misconduct.

14  

15  

16                          FOURTH CAUSE OF ACTION

17              (VIOLATION OF CALIFORNIA B&P CODE § 17200 ET SEQ)

18                            (Against all Defendants)

19  

20      73.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

21  fully set forth herein.

22      74.    Plaintiffs are informed and believes and thereon alleges that beginning as early as

23  2006, and continuing to the present time, Defendants, FIRST AMERICAN TITLE INSURANCE

24  COMPANY, WELLS FARGO BANK, N.A., as Servicing Agent for HSBC BANK USA,

25  National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage –Pass

26  Through Certificates, Series 2006-AR18, WELLS FARGO BANK, N.A are liable for acts of

27  unfair competition as defined by Business and Professions Code §17200, by engaging in the acts

28  

18

EXHIBIT C - Page 18

93                     Exhibit A - Page 98

1   as described above; namely, Defendants' policies and practices described above violate all the

2   statutes as previously listed and California Civil Code §1709, and consequently constitute

3   unlawful business acts or practices within the meaning of Business and Professions Code §17200.

4

5       75.   In determining whether a business act or practice is unfair, the court weighs the utility of

6   the conduct of Lender and Trustee against the gravity of the harm to the Plaintiff. Trustee and

7   Lender misled Plaintiff and the Department of Corporations by representing to them that there is a

8   loan modification program available to those, like Plaintiff, whose homes are in danger of

9   foreclosure. Trustee and Lender also misled Plaintiff by representing to them that the foreclosure

10  process would be delayed during the loan modification process.

11      76. The actions of Defendants, and each of them, in filing the fraudulently Deceptive Notice of

12  Default and without complying with Civil Code Sections 2932.5, 2924, 2923.5 and 2923.6 have

13  misled Plaintiff and similarly situated persons into believing their mortgage is in default and that

14  actual applying for or continuing with the modification process would prevent the foreclosure

15  proceedings. This was done intentionally unfairly and, misleading, and fraudulent. Trustee had no

16

17  right to file a Notice of Default until complete compliance with Civil Code Section 2932.5,

18  2923.5, 2923.6 and 2924.

19      77.  Plaintiffs allege that, on or about March 11, 2011, WELLS FARGO BANK,

20  unlawfully issued a purported assignment of deed of trust and purported to transfer and convey all

21  beneficial interest in Plaintiffs' real property, to HSBC BANK, USA, National ASSOCIATION

22  AS Trustee for WELLS FARGO Asset Securities Corporation, Mortgage Pass-Through

23  Certificates, Series 2006-AR18.   (Plaintiffs' **Exhibit "B").**  Plaintiffs allege that, the assignment

24  of deed of trust is void and of no force and effect because WELLS FARGO BANK, and the

25  remaining foreclosing Defendants recorded fraudulent real estate documents when they

26

27

28

19

EXHIBIT C - Page 19

94                    Exhibit A - Page 99

1   unlawfully recorded the purported assignment of deed of trust under Plaintiffs' Note and deed of

2   Trust.

3       78.   Plaintiffs allege that, on or about May 17, 2016, without notice to Plaintiffs, Defendant,

4   WELLS FARGO BANK, N.A., acting as a purported Servicing Agent for HSBC BANK USA,

5   National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage –Pass

6

7   Through Certificates, Series 2006-AR18, unlawfully substituted FIRST AMERICAN TITLE

8   INSURANCE COMPANY, as trustee under the deed of trust executed by Plaintiffs.   (Plaintiffs'

9   Exhibit "C"). Plaintiffs allege, that the substitution of trustee is void and that, FIRST

10  AMERICAN TITLE INSURANCE COMPANY is not a duly appointed trustee.  Plaintiffs allege

11  that this void substitution of trustee formed the basis for unlawfully recording of the Notice of

12  Default and the Notice of Trustee's sale.

13

14      79.   Plaintiffs allege that, on or about 05/18/2016, Defendant FIRST AMERICAN TITLE

15  INSURANCE COMPANY, unlawfully recorded the "NOTICE OF DEFAULT AND ELECTION

16  TO SELL UNDER THE DEED OF TRUST" of Plaintiffs' real property in the Official Records of

17  the County of Alameda Recorder's office.   (Plaintiffs' Exhibit "D").   Plaintiffs are informed

18  and believe, and thereon allege that, the notice of default is false because it fails to accurately

19  depict the amount of Plaintiffs indebtedness if any.

20

21      80.   Plaintiffs further allege that, the Notice of Default is void because, prior to FIRST

22  AMERICAN TITLE INSURANCE COMPANY recording the Notice of Default, neither the Loan

23  Servicer nor the Lender contacted Plaintiffs in person or by telephone to discuss option of

24  avoiding foreclosure as required by the California Homeowner Bill of Rights.

25      81.    Said unlawful business acts and practices include Defendants' failure to comply

26  with statutory disclosure requirements under the Rosenthal Fair Debt Collection Practices Act.

27      82.    Plaintiffs  alleges that Defendants' misconduct, as alleged herein, has given them

28

20

EXHIBIT C - Page 20

an unfair competitive advantage over their competitors in that, had they complied with their obligations, Plaintiffs and other similarly situated homeowners might have obtained financing from another lender on better and fair terms.

83. Trustee and Lender had no right to try to sell the Subject Property while there was a tainted, fraudulent Notice of Default. The harm to Plaintiff and to members of the general public outweighs the utility of the policy and practices of Trustee and Lender consequently constitute an unlawful business act of practice within the meaning of Business and Professions Code §17200.

84.  Further, the foregoing conduct threatens an incipient violation of a consumer law, including or violates the policy or spirit of such law or otherwise significantly threatens or harms competition. Trustee's practices described above are likely to mislead the general public, and therefore, constitute a fraudulent business act of practice within the meaning of Business and Professions Code §17200. The unfair, unlawful, and fraudulent business practices and false and misleading advertising of Trustee and Lender present a continuing threat to members of public in that other consumers will be defrauded into closing on similar fraudulent loans. Plaintiff and other members of the general public have no other adequate remedy of law.

85. The misrepresentations by Trustee and Lender consisted of failure to disclose and to investigate as described above with intent to induce Plaintiff to obligate themselves on the Loan in reliance on the integrity of Lender.

86. As an unsophisticated customer, Plaintiff could not have discovered the true nature of the material facts on their own.

87. The accuracy of the representations of Trustee and Lender is important in enabling consumers such as Plaintiff to compare market lenders in order to make informed decisions regarding lending transactions such as a loan described herein.

88. Plaintiff's reliance on Trustee and Lender was a substantial factor in causing the harm

21

EXHIBIT C - Page 21

96                    Exhibit A - Page 101

1   Plaintiff suffered.

2       89. Trustee and Lender conspired and agreed to commit the above-mentioned fraud.

3       90. As a proximate result of the fraud and non-compliance with state foreclosure laws and the

4   terms of the Deed of Trust by Trustee and Lender Trustee dispossessed Plaintiff and took

5   Plaintiff's home in a foreclosure sale and caused Plaintiff to suffer injury to credit standing in an

6

7   amount to be determined at trial.

8       91. The conduct of Trustee and Lender was fraudulent within the meaning of California

9   Civil Code §3294(c)(3), and by virtue thereof Plaintiff is entitled to an award of punitive damages

10  in an amount sufficient to punish and make an example of Trustee and Lender.

11      92. Plaintiff is an unsophisticated customer whose reliance upon Lender and Trustee was

12  reasonable and consistent with the intent of the Legislative, the purpose of California Civil Code

13  §1572, enacted in 1872 and designed to assist and protect consumers similarly situated with

14  Plaintiff in this action.

15

16      93. Plaintiff alleges that as a result Defendants' [supra] violations of *California Business &*

17  *Professions Code* section 17200, Plaintiff has been damaged in the following ways: (1) multiple

18  parties may seek to enforce his debt obligation against Plaintiff; (2) the title to Plaintiff's real

19  property has been clouded and its salability has been rendered unmarketable, as any buyer of

20  Plaintiff's home will find themselves in legal limbo, unable to know whether they can safely buy

21  Plaintiff's home or get title insurance; (3) Plaintiff is unable to determine whether the monthly

22  mortgage payments has been sent to the right party; (4) Plaintiff's credit and credit score have

23  been damaged; and (5) Plaintiff has expended significant funds to cover the cost of this litigation.

24

25      94. As a result of the aforementioned acts. Plaintiff has lost money or property and suffered

26  injury in fact. Lender received and continues to hold the money of Plaintiff and other members of

27  the public who have fallen victim to the schemes of Lender and Trustee.

28

<center>22</center>

EXHIBIT C - Page 22

97                              Exhibit A - Page 102

<div align="center">

FIFTH CAUSE OF ACTION

(CONSTRUCTIVE FRAUD)

(Against all Defendants)

</div>

95.  Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

96.  Plaintiffs, are and at all times herein mention is the rightful owner of the subject property located at 4908 Stoneridge Court, Oakland, CA 94605.

97. Plaintiffs and each of them is, the original Trustor under the Deed of Trust which secured the property and recorded in the official records of Alameda County, California.

98.  Plaintiffs are informed and believe and thereon alleges that Defendants, FIRST AMERICAN TITLE INSURANCE COMPANY, WELLS FARGO BANK, N.A., as Servicing Agent for HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage –Pass Through Certificates, Series 2006-AR18, WELLS FARGO BANK, N.A and each of them claim an interest in the property adverse to Plaintiff herein by false misrepresentation.

99. Plaintiffs allege that, on or about March 11, 2011, WELLS FARGO BANK, unlawfully issued a purported assignment of deed of trust and purported to transfer and convey all beneficial interest in Plaintiffs' real property, to HSBC BANK, USA, National ASSOCIATION AS Trustee for WELLS FARGO Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-AR18.  (Plaintiffs' **Exhibit "B"**).  Plaintiffs allege that, the assignment of deed of trust is void and of no force and effect because WELLS FARGO BANK, and the remaining foreclosing Defendants recorded fraudulent real estate documents when they unlawfully recorded the purported assignment of deed of trust under Plaintiffs' Note and deed of Trust.

<div align="center">

23

</div>

EXHIBIT C - Page 23

98                    Exhibit A - Page 103

100.     Plaintiffs allege that, on or about May 17, 2016, without notice to Plaintiffs,

Defendant, WELLS FARGO BANK, N.A., acting as a purported Servicing Agent for HSBC

BANK USA, National Association as Trustee for Wells Fargo Asset Securities Corporation,

Mortgage –Pass Through Certificates, Series 2006-AR18, unlawfully substituted FIRST

AMERICAN TITLE INSURANCE COMPANY, as trustee under the deed of trust executed by

Plaintiffs.  (Plaintiffs' **Exhibit "C"**).  Plaintiffs allege, that the substitution of trustee is void and

that, FIRST AMERICAN TITLE INSURANCE COMPANY is not a duly appointed trustee.

Plaintiffs allege that this void substitution of trustee formed the basis for unlawfully recording of

the Notice of Default and the Notice of Trustee's sale.

101.     Plaintiffs allege that, on or about 05/18/2016, Defendant FIRST AMERICAN

TITLE INSURANCE COMPANY, unlawfully recorded the "NOTICE OF DEFAULT AND

ELECTION TO SELL UNDER THE DEED OF TRUST" of Plaintiffs' real property in the

Official Records of the County of Alameda Recorder's office.    (Plaintiffs' **Exhibit "D"**).

Plaintiffs are informed and believe, and thereon allege that, the notice of default is false because it

fails to accurately depict the amount of Plaintiffs indebtedness if any.

102.     Plaintiffs further allege that, the Notice of Default is void because, prior to FIRST

AMERICAN TITLE INSURANCE COMPANY recording the Notice of Default, neither the Loan

Servicer nor the Lender contacted Plaintiffs in person or by telephone to discuss option of

avoiding foreclosure as required by the California Homeowner Bill of Rights.

103.     Said unlawful business acts and practices include Defendants' failure to comply

with statutory disclosure requirements under the Rosenthal Fair Debt Collection Practices Act.

104.     Plaintiffs  alleges that Defendants' misconduct, as alleged herein, has given them

an unfair competitive advantage over their competitors in that, had they complied with their

obligations, Plaintiffs and other similarly situated homeowners might have obtained financing

24

EXHIBIT C - Page 24

99                    Exhibit A - Page 104

1  from another lender on better and fair terms.

2      105.    Plaintiffs are informed and believe and thereon alleges that Defendants FIRST

3  AMERICAN TITLE INSURANCE COMPANY, WELLS FARGO BANK, N.A., as Servicing

4  Agent for HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities

5  Corporation, Mortgage –Pass Through Certificates, Series 2006-AR18, and WELLS FARGO

6  BANK, N.A, in conspiracy with, each and all of the DOES Defendants entered into an agreement

7  of peonage, and through malicious acts, duress, coercion and fraud, and through promulgating

8  counterfeit securities, with respect to Plaintiff's home in violation of *California law,* California

9  Homeowner Bill of rights, violation of CCP § 2924 (a)(6),  California Civil Code 2923 (a) (2) and

10 California Civil Code 2923.5 (g) (2) and other foreclosure laws.

11     106.    Plaintiffs are informed and believe and thereon alleges that Defendants, FIRST

12 AMERICAN TITLE INSURANCE COMPANY, WELLS FARGO BANK, N.A., as Servicing

13 Agent for HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities

14 Corporation, Mortgage –Pass Through Certificates, Series 2006-AR18, and WELLS FARGO

15 BANK, N.A are insured pursuance to insurance laws and at least one of the Defendants is a State

16 insured institution and has a duty of candor and a duty to cause harm to individual member of the

17 public.

18     107.    Plaintiffs are informed and believe and thereon alleges that Defendant breached

19 this duty when it conspired with others implementing fraudulent assignments and securitization

20 schemes to foreclose on Plaintiffs' Real Property.

21     108.    Plaintiffs are informed and believe and thereon alleges that Defendants, FIRST

22 AMERICAN TITLE INSURANCE COMPANY, WELLS FARGO BANK, N.A., as Servicing

23 Agent for HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities

24 Corporation, Mortgage –Pass Through Certificates, Series 2006-AR18, and WELLS FARGO

25

26     EXHIBIT C - Page 25

27

28     100        Exhibit A - Page 105

1   BANK, N.A had a fiduciary relationship with Plaintiff for which they conspired to breach.   (CC §

2   1573; *Schauer v. Mandarin Gems of Cal. Inc.*, (2005) 125 Cal. App. 4th 949, 961.).

3       109.    Plaintiffs are informed and believe and thereon alleges that Defendants conspired

4   with each of them and through false misrepresentation, concealment and nondisclosure of

5   assignment instrument in their zeal to induce reliance, justifiable reliance with the co-conspirators

6
7   to assert fraudulent claim and of Plaintiff real property.  All Defendants individually, including

8   DOE Defendants had knowledge of this falsity.

9       110.    As direct and proximate result of Defendants' illegal foreclosure schemes,

10  Plaintiffs have been harm and the extent of Plaintiffs' injury will be determined by the jury at

11  trial.  (Philipson & Simon v. Gulsvig (2007) 154 Cal.App.4th 347, 363.)

12
13
14                          SIXTH CAUSE OF ACTION

15                          (FRAUD IN THE CONCEALMENT)

16                          (Against all Defendants)

17      111.    Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as

18  though fully set forth herein.

19      112.    Plaintiffs are informed and believe that, Defendants, FIRST AMERICAN TITLE

20
21  INSURANCE COMPANY, WELLS FARGO BANK, N.A., as Servicing Agent for HSBC BANK

22  USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage –

23  Pass Through Certificates, Series 2006-AR18, and WELLS FARGO BANK, N.A., concealed the

24  fact that the Loans were securitized as well as the terms of the Securitization Agreements,

25  including, inter alia: (1) Financial Incentives paid; (2) existence of Credit Enhancement

26  Agreements, and (3) existence of Acquisition Provisions. By concealing the securitization,

27  Defendant concealed the fact that Borrower's loan changed in character inasmuch as no single

28

26

EXHIBIT C - Page 26

101        Exhibit A - Page 106

party would hold the Note but rather the Notes would be included in a pool with other notes, split into tranches, and multiple investors would effectively buy shares of the income stream from the loans. Changing the character of the loan in this way had a materially negative effect on Plaintiff that was known by Defendant but not disclosed.

113.    Defendants knew or should have known that had the truth been disclosed, Plaintiffs would not have entered into the Loans.

114.    Defendants intended to induce Plaintiffs based on these misrepresentations and improper disclosures.

115.    Plaintiffs' reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Plaintiffs could have been alerted to issues of concern.   Plaintiffs would have known of Defendants true intentions and profits from the proposed risky loan. Plaintiffs would have known that the actions of Defendants would have an adverse effect on the value of Plaintiffs' home.

116.    Plaintiffs are informed and believe that, Defendants, FIRST AMERICAN TITLE INSURANCE COMPANY, WELLS FARGO BANK, N.A., as Servicing Agent for HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage – Pass Through Certificates, Series 2006-AR18, and WELLS FARGO BANK, N.A failure to disclose the material terms of the transaction induced Plaintiffs to enter into the loans and accept the Services as alleged herein.

117.    Defendants were aware of the misrepresentations and profited from them.

118.    As a direct and proximate result of the misrepresentations and concealment Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiffs have incurred costs and attorney's fees.

27

EXHIBIT C - Page 27

119.        Defendants are guilty of malice, fraud and/or oppression.  Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiffs in that the actions were calculated to injure Plaintiffs.   As such Plaintiffs are entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

<div align="center">

SEVENTH CAUSE OF ACTION

(FRAUD IN THE INDUCEMENT)

(Against all Defendants)

</div>

120.        Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

121.        Plaintiffs allege that, Defendants, FIRST AMERICAN TITLE INSURANCE COMPANY, and WELLS FARGO BANK, N.A., as Servicing Agent for HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage –Pass Through Certificates, Series 2006-AR18, intentionally misrepresented to Plaintiffs those Defendants were entitled to exercise the power of sale provision contained in the Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

122.        Plaintiffs allege that, Defendants, FIRST AMERICAN TITLE INSURANCE COMPANY, and WELLS FARGO BANK, N.A., as Servicing Agent for HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage –Pass Through Certificates, Series 2006-AR18, misrepresented that they are the "holder and owner" of the Note and the beneficiary of the Deed of Trust.  However, this was not true and was a misrepresentation of material fact.  Documents state that the original lender allegedly sold the

<div align="center">

28

</div>

EXHIBIT C - Page 28

103          Exhibit A - Page 108

mortgage loan to FIRST AMERICAN TITLE INSURANCE COMPANY, and WELLS FARGO

BANK, N.A., as Servicing Agent for HSBC BANK USA, National Association as Trustee for

Wells Fargo Asset Securities Corporation, Mortgage –Pass Through Certificates, Series 2006-

AR18, Defendants were attempting to collect on a debt to which they have no legal, equitable, or

pecuniary interest in. This type of conduct is outrageous. Defendants are fraudulently foreclosing

on the Property which they have no monetary or pecuniary interest. This type of conduct is

outrageous.

123.    Defendants' failure to disclose the material terms of the transaction induced

Plaintiff to enter into the loans and accept the Services as alleged herein.

124.    The material misrepresentations were made by Defendants with the intent to cause

Plaintiff to reasonably rely on the misrepresentation in order to induce the Plaintiffs to rely on the

misrepresentations and foreclosure on the Property.  This material misrepresentation was made

with the purpose of initiating the securitization process as illustrated above, in order to profit from

the sale of the Property by selling the note to sponsors who then pool the note and sell it to

investors.

125.    Defendants were aware of the misrepresentations and profited from them.

126.    As a direct and proximate result of the misrepresentations and concealment,

Plaintiffs were damaged in an amount to be proven at trial, including but not limited to costs of

Loan, damage to Plaintiffs' financial security, emotional distress, and Plaintiffs have incurred

costs and attorney's fees.

127.    Defendants are guilty of malice, fraud and/or oppression.  Defendants' actions

were malicious and done willfully in conscious disregard of the rights and safety of Plaintiffs in

that the actions were calculated to injure Plaintiffs.   As such Plaintiffs are entitled to recover, in

29

EXHIBIT C - Page 29

104        Exhibit A - Page 109

1   addition to actual damages, punitive damages to punish Defendants and to deter them from

2   engaging in future misconduct.

3

4                           EIGHTH CAUSE OF ACTION

5                               (SLANDER OF TITLE)

6                              (Against all Defendants)

7

8       128.      Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

9   fully set forth herein.

10      129.      Plaintiffs allege that, Defendants, FIRST AMERICAN TITLE INSURANCE

11  COMPANY, WELLS FARGO BANK, N.A., as Servicing Agent for HSBC BANK USA,

12  National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage –Pass

13  Through Certificates, Series 2006-AR18, and WELLS FARGO BANK, N.A., and each of them,

14  disparaged Plaintiffs' exclusive valid title by and through the preparing, posting, publishing, and

15

16  recording of the documents previously described herein, including, but not limited to, the Notice

17  of Default, Notice of Trustee's Sale, and Trustee's Deed.

18      130.      Plaintiffs allege that, on or about March 11, 2011, WELLS FARGO BANK,

19  unlawfully issued a purported assignment of deed of trust and purported to transfer and convey all

20  beneficial interest in Plaintiffs' real property, to HSBC BANK, USA, National ASSOCIATION

21

22  AS Trustee for WELLS FARGO Asset Securities Corporation, Mortgage Pass-Through

23  Certificates, Series 2006-AR18.  (Plaintiffs' **Exhibit "B").**  Plaintiffs allege that, the assignment

24  of deed of trust is void and of no force and effect because WELLS FARGO BANK, and the

25  remaining foreclosing Defendants recorded fraudulent real estate documents when they

26  unlawfully recorded the purported assignment of deed of trust under Plaintiffs' Note and deed of

27  Trust.

28

                                    30

EXHIBIT C - Page 30

105                    Exhibit A - Page 110

131.     Plaintiffs allege that, on or about May 17, 2016, without notice to Plaintiffs, Defendant, WELLS FARGO BANK, N.A., acting as a purported Servicing Agent for HSBC BANK USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage –Pass Through Certificates, Series 2006-AR18, unlawfully substituted FIRST AMERICAN TITLE INSURANCE COMPANY, as trustee under the deed of trust executed by Plaintiffs.   (Plaintiffs' **Exhibit "C"**). Plaintiffs allege, that the substitution of trustee is void and that, FIRST AMERICAN TITLE INSURANCE COMPANY is not a duly appointed trustee. Plaintiffs allege that this void substitution of trustee formed the basis for unlawfully recording of the Notice of Default and the Notice of Trustee's sale.

132.     Plaintiffs allege that, on or about 05/18/2016, Defendant FIRST TITLE INSURANCE COMPANY, unlawfully recorded the "NOTICE OF DEFAULT AND ELECTION TO SELL UNDER THE DEED OF TRUST" of Plaintiffs' real property in the Official Records of the County of Alameda Recorder's office.   (Plaintiffs' **Exhibit "D"**). Plaintiffs are informed and believe, and thereon allege that, the notice of default is false because it fails to accurately depict the amount of Plaintiffs indebtedness if any.

133.     Plaintiffs further allege that, the Notice of Default is void because, prior to FIRST AMERICAN TITLE INSURANCE COMPANY recording the Notice of Default, neither the Loan Servicer nor the Lender contacted Plaintiffs in person or by telephone to discuss option of avoiding foreclosure as required by the California Homeowner Bill of Rights.

134.     Said unlawful business acts and practices include Defendants' failure to comply with statutory disclosure requirements under the Rosenthal Fair Debt Collection Practices Act.

135.     Plaintiffs  alleges that Defendants' misconduct, as alleged herein, has given them an unfair competitive advantage over their competitors in that, had they complied with their obligations, Plaintiffs and other similarly situated homeowners might have obtained financing

31

EXHIBIT C - Page 31

106          Exhibit A - Page 111

1    from another lender on better and fair terms.

2        136. Plaintiffs allege that, Defendants, FIRST AMERICAN TITLE INSURANCE

3    COMPANY, WELLS FARGO BANK, N.A., as Servicing Agent for HSBC BANK USA,

4    National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage —Pass

5    Through Certificates, Series 2006-AR18, and WELLS FARGO BANK, N.A., and each of them,

6    knew or should have known that such documents were improper in that at the time of the

7    execution and delivery of said documents, Defendants had no right, title, or interest in the

8    Property. These documents were naturally and commonly to be interpreted as denying,

9    disparaging, and casting doubt upon Plaintiffs' legal title to the Property. By posting, publishing,

10   and recording said documents, Defendants' disparagement of Plaintiffs legal title was made to the

11   public at large.

12

13       137.    As a direct and proximate result of Defendants' conduct in publishing these

14   documents, Plaintiff's title to the Property has been disparaged and slandered, and there is a cloud

15   on Plaintiff's title, and Plaintiff has suffered, and continues to suffer, damages in an amount to be

16   proved at trial.

17

18       138.    As a further proximate result of Defendants' conduct, Plaintiffs have incurred

19   expenses in order to clear title to the Property. Moreover, these expenses are continuing, and

20   Plaintiff will incur additional charges for such purpose until the cloud on Plaintiff's title to the

21   property has been removed. The amounts of future expenses and damages are not ascertainable at

22   this time.

23

24       139.    As a further direct and proximate result of Defendants' conduct, Plaintiffs have

25   suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress,

26   resulting in the loss of sleep and other injuries to his and her health and well-being, and continues

27   to suffer such injuries on an ongoing basis. The amount of such damages shall be proven at trial.

28

                                        32

EXHIBIT C - Page 32

107                    Exhibit A - Page 112

140.    At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiff and deprive them of their exclusive right, title, and interest in the Property, and to obtain the Property for their own use by unlawful means.

141.    The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious. Therefore, Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

<div align="center">

NINTH CAUSE OF ACTION

(QUIET TITLE)

(Against all Defendants)

</div>

142.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

143.    All Defendants named herein claim an interest and estate in the property adverse to plaintiffs in that defendants asserts that they are the owner of the note secured by the deed of trust to the property the subject of this suit.

144.    ALL the above named Defendants claims an interest and estate in the property adverse to plaintiffs in that defendants asserts that they are the owner of deed of trust securing the note to the property the subject of this suit.

145.    The claims of all defendants are without any right whatsoever, and defendants have no right, estate, title, lien or interest in or to the property, or any part of the property.

146.    The claim of all defendants herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to plaintiff's title, and these claims

<div align="center">33</div>

EXHIBIT C - Page 33

108              Exhibit A - Page 113

1   constitute a cloud on plaintiff's title to the property.

2     147.  Plaintiffs, therefore, allege, upon information and belief, that none of the parties to

3   neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and

4   secured claim in the Property; and that all Defendants are estopped and precluded from asserting

5   an unsecured claim against Plaintiffs real property.

6
7     148.  Plaintiffs request the decree permanently enjoin defendants, and each of them, and

8   all persons claiming under them, from asserting any adverse claim to plaintiff's title to the

9   property.

10     149.  Plaintiffs request the court award the plaintiffs costs of this action, and such other

11   relief as the court may deem proper.

12

13   <div align="center">**TENTH CAUSE OF ACTION**</div>

14   <div align="center">(DECLARATORY RELIEF)</div>

15   <div align="center">(Against all Defendants)</div>

16

17     150.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

18   fully set forth herein.

19     151.  An actual controversy has arisen and now exists between Plaintiffs and Defendants

20   concerning their respective rights and duties regarding the Note and Trust Deed.

21
22     152.  Plaintiffs contend that pursuant to the Loans, Defendants, FIRST AMERICAN

23   TITLE INSURANCE COMPANY, WELLS FARGO BANK, N.A., as Servicing Agent for HSBC

24   BANK USA, National Association as Trustee for Wells Fargo Asset Securities Corporation,

25   Mortgage –Pass Through Certificates, Series 2006-AR18, and WELLS FARGO BANK, N.A.,

26   and each of them, do not have authority to commence the non-judicial foreclose Plaintiffs' real

27   property.

28

<div align="center">34</div>

EXHIBIT C - Page 34

109    Exhibit A - Page 114

153.    Plaintiffs are informed and believes and upon that basis alleges that Defendants dispute Plaintiffs' contention and instead contend they may properly foreclose upon the Property.

154.    Plaintiffs therefore request a judicial determination of the rights, obligations and interest of the parties with regard to the Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the Property.

155.    Plaintiffs request a determination of the validity of the Trust Deeds as of the date the Notes were assigned without a concurrent assignation of the underlying Trust Deeds.

156.    Plaintiffs request a determination of the validity of the NOD (Notice of Default).

157.    Plaintiffs request a determination of whether any Defendants have authority to foreclose on the Property.

158.    Plaintiffs request all adverse claims to the real property must be determined by a decree of this court.

159.    Plaintiffs request the decree declare and adjudge that plaintiff is entitled to the exclusive possession of the property.

160.    Plaintiffs request the decree declare and adjudge that plaintiffs owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

161.    Plaintiffs request the decree declare and adjudge that defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

ELEVENTH CAUSE OF ACTION.

(RECISSION)

(Against Defendant WELLS FARGO BANK, N.A.,.)

162. Plaintiffs re-alleges and incorporate by reference all preceding paragraphs as though

35

EXHIBIT C - Page 35

1    fully set forth herein.

2       163.    Plaintiff alleges that, any applicable statutes of limitations have been tolled by the

3    Defendants' continuing, fraud, knowing, and active concealment of the facts alleged herein.

4    Despite exercising reasonable diligence, Plaintiff could not have discovered, and did not discover,

5    and was prevented from discovering, the wrongdoing complained of herein.

6

7       164.    Plaintiffs are entitled to rescind the loan and all accompanying loan documents for all

8    of the foregoing reasons: 1) Violation of California Homeowner Bill of Rights 2) Failure to

9    provide a Mortgage Loan Origination Agreement; 3) Fraudulent Concealment; 4) Fraudulent

10    Inducement; 5) failure to abide by the PSA; 6) making illegal or fraudulent transfers of the note

11    and deed of trust; and 5) Public Policy Grounds, each of which provides independent grounds for

12    relief.

13

14       165.    Plaintiffs allege that under the circumstance where Plaintiff just discovered

15    Defendant's in 2015, and where Defendant misrepresented and concealed material facts of the

16    loan, Plaintiffs have the right to rescind the contact which secured the loan. The public interest

17    would be prejudiced by permitting the alleged contract to stand; such action would regard an

18    unscrupulous lender.

19

20       166.    As a proximate result of Defendants' actions, Plaintiff have been damaged in an

21    amount not yet ascertained, to be proven at trial.

22

23    WHEREFORE, Plaintiffs pray for rescission of the stated loan in its entirety.

24

25

26                    **DEMAND FOR JURY TRIAL**

27    WHEREFORE, Plaintiffs request for Jury Trial on all causes of action.

28

<div align="center">36</div>

<div align="center">

**PRAYER FOR RELIEF**

</div>

WHEREFORE, Plaintiffs, ask for the following for each Cause of Action to be awarded:

(a)   For Treble Damages for willful violation of California procedural statutes;

(b)   For Compensatory Damages in an amount to be determined by proof at trial;

(c)   For Special Damages in an amount to be determined by proof at trial;

(d)   For General Damages in an amount to be determined by proof at trial;

(e)   For Punitive Damages as allowed by law;

(f)   For Restitution as allowed by law;

(g)   For Attorney's Fees and Costs of this action;

Dated: 2/23/2017

Dated: 2.23.17

_____
JOSEPH R WYMAN
Plaintiff In Pro Per

_____
LISA D WYMAN
Plaintiff In Pro Per

37

EXHIBIT C - Page 37

112     Exhibit A - Page 117

# EXHIBIT D

United States District Court
For the Northern District of California

1

2

3

4

5

6                              IN THE UNITED STATES DISTRICT COURT

7

8                              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10       JOSEPH R. WYMAN, LISA D. WYMAN,

11                   Plaintiffs,

12            v.                                           No. C 16-07079 WHA

13       FIRST AMERICAN TITLE INSURANCE
         COMPANY, WELLS FARGO BANK, N.A.,                  **ORDER GRANTING
14       as Trustee for Wells Fargo Asset Securities       MOTION TO DISMISS**
         Corporation, Mortgage-Pass Through
15       Certificates, Series 2006-AR18, WELLS
         FARGO BANK, N.A., and DOES 1 through
16       35, inclusive,

17                   Defendants.

18      _____/

19

20                                      **INTRODUCTION**

21           In this wrongful foreclosure action, a bank defendant moves to dismiss all claims asserted

22      against it in *pro se* plaintiffs' amended complaint.  For the reasons stated below, the motion is
        GRANTED.

23

24                                       **STATEMENT**

25           In 2006, *pro se* plaintiffs Joseph Wyman and Lisa Wyman recorded a mortgage loan in

26      the amount of $704,000 from defendant Wells Fargo Bank secured by a deed of trust on real

27      property in Oakland (RJN, Exhs. A, B).  The deed as recorded identified Wells Fargo as the

28      beneficiary, third-party Fidelity National Title Insurance Company as the trustee, and plaintiffs
        as the borrowers (RJN, Exh. B).

United States District Court
For the Northern District of California

1    In April 2011, Wells Fargo recorded an assignment of the deed of trust to transfer

2    and convey the beneficial interest in the residence to third-party HSBC Bank USA, N.A., in

3    its capacity as trustee of a securitized trust.  Wells Fargo remained the servicing agent (RJN,

4    Exh. C).

5    In 2012, Wells Fargo recorded a modification to plaintiffs' loan (RJN, Exh. D).

6    On May 17, 2016, Wells Fargo recorded a substitution of trustee that changed the trustee for

7    the loan from Fidelity to First American Title Insurance Company (RJN, Exh. E).  On May 20,

8    2016, a notice of default was recorded, the rescission of which was recorded shortly after (RJN,

9    Exhs. F, G).

10    On November 17, 2016, Wells Fargo recorded a substitution of trustee, substituting Clear

11    Recon Corporation for First American (RJN, Exh. H).  On the same day, Clear Recon, in its

12    capacity as the appointed substituted trustee, recorded a new notice of default noting plaintiffs'

13    default on the loan in the amount of $45,791.84 as of November 14, 2016 (RJN, Exh. I).

14    To date, no trustee's sale has occurred.  Plaintiffs have not indicated that they are ready

15    to tender the unpaid portion of the loan.

16    In November 2016, before Wells Fargo substituted Clear Recon as trustee (but after

17    First American rescinded the first notice of default), plaintiffs commenced this action in

18    Alameda County Superior Court.  Plaintiffs' theory was and remains that Wells Fargo lacks

19    beneficial interest in the deed.  In December 2016, defendant Wells Fargo removed the action to

20    federal court here in San Francisco based on diversity jurisdiction (Dkt. No. 1).  Following oral

21    argument, this Court granted Wells Fargo's motion to dismiss, holding that plaintiffs lacked

22    standing to challenge Wells Fargo's right to foreclose and that plaintiffs' claims are moot.

23    The Court allowed plaintiffs to amend the complaint, requesting a redlined copy to highlight

24    the changes (Dkt. No. 26).  Plaintiffs filed their first amended complaint, but failed to provide

25    the requested redlined copy (Dkt. No. 28).

26    Wells Fargo now moves to dismiss the amended complaint (Dkt. No. 29).  This order

27    follows full briefing and oral argument.

28

2

EXHIBIT D - Page 2

**ANALYSIS**

Plaintiffs seek to rescind "the loan and all accompanying loan documents" and to permanently prevent the foreclosure of the subject property by challenging Well Fargo's standing to foreclose (Amd. Compl. ¶¶ 50–52, 148, 164). In addition, plaintiffs assert claims for predatory lending, violations of the Homeowner's Bill of Rights and the Business and Professions Code Section 17200 for unfair, unlawful and fraudulent business practices, constructive fraud, fraud in concealment and fraud in the inducement all relating to Wells Fargo's alleged securitization of the loan. In their initial complaint, plaintiffs' anchored their claims in the allegation that the March 2011 assignment of the deed of trust to HSBC Bank was unlawfully recorded so that it therefore was "void and of no force and effect," that the May 2016 substitution of trustee from Fidelity to First American was void, and that the May 2016 notice of default was "unlawfully recorded" (Compl. ¶¶ 13–16). In their amended complaint, plaintiffs shift gears and contend that the gravamen of their claim to set aside any notice of trustee's sale is predicated on the alleged violation of the California Homeowner Bill of Rights (Amd. Compl. ¶ 3).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendant is liable for the conduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

As to plaintiffs' claims for fraud, a court may dismiss these claims when the allegations fail to satisfy Rule 9(b)'s heightened pleading requirements, which require a party to "state with

*United States District Court*
*For the Northern District of California*

3

1   particularity the circumstances constituting fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d

2   1097, 1107 (9th Cir. 2003).

3       Wells Fargo seeks judicial notice of various public records of transactions with plaintiffs.

4   In considering a motion to dismiss, judicial notice of the full text of documents referenced in a

5   complaint is proper. *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. Am. W.*

6   *Holding Corp.*, 320 F.3d 920, 925 (9th Cir. 2003).  Rule 201 of the Federal Rules of Evidence

7   permits a court to take judicial notice of adjudicative facts that are "not subject to reasonable

8   dispute" because they are "generally known" or can be "accurately and readily determined from

9   sources whose accuracy cannot reasonably be questioned."  Accordingly, documents referenced

10  in plaintiffs' amended complaint and the public land records in support of Well Fargo's motion

11  to dismiss are the proper subjects of judicial notice and will be considered in the disposition of

12  this motion.

13      Plaintiffs' eleven amended claims are all based either on vague defects during the loan's

14  assignment and securitization and/or unspecified unlawfulness of the pre-foreclosure documents.

15      All claims are dismissed for the following reasons.

16  **1.     PLAINTIFFS FAIL TO CURE MOOTNESS.**

17      The prior order dismissed all claims based on the May 2016 notice of default and the

18  corresponding substitution of trustee as moot inasmuch as the notice, as well as the substitution,

19  were rescinded or substituted.

20      Despite the fact that plaintiffs could have easily fixed this problem by repleading their

21  claims to include the newly recorded November 2016 notice of default, plaintiffs continue to

22  base their claims for the requested relief in part on the "unlawfully recorded" May 2016 notice

23  of default as well as the May 2016 substitution of trustee (Compl. ¶¶ 16, 29, 61; Amd. Compl.

24  ¶¶ 51, 66, 76, 100, 131).  As stated in this Court's prior order, since the May 2016 notice of

25  default, as well as the substitution of trustee were rescinded or substituted, plaintiffs' claims

26  based on these documents are dismissed as moot (Dkt. No. 26 at 4).

27

28

United States District Court
For the Northern District of California

4

**United States District Court**
For the Northern District of California

2.    **PLAINTIFFS' CLAIMS OF VIOLATIONS**
      **OF THE HOMEOWNER'S BILL OF RIGHTS FAIL.**

The prior order dismissed all claims of violations of the Homeowner's Bill of Rights based on the May 2016 notice of default as moot. Plaintiffs nevertheless continue to contend that Wells Fargo violated the Homeowner's Bill of Rights because Wells Fargo failed to comply with the express requirements of Section 2923.55 of the California Civil Code which requires Wells Fargo to contact or *diligently attempt* to contact plaintiffs prior to recording a notice of default (Compl. ¶ 30; Amd. Compl. ¶ 32). Even though the amended complaint fails to specifically base the alleged Homeowner's Bill of Rights violation on the November notice of default, this order explicitly addresses the claim in this context as plaintiffs contend that the gravamen of their challenge to Wells Fargo's right of foreclosure is predicated on Wells Fargo's violations of the Homeowner's Bill of Rights (Amd. Compl. ¶ 3).

Notwithstanding plaintiffs' amended complaint, under Section 2923.55, courts have found a conforming declaration attached to a notice of default to be *prima facie* evidence of compliance and defeats conclusory allegations to the contrary. *See Andrews v. NationStar Mortg., LLC*, 2015 U.S. Dist. LEXIS 30651, at *4 (C.D. Cal. Mar. 9, 2015) (Judge Stephen Wilson); *Kamp v. Aurora Loan Servs.*, 2009 U.S. Dist. LEXIS 95245, at *7 (C.D. Cal. Oct. 1, 2009) (Judge Cormac Carney). In light of Wells Fargo's declaration evidencing their diligent pre-notice communication for both the rescinded as well as the current notice of default, plaintiffs' claims for violations of the Homeowner's Bill of Rights are dismissed (RJN, Ex. F).

3.    **PLAINTIFFS FAIL TO ALLEGE THAT THE DEED WAS VOID.**

Plaintiffs do not waver from their contention that Wells Fargo has "no legal standing to institute or maintain the non-judicial foreclosure" (Compl. ¶ 45; Amd. Compl. ¶ 56). Plaintiffs initially rested this theory on some unspecified defect in the recording of the April 2011 assignment of the deed of trust to transfer and convey the beneficial interest in the subject property from Wells Fargo to HSBC Bank (Compl. ¶¶ 14, 23, 32).

As the prior order explained, the current status of the law regarding foreclosure challenges is that "a home loan borrower has standing to claim a nonjudicial foreclosure was wrongful because an assignment by which the foreclosing party purportedly took a beneficial

5

1    interest in the deed of trust was not merely voidable but void, depriving the foreclosing party

2    of any legitimate authority to order a trustee's sale." *Yvanova v. New Century Mortgage*

3    *Corporation*, 62 Cal. 4th 919, 943 (2016). Not only is it unclear whether parties have standing

4    to challenge an entity's right to foreclose prior to the actual sale, but even if plaintiffs had

5    pre-foreclosure standing, plaintiffs' vague allegation that the assignment was "unlawfully

6    recorded" failed to allege facts from which we could have inferred a defect that would render

7    the assignment void or even voidable (Dkt. No. 26 at 7). Legal conclusions are not entitled to

8    the presumption of truth.

9        In their amended complaint, plaintiffs attempt to enhance the allegation of a defective

10   assignment by adding that the underlying assignment was not only "unlawfully recorded" but

11   also "promulgated by the recording of fraudulent real estate documents" (Amd. Compl. ¶51).

12   Because plaintiffs fail to allege any details as to why the real estate documents were

13   "fraudulent," this conclusory statement does nothing to remedy plaintiffs' failure to allege a

14   defect which would render the assignment void as required for standing. Plaintiffs' allegations

15   therefore are insufficient to justify an exemption from the otherwise applicable bar on judicial

16   intervention into the nonjudicial foreclosure process. Plaintiffs lack standing to challenge Wells

17   Fargo's right to foreclose.

                                    **CONCLUSION**

19       For the foregoing reasons, the motion to dismiss is GRANTED. Since the prior order

20   stated that plaintiffs must plead their best case, plaintiffs' plea for another leave to amend will

21   not be granted. Judgment will follow.

22

23       **IT IS SO ORDERED.**

24

25   Dated: April 27, 2017.

26                                              _____
                                                WILLIAM ALSUP
27                                              UNITED STATES DISTRICT JUDGE

28

United States District Court
For the Northern District of California

1

2

3

4

5

6           IN THE UNITED STATES DISTRICT COURT

7           FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10    JOSEPH WYMAN, LISA WYMAN

11              Plaintiffs,                              No. C 16-07079 WHA

12        v.

13    FIRST AMERICAN TITLE INSURANCE                     JUDGMENT
      COMPANY, WELLS FARGO BANK, N.A.,
14    as Trustee for Wells Fargo Asset Securities
      Corporation, Mortgage-Pass Through Certificates,
15    Series 2006-AR18, WELLS FARGO BANK,
      N.A., and DOES 1 through 35, inclusive,
16
              Defendants.
17    _____/

18        For the reasons stated in the accompanying order dismissing this action, FINAL

19    JUDGMENT IS HEREBY ENTERED in favor of defendants First American Title Insurance

20    Company, Wells Fargo Bank, N.A., as Trustee for Wells Fargo Asset Securities Corporation,

21    Mortgage-Pass Through Certificates, Series 2006-AR 18, and Wells Fargo Bank, N.A., and

22    against plaintiffs Joseph Wyman and Lisa Wyman.  The Clerk SHALL CLOSE THE FILE.

23

24        IT IS SO ORDERED.

25

26    Dated:  April 27, 2017.

27                                        WILLIAM ALSUP
                                          UNITED STATES DISTRICT JUDGE
28

*United States District Court* — *For the Northern District of California*

EXHIBIT D - Page 7

# EXHIBIT E

# LEGISLATIVE HISTORY

**CALIFORNIA**

**STATUTES OF 1982**

**CHAPTER 968**

**ASSEMBLY BILL 3531**

 LRI HISTORY LLC

EXHIBIT E - Page 1

Exhibit A - Page 127



**LRI HISTORY LLC**
PO BOX 2166, PLACERVILLE, CA 95667
INTENT@LRIHISTORY.COM
WWW.LRIHISTORY.COM

# Governor's Chaptered Bill File

SOURCE:
CALIFORNIA STATE ARCHIVES

| ENROLLED BILL MEMORANDUM TO GOVERNOR | DATE | 9-9-82 |
|---|---|---|
| BILL NO.  AB 3531 | AUTHOR | McAlister |

Vote—Senate _____Unanimous
Ayes— 26
Noes— 0

Vote—Assembly _____Unanimous
Ayes— 75
Noes— 0

AB 3531 - McAlister     This bill would require persons who arrange credit
transactions relating to the purchase of a dwelling
for not more than four families to make specified
disclosures to the vendor and purchaser.

SPONSOR

California Association of Realtors

SUPPORT

Department of Corporations

OPPOSITION

None

FISCAL IMPACT

None

| Recommendation | APPROVE |
|---|---|
| RM | |

# Legislative Counsel
## of California

### BION M. GREGORY

OWEN K. KUNS
RAY H. WHITAKER
CHIEF DEPUTIES

JERRY L. BASSETT
KENT L. DeCHAMBEAU
STANLEY M. LOURIMORE
EDWARD K. PURCELL
JOHN T. STUDEBAKER

JOHN CORZINE
ROBERT CULLEN DUFFY
ROBERT D. GRONKE
SHERMAN C. MACKENZIE, JR
ANN M. MACKEY
TRACY O. POWELL, II
RUSSELL L. SPARLING
JIMMIE WING
PRINCIPAL DEPUTIES

3021 STATE CAPITOL
SACRAMENTO 95814
(916) 445-3057

8011 STATE BUILDING
107 SOUTH BROADWAY
LOS ANGELES 90012
(213) 620-2550

GERALD ROSS ADAMS
DAVID D. ALVES
MARTIN L. ANDERSON
PAUL ANTILLA
CHARLES C. ASBILL
JAMES L. ASHFORD
SHARON G. BRELMAN
EILEEN J. BUXTON
HENRY J. CONTRERAS
BEN E. DALE
CLINTON J. DeWITT
C. DAVID DICKERSON
KATHLEEN E. DONOVAN
FRANCES S. DORBIN
LAWRENCE H. FEIN
SHARON R. FISHER
JOHN FOSSETTE
HARVEY J. FOSTER
CLAY FULLER
ALVIN D. GRESS
JOYCE E. HEE
THOMAS R. HEUER
JACK I. HORTON
EANORA HUGHES
MICHAEL J. KERSTEN
L. DOUGLAS KINNEY
VICTOR KOZIELSKI
ROMULO I. LOPEZ
JAMES A. MARSALA
ROBERT G. MILLER
JOHN A. MOGER
VERNE L. OLIVER
EUGENE L. PAINE
MARGUERITE ROTH
JERRY J. RUJ
MICHAEL B. SALERNO
MARY SHAW
WILLIAM K. STARR
MARK FRANKLIN TERRY
JEFF THOM
RICHARD B. WEISBERG
DANIEL A. WEITZMAN
THOMAS D. WHELAN
CHRISTOPHER ZIRKLE
DEPUTIES

Sacramento, California
August 27, 1982

Honorable Edmund G. Brown Jr.
Governor of California
Sacramento, CA

_____Assembly_____ Bill No. _3531___

Dear Governor Brown:

   Pursuant to your request we have reviewed the above-numbered bill authored by ___Assemblyman Mc Alister___ and, in our opinion, the title and form are sufficient and the bill, if chaptered, will be constitutional. The digest on the printed bill as adopted correctly reflects the views of this office.

      Very truly yours,

      Bion M. Gregory
      Legislative Counsel

      By _John T. Studebaker_
       John T. Studebaker
       Principal Deputy

JTS:AB

Two copies to Honorable ___Alister Mc Alister___ ,
pursuant to Joint Rule 34.

**ENROLLED BILL REPORT**

| DEPARTMENT | AUTHOR | BILL NUMBER |
|---|---|---|
| CORPORATIONS | McAlister, et al. | AB 3531 |

SUBJECT

Required disclosures on purchase

SUMMARY

Requires specified disclosures regarding money liens on
residential property consisting of dwellings of not more than 4
families.

ANALYSIS

A.  Detailed

This bill would add provisions to the Civil Code with respect
to specified disclosures regarding purchase money liens on
residential property consisting of dwellings of not more than
4 families if the purchase includes an extension of credit by
a vendor.  The disclosure to vendors and purchasers would have
to be made by the arranger of credit, as defined.

An exception from the disclosure requirement of AB 3531 is
found at Civil Code Section 2958.  Disclosures not required to
a borrower when the borrower is required to receive and does
receive a disclosure pursuant to the Federal Truth-in-Lending
Act, or to a lender if the lender is entitled to receive and
does receive a disclosure pursuant to Business and Professions
Code Sections 10232.4 and 10232.5, or pursuant to a
qualification of Section 25110 of the Corporate Securities Law
of 1968 or regulations of the Commissioner of Corporations
granting an exemption from the Section 25110 requirement.

B.  Cost

There will be no additional cost to the Department of
Corporations.

HISTORY

AB 3531 is sponsored by the California Association of Realtors.

RECOMMENDATION

Insofar as the Department of Corporations is concerned, a
recommendation of SIGN is made because the bill will provide
appropriate disclosures to certain vendors and purchasers of real
property and will not duplicate the Corporate Securities Law of
1968.

RECOMMENDATION

SIGN

| Department | Date | Agency | Date |
|---|---|---|---|
| Geraldine D. Green | 9/3/82 | Deborah Smith | 9/8/82 |

Provided by LRI History LLC                                    Page 3 of 5

**ENROLLED BILL REPORT**                                    Business and Transportation Agency

| DEPARTMENT | AUTHOR | BILL NUMBER |
|---|---|---|
| REAL ESTATE | McAlister | AB 3531 |

SUBJECT

Residential Real Estate: Seller Financing Disclosures

## SUMMARY

This bill would require extensive disclosures to both buyers and sellers if a real property transaction is a one-to-four unit residence, and the seller provides financing to the buyer to complete the transaction.

## ANALYSIS

### A. Detailed

Current law does not generally provide for disclosures of the terms and conditions of financing involved in a real estate transaction unless the lender is an institutional lender.

This bill attempts to address the problem of "creative financing", which is increasingly involved in residential real estate transactions throughout the state. In a typical seller financed transaction, the seller is a private individual who, in order to sell his residence, is agreeable to extending credit to the buyer by deferring a portion of the purchase price. The deferral is usually accomplished when the seller takes back a promissory note secured by a deed of trust on the residence. The promissory note often requires a balloon payment at the end of the payment period.

This bill would provide for cross-disclosures of the terms and conditions of this financing, and the risks involved, both by and to the seller and buyer, as appropriate. The disclosures would be required if the real estate involved in the transaction is a one-to-four unit residence, if the seller is a private individual, and if there is an "arranger of credit" involved in the transaction, such as a real estate broker or salesperson. The disclosure provisions also apply if either the seller or buyer is an attorney or real estate licensee.

The required disclosures are generally facts that are within the knowledge of the buyer, the seller, or the arranger of credit. The disclosures include such matters as the existence of senior liens against the property, the difficulties which may be involved in refinancing if the loan is not fully amortized, the assignment of payment responsibilities on all-inclusive trust deeds, balloon payment obligations, the creditworthiness of the buyer, and cash to buyer arrangements.

### B. Cost

No fiscal effect on this Department.

## HISTORY

None.

RECOMMENDATION

SIGNATURE

| Department | Date | Agency | Date |
|---|---|---|---|

Enrolled Bill Report/AB 3531
Page Two

REASONS FOR RECOMMENDATION

This Department recommends SIGNATURE because:

There is an increasing concern among both real estate licensees and the public regarding creative financing often involved in residential real estate transactions in the current market.  This bill attempts to address that problem by requiring real estate licensees and others to make cross disclosures between buyer and seller of all possible facts which would affect the potential financing risks involved in the transaction.

The bill goes further than necessary in requiring cross disclosures between both buyer and seller, and in requiring disclosures merely because one of the parties to the transaction happened to be a licensed attorney or a real estate broker or salesperson.  In addition, this bill may give rise to a substantial increase in real estate related litigation since its provisions are extensive, quite technical and difficult for the average real estate licensee to follow.  Eventually, the bill might result in the elimination of many small real estate brokerage businesses that are not equipped to provide in depth financial analyses to its clients.  However, the bill should provide additional documentation to this Department if a complainant makes a claim that his broker or salesperson did not adequately disclose all of the risks involved in seller financing.

Contact:  John Abbott, Staff Counsel
          323-2139 (Office)



**LRI HISTORY LLC**
PO BOX 2166, PLACERVILLE, CA 95667
INTENT@LRIHISTORY.COM
WWW.LRIHISTORY.COM

# Author's File

SOURCE:
CALIFORNIA STATE ARCHIVES

CALIFORNIA ASSOCIATION OF REALTORS®
Real Estate Finance Committee
Legislative Committee



December 29, 1981

Background Paper

### DISCLOSURE IN CREATIVE FINANCING

*The following is for study only and has not been approved by the Real Estate Finance Committee, the Legislative Committee, the Executive Committee, or the Board of Directors.*

At the July, 1981, Board of Directors Meeting, the Board resolved "that C.A.R. advocates appear before the Legislature as necessary to express Members' concerns about possible abuses in the area of creative financing, and to indicate the Association's intention to introduce legislation which will insure a safe and reasonable framework within which creative financing can be utilized".

A second resolution, adopted by the Directors at that time, provided "that a subcommittee be appointed to work with the staff in the formulation of suitable policy to insure appropriate legislation in the creative financing area and bring such recommendations for full committee approval...".

An eight-Realtor® committee was appointed and conducted two full-day meetings on this subject.

That ad hoc committee recommends C.A.R. sponsorship of legislation to require disclosure by a broker (or other third party intermediary acting for compensation) to both the buyer and the seller with respect to certain features of creative financing involved in the transfer of residential real property.

The recommendations of this ad hoc committee were presented to the Legislative Steering Committee at its meeting on December 2, 1981, and that committee resolved "that C.A.R. staff continue to work on drafting legislation which would require disclosure of certain terms and conditions relating to 'creative financing', and the matter be referred to the Real Estate Finance Committee".

#### Background

A survey by the C.A.R. Research & Economics Division, in August, 1981, confirmed what has been generally known within the industry; that is, commencing in late 1979, because of high interest rates, the absence of mortgage money from conventional lending sources, and the availability of the Wellenkamp decision, that somewhere in the range of 65 percent of sales of existing homes were assisted by some form of creative financing. The vast majority of creative financing devices include a note and deed of trust with a short term and a substantial balloon payment.

An obvious corollary of this finding is the known fact that take-out funds for refinancing are both in short supply and at very high rates.

Similar C.A.R. economic studies have established that the previous sharp annual rise in home prices and in home values which characterized the period from 1976 to 1979, have leveled off, and that, in some cases and in some areas, the annual growth in residential values approximates, or may even be below, the annual general inflation rate. These data have significance with respect to the loan-to-value ratio of refinancing which may be available at the time a balloon payment comes due.

Because of the current economic recession, the growth in personal incomes has slowed, and unemployment has risen.

During the past several years, lender groups in California have aggressively sought, in the Legislature (including the Congress) and in the courts, to reverse or sharply inhibit the benefits of the Wellenkamp decision which permits assumption of what are today below-market interest rate loans by home buyers at the time of sale. The proponents of Wellenkamp repeal have argued that the availability of loan assumptions has caused the proliferation of creative financing which they contend has created a "ticking time bomb" set to explode when the host of balloon payments comes due and no refinancing at terms which borrowers can afford is available in the marketplace.

A somewhat dramatic percentage increase (although numerically still relatively insignificant) has occurred in loan defaults and in foreclosures, or sales in lieu of foreclosure.

The Assembly Committee on Finance, Insurance, & Commerce has conducted two full-day hearings on the subject of creative financing. They have received a good deal of testimony respecting alleged abuses in individual cases which, it has been contended, have resulted, in some instances, in losses to sellers who had carried back financing, or in losses to buyers. These have dealt with situations as cash-to-buyer or buyer walk-away transactions, 100 percent or perhaps even 110 percent financing, the domino effect of a succession of real estate sales each of which remains interdependent because of successive seller take-back financing involving balloon payments, over-appraisals, lack of credit data,

BACKGROUND PAPER
Disclosure in Creative Financing 

lack of adequate servicing arrangements or understanding of servicing requirements, and a host of other conditions.

Recommendations to the committee have included establishing a moratorium on foreclosure of loans because of the non-payment of a balloon; elimination of installment land sale contracts; elimination of *Kellenkamp*; elimination of cash-to-buyer transactions or transactions in which there is no down payment; requirement of independent fee appraisals; providing for criminal prosecution in the case of fraudulent practices in creative financing; better disclosure; and others.

Specific legislation requiring disclosure by real estate licensees in alternative or creative financing situations was introduced in 1980 (AB 2784, Rosenthal) and in 1981 (AB 393, Robinson), and both bills were opposed by C.A.R. on the basis that they were unworkable and did not provide meaningful disclosure to the persons involved in any event. Neither bill has passed, although AB 393 is technically still pending.

The Department of Real Estate, in the Real Estate Bulletin, issued to all licensees, and in news releases provided to media throughout the state (and frequently published), has warned of abuses in the field. The Attorney General has issued a widely publicized paper titled, "Creative Frauds and Questionable Real Estate Deals". The State Bar, through some of their publications, have been highly critical of certain practices and alleged abuses in this area of financing, and a number of private attorneys and other commentators have published articles and made public statements increasing public awareness and some sense of uneasiness.

While the mortgage loan broker situation is a somewhat distinct matter, the fact that 15 such firms have been placed in court-ordered receiverships, an additional 12 have filed bankruptcy petitions, and another 100 are under investigation, has cast its pall from the standpoint of public perceptions over anything involving second trust deeds. At the 1981 portion of the current legislative session, of course, AB 1212 (McAlister) was enacted which imposes new requirements on mortgage loan brokers including new, rather strict requirements of disclosure.

In recent years, the courts have been moving to broaden the responsibilities of real estate licensees in their dealings with the parties to real estate transactions. In 1979, in *Wyatt v. Union Mortgage Company* (24 C 3d 773), and in 1981, in *Peirce v. Hom* (a Court of Appeal decision on which a petition for rehearing is currently pending), they have stressed the fiduciary responsibilities of brokers in certain lending situations including extraordinary responsibilities of inquiry and disclosure.

Truth-In-Lending

The Truth-In-Lending Law, which is a federal act, requires a disclosure to a borrower by a creditor (lender) in certain circumstances. This has generally been held not to apply to real estate brokers who were not creditors themselves or arranging credit from persons not generally in the business of extending credit. However, that Law was amended in 1980 to revise it (with mandatory compliance due commencing April 1, 1982) and the Federal Reserve Board had circulated proposed regulations interpreting that Act which would require a person (such as a real estate broker) who arranged more than five times in one year for credit---and arranging was defined as "developing or negotiating credit terms and helping to complete the credit documents (the sale contract would be a credit document for this purpose if it spells out terms upon which the seller agrees to provide financing for the buyer)" to make those disclosures. Both C.A.R. and N.A.R. protested this regulation and this application.

By an act of Congress adopted in recent weeks, the date for mandatory compliance has been extended to October 1, 1982, and the Federal Reserve Board has not yet announced its final decision on the proposed regulations.

C.A.R. Committee Reasons

The C.A.R. ad hoc committee proposes that C.A.R. sponsor legislation (in keeping with the Board of Directors resolution of last July) for the following reasons:

(1)    There, quite apparently, are some instances (perhaps isolated) of abuse in the area of creative finance which have resulted in potential damage to borrowers or lenders.

(2)    The Real Estate Law provides, as a basis for discipline against a licensee, any substantial misrepresentation; making any false promises of a character likely to influence, persuade, or induce; demonstrating negligence or incompetence in performing any act for which a license is required; or any other conduct of the same or of a different character which constitutes fraud or dishonest dealing (Business & Professions Code §10176 and §10177). The Department of Real Estate has consistently held (and the courts have sustained it) that a material omission of fact constitutes a misrepresentation or similar conduct within the meaning of those sections of the Law. The committee believes that many aspects of creative financing are material facts.

EXHIBIT E - Page 10

BACKGROUND PAPER
Disclosure in Creative Financing  -3-

(3) The committee believes that disclosure of such material facts is now being made in a vast majority of transactions, but that there would be value in regularizing and making uniform the form of that disclosure.

(4) If the issue of disclosure is not dealt with legislatively, the persistent enlargement of this duty by the courts is almost inevitable.

(5) Because of the interest shown in the subject by the Legislature and by other organizations and government agencies, it appears probable that legislation on disclosure will be introduced and perhaps enacted in 1982, and that there would be value in having that legislation in a form found practicable and constructive through a C.A.R. drafting process.

(6) The furnishing of such disclosure will be another mark of professionalization and of service performed by real estate licensees.

The Bill

The ad hoc committee recommends the sponsorship of legislation to add appropriate sections to the Civil Code subject to enforcement by civil action in the courts and not subject to interpretation or implementation by any state agencies.

The bill would be confined to:

(A) Financing involving residential properties of one to four units (whether owner-occupied or not).

(B) Only in purchase money situations, including seller carryback financing (or including any equitable financing techniques such as installment land sale contracts, land leases, or other substitutes for purchase money financing).

(C) That no disclosure be required to a borrower who would otherwise under the law receive a disclosure under truth-in-lending; and that no disclosure would be required to a lender if the lender received a disclosure under AB 1212 (McAlister, 1981) or the Commissioner of Corporations regulations on fractional mortgages, or if the arranger of credit is, in fact, the lender.

(D) That the disclosure be required to be made by a third party arranger of the financing transaction. An arranger would include a person who would be involved in developing or negotiating credit terms and helping to complete the credit documents (the sales contract would be a credit document for this purpose if it spells out terms upon which the seller agrees to provide financing for the buyer).

(E) The disclosure would be required to be made as soon as practicable but before execution of the note and deed of trust, or appropriate financing documents; or, for the buyer, contingent on the buyer's approval of the disclosures prior to the execution of financing documents. The parties must receipt for disclosure.

(F) If information disclosed is subsequently rendered inaccurate as a result of an act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy would not constitute a violation.

(G) If, at the time disclosure is to be made, an item of information is unknown or not available and a reasonable effort has been made to ascertain it, the arranger may use an approximation of the information provided the approximation is identified as such, is reasonable, is based on the best information available to the arranger, and is not used for purposes of circumventing the law.

(H) An item of disclosure may be amended in writing by the arranger provided it is subject to the approval of the parties.

(I) A failure to disclose or a wrongful disclosure would result in liability by the arranger for the actual damages suffered by the buyer or seller.

(J) Separate disclosures would be made to the seller and to the buyer. Items to be disclosed would include:

(1) An identification of the note or other credit transaction, and of the property which is the security for the transaction.

(2) The estimated market value of the security property, including consideration of financing, which is on terms generally available in the community, at the specified date is typical for the property type in its locale. If the arranger is relying on an appraisal in estimating the value, the date the appraisal was made and the name and employment of the person who made the appraisal.

EXHIBIT E - Page 11

BACKGROUND PAPER
Disclosure in Creative Financing                                    -4-



(3)  If the credit being negotiated, together with any prior encumbrances,
     would result in a combined loan-to-value ratio in excess of 85 percent;
     or if negative amortization would be permitted, which would take the
     combined liens to over 80 percent, an extra disclosure would be required
     in the form of a warning that, if refinancing is contemplated or would
     be required as a result of the terms of any existing or proposed loans,
     such financing might be difficult or impossible in the conventional
     mortgage marketplace if the amount to be financed exceeded 80 percent
     of the then-existent value of the property.

(4)  A disclosure to the lender on the identity, occupation, employment,
     income, and credit data about the prospective borrower as represented
     to the arranger by the prospective borrower; or, specifically, that no
     representation as to the credit of the specific prospective borrower
     is made by the arranger. A caveat would also be expressed that, if the
     loan or extension of credit is made in a purchase money situation, the
     Code of Civil Procedure §580b prohibits obtaining a judgment against the
     borrower for any amount in excess of the amount recovered from the
     foreclosure of the security property.

(5)  A disclosure should be made that loss payee clauses have been added to
     hazard insurance protecting the lender; or that, if there have not been
     added, the lender should consider protecting himself by securing such
     clauses. Similarly, a disclosure that a request for notice of default
     has been recorded; or that, if it has not been recorded, the lender should
     consider filing a request for notice of default. Similarly, that either
     a policy of title insurance has been obtained and is furnished to the
     lender; or that the lender should consider obtaining a policy of title
     insurance.

(6)  If a transaction involves an AITD or land sales contract, a caveat
     should be expressed to the borrower that, if he does not make payments
     directly to the holder of any underlying deed of trust, the borrower
     may wish to have designated a neutral third party as agent for collection
     and remission of those funds who is responsible to make payments.
     Disclosures on AITDs should also specify who is liable for payment and
     responsible for defense in the case of an attempted acceleration by the
     underlying lender and who is to be responsible in the event of a loan
     prepayment which results in a prepayment penalty or who is to be the
     beneficiary of a prepayment discount.

(7)  If any of the financing results in a balloon payment, or in a right to
     call by the lender before the normal end of the loan term, the date and
     amount of the balloon and a statement that there is no assurance that new
     financing or loan extension will be available at the time the balloon
     payment or loan call occurs.

(8)  The lender should be advised whether a tax service has been arranged, who
     is responsible for maintaining and paying for that service; or should be
     advised that he must otherwise insure for himself that the taxes on the
     property are paid.

(9)  If negative amortization is possible as a result of the financing being
     arranged, a clear statement of this fact and examples of potential
     scenarios.

(10) A description of the terms of the promissory note.

(11) Insofar as available, a disclosure of the principal terms and conditions of
     all recorded encumbrances which constitute liens upon the property which
     are or will be senior to the note being arranged, including the original
     balance, the current balance, the periodic payment, any balloon payment, the
     interest rate, and whether or not there is any current default in payments
     on the encumbrance.

(12) A caveat that, if the document is not recorded, the security of the lender
     may be subject to intervening liens or judgments which may occur after the
     note is executed and before any resort to security occurs.

<u>Questions</u>

WHAT IS C.A.R.'s PROPOSED ACTION WITH RESPECT TO THIS RECOMMENDATION?

DG/dc
12-30-81

**FINANCE, INSURANCE, AND COMMERCE COMMITTEE**
Alister McAlister, Chairman

Finance, Insurance and Commerce Committee
Alister McAlister, Chairman

                                        BILL NO.AB 3531

ASSEMBLY BILL 3531 - McAlister - As Amended April 22, 1982

SUBJECT

        Assembly Bill 3531 would provide for specific
disclosures to be made by an "arranger of credit" in connection
with the transfer of residential property.

DIGEST

        Assembly Bill 3531 would require an "arranger of
credit" to make specified disclosures to both the vendor and the
purchaser in a credit sale or transfer of a dwelling for not
more than four families.

        An arranger of credit is defined as a person other than
a party to a transaction who:  1) is involved in developing or
negotiating credit terms; 2) participates in the completion of
credit documents; and 3) directly or indirectly receives
compensation either for arranging the credit or from any
transaction which is facilitated by the extension of credit and
which results in the transfer of the property.  For practical
purposes, the bill applies to a real estate licensee or an
attorney who arranges "seller take-back" financing.

        The specified disclosures will not be required to be
made if the purchaser is required to receive a disclosure
statement pursuant to the federal Truth-in-Lending and Real
Estate Settlement Procedures Acts, or to a vendor if the vendor
is entitled to receive a disclosure pursuant to the Real Estate
Law relating to loans made or negotiated by mortgage loan
brokers.

        The bill requires that the following disclosures be
made:

        1.  An identification of the credit or security
documents and the property which is the security for the
transaction.

        2.  A description of the terms of the promissory note
or other credit documents.

        3.  A statement to the effect that the parties agree
that the sales price constitutes a reasonable estimate of market

<u>AB 3531 - McAlister - As Amended April 22, 1982</u>          P. 2

value at the time of sale, unless a separate representation of
value has been made; in that case, the separate representation
shall be stated along with the name and identification of the
person making it.

4.   A disclosure that negative amortization is possible
as a result of the financing being arranged, if that is the
case, and an example of the results of negative amortization.

5.   In any case where the credit being negotiated
together with any prior encumbrances would result in a combined
loan-to-value ratio over 80% of the sales price, or the
loan-to-value ratio might exceed 80% of the sales price as a
result of negative amortization, there shall be a warning that
conventional refinancing might be difficult or impossible to
obtain.

6.   In the case of an all-inclusive trust deed, the
disclosure shall contain a statement which indicates:

a) whether or not the contract documents specify
who is liable for payment or who is responsible result in a defense if
the lender under the prior encumbrance attempts to accelerate
the loan;

b) the responsibilities and rights of the parties
in the event of prepayment of a loan secured by the prior lien;

c) the person to whom payments will be made and
who will be responsible for remitting the funds to lenders under
prior encumbrances and vendors under the all-inclusive deed of
trust, along with a warning that if the person is not a neutral
third party, the parties may agree to designate a neutral third
party for that purpose.

7.   If any of the financing involves a balloon payment,
the disclosure shall state the date and amount of the payment
due, and call attention to the fact that there is no assurance
that new financing will be available at the time the payment is
due.

8.   A disclosure concerning the occupation, employment,
income and credit data of the prospective purchaser as
represented to the arranger of credit by the purchaser, or a
specific statement that no representation is made by the
arranger of credit, along with a statement that Code of Civil
Procedure Section 580(b) may limit any recovery by the vendor to
the net proceeds of the sale of the property in the event of
foreclosure.

AB 3531 - McAlister - As Amended April 22, 1982                P. 3

9. A statement that loss payee clauses will be added to property insurance protecting the vendor.

10. A statement that a request for notice of default has been recorded, or that, if it has not been recorded, the vendor should consider recording a request.

11. A statement that a policy of title insurance has been or will be furnished to the vendor, or that the vendor should consider obtaining such a policy.

12. A statement that a tax service has been arranged to report to the vendor whether property taxes have been paid on the property, or that the vendor should ascertain for himself that the taxes have been paid.

13. The principal terms and conditions of all recorded senior liens on the property including the original balance, current balance, payments, provisions for balloon payments, interest rate, and whether or not there is any current default in payments.

14. A statement that the security documents on the financing have been or will be recorded, or a statement that the security may be subject to intervening liens or judgments if the security documents are not recorded.

15. If the purchaser is to receive any cash from the proceeds of the transaction, the disclosure shall contain a statement to that effect, along with a disclosure of the amount, the source of the funds, and the purpose of the disbursement.

Under this bill, no person may be held liable in any action if it is shown that the violation was not intentional and resulted from a bonafide error. Any person who willfully violates the provisions of the bill shall be liable for actual damages suffered by any other person. The statute of limitations under the bill is two years from the date on which liability arises, except where any material disclosure has been materially and willfully represented. In that case, an action may be brought within two years of the discovery of the misrepresentation.

The bill would become operative July 1, 1983.

FISCAL EFFECT:   None

AB 3531 - McAlister - As Amended April 22, 1982 _____ P. 4

STAFF COMMENTS

     The Financial Institutions Subcommittee of the Assembly Finance, Insurance and Commerce Committee held a hearing on creative financing in August, 1981. At that hearing, several witnesses attributed a number of problems associated with creative financing to the failure of the parties to really understand the implications and potential pitfalls of their agreement. This bill is intended to assure that the parties receive adequate information which will enable them to protect their respective interests.

     The following have expressed an interest in this measure:

     Sponsor:  California Association of Realtors

CHARLENE MATHIAS:ws                    BILL NO. AB 3531
4/23/82

Provided by LRI History LLC



## CALIFORNIA ASSOCIATION OF REALTORS·

SACRAMENTO OFFICES • 1129 TENTH STREET • SACRAMENTO, CALIFORNIA 95814 • TELEPHONE (916) 444-2045

DUGALD GILLIES
Vice President
Government Relations

April 26, 1982

The Honorable Alister McAlister
Member of the Assembly
State Capitol
Sacramento, CA 95814

SUBJECT:  AB 3531 (McAlister) -- "Creative Financing" Disclosures

Dear Mr. McAlister:

This bill is set in the full Finance, Insurance, & Commerce
Committee on Tuesday, April 27.

The California Association of Realtors® supports and sponsors
this measure.

In effect, this bill is in response to the hearings conducted
by your Committee during the interim on the general topic of
"creative financing".

It pertains to residential housing transfers in which the seller
(vendor) assists in the financing and it requires, in those
circumstances where there is a third party arranger of credit,
that a list of specified, comprehensive disclosures be made to
the parties about the details of that financing.

A summary of the bill's provisions, together with our reasons
for supporting it, is enclosed.  We are unaware, at this time,
of any opposition to the bill.

We would like to emphasize to the Committee, however, that the
bill does not require that these disclosures be made unless a
third party arranger of credit (acting for compensation) is
involved in the transaction.  We have not proposed that it be
applied to transactions arranged between principals because, on
the Assembly Floor earlier this year in another disclosure
bill sponsored by our Association, the membership of the Assembly
felt that we were attempting to require the use of a Realtor®
in sales transactions by creating a disclosure requirement.

Frankly, we believe it would be preferable to have this apply
to those transactions; and believe, particularly in the
circumstances such as the sales a year ago by Atlas Mortgage
or sales by developers (in each case, involving a principal
only transaction), that there are opportunities for misunderstanding
of the impact and significance of some features of the financing.

REALTOR® — is a registered mark which identifies a professional in real estate who subscribes to a strict Code of Ethics as a member of the NATIONAL ASSOCIATION OF REALTORS

EXHIBIT E - Page 17

SUBJ:  AB 3531 (McAlister)                                    April 26, 1982
"Creative Financing Disclosures                              Page Two

Thus, if the Committee believes that this should be made
applicable to principal only transactions as well, and the bill
were amended to accomplish this, we would continue our support
of the measure.

We would appreciate an "AYE" vote on AB 3531.

                                    Sincerely,

                                    DUGALD GILLIES
                                    Vice President
                                    Governmental Relations


DG/dc
Enclosure (1)

cc:  Charlene Mathias
     Consultant
     Assm. Finance, Insurance,
       and Commerce Committee

     Jamie Clark
     Minority Consultant
     Assm. Finance, Insurance,
       and Commerce Committee

     Don Wiedmann

For Use In Senate Judiciary Committee

### AB 3531 (McALISTER)
### "CREATIVE FINANCING" DISCLOSURES

This bill deals with disclosures in the so-called "creative financing" residential sale transaction in which the owner takes back financing.

A great deal of attention has been focused on these creative financing devices which are used in perhaps 60 to 80 percent of all residential sale transactions in California today, and concerns have been expressed about some aspects of those transactions, including the possibility that the parties may not have sufficiently understood the implications of the contract, including the implications of a balloon payment.

An important answer to this situation is to require more explicit and comprehensive disclosures, together with suitable warnings or cautions, to the parties involved.

AB 3531 is such a comprehensive disclosure bill requiring that both the seller and the buyer, in a transaction in which there is a compensated arranger of credit involved (this would, typically, be the real estate broker, but could be an attorney), receive, in writing, information or stated cautions on 16 general items respecting the financing.

In the Assembly, there was no opposition to this bill. I have been advised that, at this date, the Real Property Section of the State Bar opposes the bill unless it is amended to eliminate any responsibility of an attorney who may meet the three-way test in the bill as being an "arranger of credit" from the responsibility of making these disclosures. Perhaps the Committee will wish to hear the views of the Real Property Section (which, I understand, are not, at this point in time at least, the official views of the State Bar) if that is a primary area of concern.

-2-

Your analysis indicates the primary question with this measure as being whether specified disclosures should be required in a seller take-back financing situation.  Based on interim committee hearings in the Assembly, and all of the evidence which I have seen, it seems incontrovertible that such disclosures should be required.  Even the State Bar believes that this is so.

The bill places this responsiblity for disclosure on the principals to the transaction with a joint responsibility of the "arranger of credit"---and only requires the disclosure where an arranger of credit is involved.  There is some complexity to these transactions and, therefore, some complexity to the disclosures.  The arranger, whether it be an attorney or a broker, has the expertise to perceive these facts more clearly.

Because the disclosure is required of the principal, the arranger is required to disclose nothing more about his client's situation than the client himself is required to disclose.

The object of the bill is truth and clarity.

The measure is sponsored by the California Association of Realtors®, and results from the interim hearings.  Representatives of the California Association of Realtors® are here.

Creative financing is not new, although new wrinkles have been developed, and the magnitude of the extent of its use has very materially grown.  There is evidence that people---both sellers and buyers---have faced losses, and do face losses, and that they might have avoided those losses had they been fully aware of the various features of the agreement.  This bill deals with this in a very positive manner, and I believe should be adopted as a very important consumer measure.

6-15-82

## AB 3531

The disclosure of any information by an arranger of credit pursuant to this article, which information has been received by the arranger in a privileged or fiduciary capacity, shall not be a violation of that privilege or fiduciary relationship if the duty of disclosure is also imposed by this article on the arranger's principal, and the disclosure is made with the consent of the principal.



**LRI HISTORY LLC**
PO BOX 2166, PLACERVILLE, CA 95667
INTENT@LRIHISTORY.COM
WWW.LRIHISTORY.COM

# Senate Committee on Judiciary

SOURCE:
CALIFORNIA STATE ARCHIVES

EXHIBIT E - Page 22



SENATE COMMITTEE ON JUDICIARY        1981-82 Regular Session

AB 3531 (McAlister)
As amended August 2
Civil Code
GWW

A
B

3
5
3
1

REAL PROPERTY
-DISCLOSURE OF INFORMATION IN CREATIVE FINANCING
SALES-

### HISTORY

Source:  California Association of Realtors

Prior Legislation:  None

Support:  Unknown

Opposition:  Real Property Law Section of the
             State Bar

Assembly floor vote:  Ayes 75 - Noes 0.

### KEY ISSUES

IN SALES OF RESIDENTIAL DWELLINGS OF UP TO FOUR
UNITS WHICH INVOLVE SELLER TAKE-BACK FINANCING AND
AN ARRANGER OF CREDIT, AS DEFINED, SHOULD
SPECIFIED DISCLOSURES BE REQUIRED OF THE ARRANGER
OF CREDIT AND THE PARTIES?

SHOULD THE HOLDER OF A BALLOON PAYMENT NOTE BE
REQUIRED TO GIVE NOTICE, AS SPECIFIED, TO THE
DEBTOR NOT LESS THAN 60 DAYS PRIOR TO THAT BALLOON
PAYMENT BECOMING DUE?

(More)

EXHIBIT E - Page 23

144                    Exhibit A - Page 149

AB 3531 (McAlister)
Page 2

### PURPOSE

Existing law generally does not require the disclosure of detailed credit information or possible risks in real property sales which involve seller take-back financing.  Nor does it require the holder of a balloon payment note to notify the debtor of the note becoming due at least 60 days before the fact.

This bill would require the disclosure of specified information by the parties in certain home sales which involve seller take-back financing and an arranger of credit, as defined. The arranger of credit would also be required to make the disclosures.

This bill would also require the holder of the balloon payment note created by seller take-back financing to give the debtor written notice of the balloon payment becoming due at least 60 days prior to that fact.

The bill would become operative on July 1, 1983.

The purpose of this bill is to provide for specific disclosures and warnings to parties in real property sales which involve seller take-back financing.

### COMMENT

1.  Required notice of pending balloon payment

At the urging of Senator Sieroty, this bill has been amended to require the holder of a balloon payment note created by seller

(More)

AB 3531 (McAlister)
Page 3

take-back financing to give the debtor written notice of the payment becoming due 60 to 150 days prior to that fact.

The notice would include information on:

(a)  the date on which the balloon payment would become due and to whom the payment should be made;

(b)  the amount of the payment, or a good faith estimate if the exact amount was not known, including unpaid principal, interest and any other charges; and

(c)  a description of the trustor's right, if any, to refinance the balloon payment, including a summary of the terms of refinancing.

Proponents of this requirement assert that it would give a balloon payment debtor advance notice of the need to procure refinancing if that was necessary, or to list the property for sale if refinancing was not possible.

2.  Effect of failure to give notice

(a)  On holder of note

The holder's failure to give written notice as required would not extinguish any obligation of payment by the debtor, except that the due date of the balloon payment would be delayed until 60 days after notice was given, or 60 days from the date specified in the notice, whichever date was later.

(More)

AB 3531 (McAlister)
Page 4

A
B

3
5
3
1

(b)  __On the debt__

The bill provides that when the due date
of the balloon payment was extended,
interest would continue to accrue for the
extended term and payment would continue
to be due "at __any__ periodic interval and
on __any__ scheduled payment schedule
__specified in the note__."

The purpose of the language is to provide
for the automatic continuance of the
periodic payment when the due date of the
balloon payment is extended.  However, it
could be interpreted to provide for
continuous payments of principal and
interest only upon specific direction in
the note.

IS THE LANGUAGE SUFFICIENTLY CLEAR?

Default on any extended periodic payment
would be grounds for a foreclosure
action.

(c)  __On a bona fide purchaser__

Any failure of a note holder to comply
with the notice provisions would not
affect the validity of a sale in favor of
a bona fide purchaser or the rights of an
encumbrancer for value and without
notice.

(More)

EXHIBIT E - Page 26

AB 3531 (McAlister)
Page 5

A
B
3
5
3
1

3.  **Other provisions**

    (a)  **Notice in note**

        Every balloon payment note created by
seller take-back financing would be
required to contain a notice that the
holder of the note was required to give
the debtor written notice as described 60
to 150 days before the balloon payment
becoming due.

        Failure to include the notice would not
invalidate the note.

        WHAT INCENTIVE WOULD A NOTE HOLDER HAVE
TO COMPLY WITH THIS REQUIREMENT?

    (b)  **Prospective application**

        The bill would be applicable only to
those notes executed on or after July 1,
1983.

4.  **Required disclosures in sales involving
creative financing**

    This bill would require that various
disclosures to be made to the buyer and
seller.

    The majority of the disclosures relate to
credit and financing information such as
warnings about the possible difficulties of
obtaining conventional financing should
refinancing be necessary, the possibility of
negative amortization and an explanation of
its effects, the buyer's credit data, the

                                     (More)

Provided by LRI History LLC

AB 3531 (McAlister)                                    A
Page 6                                                 B

                                                       3
                                                       5
assignment of responsibility in all-inclusive          3
trust deed situation, information on prior              1
encumbrances, and a statement of whether the
buyer would receive any cash from the
financing.

The other disclosures would provide the
parties with other types of information, such
as whether a tax service and title insurance
had been arranged, and whether the buyer had
obtained property insurance naming the seller
as a loss payee. (See Comment 12 for a
complete listing.)

The California Association of Realtors asserts
that shortage of money in the mortgage market
for conventional first trust deed and the high
rates of interest on such instruments has
resulted in a growing use of loan assumptions
plus seller-assisted financing. The greater
utilization of "creative financing" has
produced a variety of new instruments and
approaches with features which may not be
fully understandable to home purchasers and
sellers. The Realtors believe that better
disclosure of more explicit information to the
parties is desirable.

5.  Disclosure to both principals, by both
    principals

Under this bill, the written disclosures,
would be given to:

(a)  the purchaser, by the arranger of credit
     and the seller (with respect to
     information within the knowledge of the
     seller).

                                        (More)

EXHIBIT E - Page 28

AB 3531 (McAlister)                                    A
Page 7                                                 B

                                                       3
       (b)  the seller, by the arranger of credit and  5
            the buyer (with respect to                 3
            information within the knowledge of the    1
            buyer).

6.  **Disclosures not required in every creative
    financing case**

    The disclosures would be required only when a
    third party arranger of credit was involved in
    the sale.  The bill would not apply when the
    buyer and seller dealt directly with one
    another, and would not apply in
    seller-assisted sales by a developer to an
    individual, or to sales by an individual to a
    known real estate speculator who does not need
    the services of a credit arranger.

    SHOULD NOT THESE DISCLOSURES BE REQUIRED IN
    EVERY CASE INVOLVING SELLER TAKE-BACK
    FINANCING?

7.  **Arranger of credit**

    (a)  **Definitions**

         1.  **3rd party arranger**

             The term would apply to any third
             party who was involved in negotiating
             credit terms, participated in
             completing the credit documents, and
             who was compensated for arranging the
             credit or from any sale aided by that
             extension of credit.  The term would
             not include a person acting in the
             capacity of an escrow.

                                          (More)

AB 3531 (McAlister)
Page 8

This definition would apply mostly to
realtors.  It would also apply to an
attorney representing a client if the
attorney was involved in developing
or negotiating credit terms and
participated in the completion of the
credit documents.

2.  **Realtors and attorneys**

Under this bill, any realtor or
attorney who was a party to a sale
involving seller take back financing
would be deemed to be on arranger of
credit and would be required to make
the specified disclosures.  The
rational for placing this burden on
realtors is that they are asserted to
be in a superior position to other
parties in real property sales.  For
the very same reason, the California
Association of Realtors assert that
the definition should also include
attorneys.  (Following this
reasoning, the bill should probably
also apply to lending officers of
financial institutions since they too
would be in a superior position
because of their expertise in the
area of financing).

However, the proponent's reasoning
can be questioned.  Whereas knowledge
of creative financing methods and
their attendent risk are a necessary
part of a realtors tools-of-trade in
today's real estate market, the same
does not hold true for all attorneys.

(More)

EXHIBIT E - Page 30

Exhibit A - Page 156

AB 3531 (McAlister)                                              A
Page 9                                                          B

                                                               3
                                                               5
                                                               3
            Lawyers who have restricted their                 1
            practice to specialized areas such as
            criminal law or personal injury
            should not be expected to know the
            nuances of creative financing.  In
            fact, loan officers of financial
            institutions would probably have more
            knowledge in the area than these
            lawyers.

            SHOULD ALL ATTORNEYS BE INCLUDED
            WITHIN THE DEFINITION OF AN ARRANGER
            OF CREDIT?

    (b)  When more than one

         The bill would provide that where there
         was more than one arranger of credit and
         one of those arrangers had obtained the
         purchase offer from the purchaser, that
         arranger would be required to make a
         disclosure unless the parties designated
         another person in writing.

8.  Opposition of property lawyers

    The Real Property Law Section of the State Bar
    opposes this bill unless attorneys
    representing clients are exempted from its
    provisions.

    The principal concern to the group is the fear
    that an attorney who represented one, but not
    both, of the parties to a credit transaction
    would be required to make certain disclosures
    to both the buyer and seller, even if it was
    not in the interest of the client who retained
    the attorney to have such disclosures made to
    the other party.

                                        (More)

EXHIBIT E - Page 31

AB 3531 (McAlister)
Page 10

A
B

3
5
3
1

The Section believes that this bill would place the lawyer in an untenable position. Specifically, Rules 5-102(B) of the Rules of Professional Conduct for the State Bar (RPC) precludes an attorney from representing parties with conflicting interests. They believe that certain required disclosures (e.g. paragraphs (f) and (h) of Comment 12) would place the attorney in the position of representing conflicting interests.

Further, Business and Professions Code Sec. 6068(e) requires an attorney to maintain client confidences. The opponents are concerned that an attorney could be required to violate a client confidence in order to comply with the required disclosures.

For the foregoing reasons, the Section asserts that there is a real possibility that legal counsel would therefore refuse to become involved in a transaction where creative financing devices are used in order to conform with these ethical requirements. Thus, the bill could very well have an effect which runs counter to its objective, since no legal advice would be given.

SHOULD NOT ATTORNEYS REPRESENTING CLIENTS BE EXEMPTED FROM MAKING DISCLOSURES THAT WOULD CONFLICT WITH THEIR PROFESSIONAL AND ETHICAL RESPONSIBILITIES?

9.  Time of disclosures

AB 3531 would require the disclosures to be made as soon as practicable but before execution of any note or security document.

(More)

EXHIBIT E - Page 32

Exhibit A - Page 158

AB 3531 (McAlister)                                          A
Page 11                                                      B

                                                             3
If the disclosures were made after execution               5
of initial credit documents, the financing                3
documents would be contingent upon the                     1
purchaser's approval of the disclosures prior
to execution of the security documents.

10. Effect of failure to make disclosures

    (a) No effect on validity of credit documents

        The validity of any credit or security
        document would not be invalidated solely
        because of the failure of any person to
        provide the required disclosures.

    (b) Damages to injured party

        Any person who willfully violated any
        provision of this article would be liable
        in the amount of actual damages suffered
        by the injured party as the proximate
        result of the violation.  However, no
        person would be held liable if it was
        shown by a preponderance of the evidence
        that the violation was not intentional
        and resulted from a bona fide error
        notwithstanding the maintenance of
        procedures reasonably adopted to avoid
        such error.

    (c) Time to bring action

        The statute of limitations for bringing
        an action would be two years from the
        date on which liability arose, except
        where any material disclosure had been
        materially and willfully represented.  In
        that case, the action could be brought

                                            (More)

AB 3531 (McAlister)
Page 12

within two years of the discovery of the misrepresentation.

11. <u>Exemptions</u>

The specified disclosures would not be required if the purchaser was entitled to receive a disclosure statement pursuant to the Federal Truth-and-Lending Act and the Real Estate Settlement Procedures Act, or to a seller if the seller was entitled to receive a disclosure pursuant to the real estate law relating to loans made or negotiated by mortgage loan brokers.

12. <u>List of required disclosures</u>

The disclosures required by this bill would include:

(a)   Identification of the property, the credit and security documents.

(b)   A copy of the credit document or a description of its terms.

(c)   Insofar as the information was available, a statement regarding the principal terms and conditions of each recorded senior lien on the property including the original balance, current balance, periodic payment, balloon payment, interest rate, maturity date, and whether or not there is any current defaults in payment.

(d)   A warning that, if refinancing would be required under the loan, conventional

(More)

EXHIBIT E - Page 34

Exhibit A - Page 160

AB 3531 (McAlister)
Page 13

        financing might be difficult or
impossible to obtain in the conventional
mortgage market.

(e)   A disclosure and explanation of its
potential effect if negative amortization
could occur as a result of any variable
or adjustable rate financing arranged.

(f)   In a case of an all-inclusive trust deed,
a statement of whether the contract
documents specified the party liable for
payment or responsible for a defense
should the lender under the prior
encumbrance attempt to accelerate the
loan and the responsibilities and rights
of the parties should repayment of a
local secured by a prior lien be
required.

(g)   In cases involving an all inclusive trust
deed or a real property sales contract,
the person responsible for loan
servicing, and a warning that if the
person was not a neutral third party, the
parties could designate a neutral third
party for that purpose.

(h)   If the financing could result in a
balloon payment, the date and amount of
the payment due, and the lack of
assurance that new financing or a loan
extension would be available at the time
the balloon payment became available.

(i)   A statement concerning the occupation,
employment, income and credit data of the
prospective purchaser as represented to

(More)

Provided by LRI History LLC

AB 3531 (McAlister)                                      A
Page 14                                                  B

                                                         3
          the arranger of credit by the purchaser,      5
          or a specific statement that no               3
          representation was made by the arranger       1
          of credit.  The statement would also
          include a warning that any recovery by
          the seller in the event of foreclosure
          would be limited to the net proceeds of
          the sale of the property.

     (j)  A statement that the seller would be
          protected by loss payee clauses in the
          property insurance, or that the seller
          should consider protecting himself or
          herself by securing such clauses if such
          provisions had not been made.

     (k)  A statement that a request for notice of
          default had been recorded, or that, if it
          had not been recorded, the seller should
          consider recording a request.

     (l)  A statement that a policy of title
          insurance had been or would be obtained
          and furnished to both parties insuring
          the respective interest of each, or that
          both parties individually should consider
          obtaining such a policy.

     (m)  A statement that a tax service had been
          arranged to report to the seller whether
          property taxes had been paid on the
          property, or that the seller should
          ascertain for himself that the taxes have
          been paid.

     (n)  A statement that the security documents
          on the financing had been or would be

                                            (More)

AB 3531 (McAlister)
Page 15

A
B

3
5
3
1

recorded, or a statement that the
security might be subject to intervening
liens or judgments if the security
documents were not recorded.

(o)   A disclosure whether the purchaser would
receive any cash from the proceeds from
the transaction, along with the
disclosure of the amount, the source of
funds, and the purpose of any
disbursements as represented by the
purchaser.

*********

# Seller Financing Disclosure

## AB 3531

## SELLER FINANCING DISCLOSURE LAW (AB 3531)

"DISCLOSE" - 1. To unclose: to open. 2. To uncover; 3. To lay open or expose to view; to expose; also to reveal; to make known. (Webster's Collegiate Dictionary)

"DISCLOSE" may also imply a discovering but more often an imparting of information previously kept secret or unknown; an unveiling of what is not clear to human vision and/or understanding. (Webster's Third New International Dictionary)

On September 10, 1982, the governor signed into law AB 3531 to become effective July 1, 1983. The bill adds Sections 2956 through 2967 to the California Civil Code and specifies certain disclosures that must be made to buyers and sellers in transactions involving seller financing after the effective date of the legislation.

It should come as no surprise, with more than 120,000 real estate transactions in 1982 involving "seller - assisted financing" for the purchase of real property, that a major piece of legislation was enacted to protect buyers and sellers of real estate when they offer each other "credit opportunities" through their real estate agents.

This publication examines the law (AB 3531), provides an in-depth instruction on the use of the new "Disclosure Form", and analyzes the effect of this legislation on REALTORS® and REALTOR-ASSOCIATES®.

### Illustration No. 14

M. Proceeds to buyer:

☐ Buyer will NOT receive any cash proceeds at the close of the sale transaction.

☐ Buyer will receive approximately $_____ from _____ (indicate source from the sale transaction proceeds of such funds). Buyer represents that the purpose of such disbursement is as follows:

### Illustration No. 13

L. Recording:

☐ The security documents (e.g., deed of trust, installment land contract, etc.) will be recorded with the county recorder where the property is located; or

☐ The security documents will not be recorded with the county recorder. Seller and buyer are advised that their respective interests in the property may be jeopardized by intervening liens, judgments or subsequent transfers which are recorded.

The arranger of credit must mark (X) the appropriate box to indicate whether or not the transaction provisions include a requirement that a Request For Notice of Default be recorded.



(Illustration No. 11)

A policy of title insurance will protect the interests of the insured party from claims adverse to those interests.

Both seller and buyer have interests in the security property that can be protected by a policy of title insurance.

If both parties will be provided with title insurance coverage, then the arranger of credit should mark (X) the first box.

If neither party is to be given title insurance coverage, or if only one party to the transaction has made arrangements for title insurance coverage, then the second box should be marked (X).

(Illustration No. 12)

There are tax services available which will report whether property taxes on a particular property are being paid on a timely basis.

47

## THE AFTERMATH OF CREATIVE FINANCING

Traditionally, the burdens of disclosure in a real property loan transaction have been imposed upon institutional lenders, mortgage brokers, and those who either lend their own funds on a regular basis or issue securities.

Effective July 1, 1983, the new rules apply to residential sales in which the seller carries some of the financing.

The new law, which appears in Civil Code Sections 2956 - 2967, was sponsored by the CALIFORNIA ASSOCIATION OF REALTORS® in an attempt to better inform prospective sellers and purchasers of the pitfalls of unconventional or "creative" financing.

More particularly, the law is aimed at those who engage in short-term financing on the premise that the buyer will be able to obtain a new loan later at a more affordable rate of interest.

The statute seeks to quell the rising tide of foreclosures and insolvency proceedings, especially those that occur when buyers cannot raise the money for a final balloon payment.

### Application

The new law applies to the purchase of a dwelling for not more than four families where the seller extends credit to the buyer. The dwelling need not be owner-occupied for the statute to govern.

2

# SENATE REPUBLICAN CAUCUS
### SENATOR KENNETH L. MADDY, Chairman

POSITIONS:

SOURCE: Calif. Assn. of Realtors

BILL NUMBER: AB 3531

AUTHOR: McAlister et al

AMENDED COPY: 8-11-82
MAJORITY VOTE

Committee Votes:

Senate Floor Vote:



Assembly Floor Vote:

DIGEST

1 This bill amends existing law relative to credit transactions.
2 Specifically:
3
4 ° This bill would require the disclosure of specified
5 information by the parties in certain home sales
6 which involve seller take-back financing and an
7 arranger of credit, as defined. The arranger of
8 credit would also be required to make the disclosures.
9
10 ° This bill would also require the holder of the
11 balloon payment note created by seller take-back
12 financing to give the debtor written notice of the
13 balloon payment becoming due at least 60 days prior
14 to that fact.
15
16 ° The bill would become operative on July 1, 1983.
17
18 (See Comments for Details)
19
20 FISCAL EFFECT: Appropriation, no.  Fiscal Committee, no.  Local, no.
21
22 COMMENTS
23
24 The purpose of this bill is to provide for specific disclosures and
25 warnings to parties in real property sales which involve seller take-
26 back financing.
27
28
29
30
31                                          - next page -
32

EXHIBIT E - Page 41

ANALYSIS CONTINUED:          PAGE:    2      BILL NUMBER:  AB 3531

According to the Senate Judiciary Committee analysis,

> At the urging of Senator Sieroty, this bill
> has been amended to require the holder of a
> balloon payment note created by seller
>
> take-back financing to give the debtor written
> notice of the payment becoming due 60 to 150
> days prior to that fact.

The notice would include information on:

(a)   the date on which the balloon payment
      would become due and to whom the payment
      should be made;

(b)   the amount of the payment, or a good
      faith estimate if the exact amount was
      not known, including unpaid principal,
      interest and any other charges; and

(c)   a description of the trustor's right, if
      any, to refinance the balloon payment,
      including a summary of the terms of
      refinancing.

Proponents of this requirement assert that it
would give a balloon payment debtor advance
notice of the need to procure refinancing if
that was necessary, or to list the property
for sale if refinancing was not possible.

List of required disclosures

The disclosures required by this bill would
include:

(a)   Identification of the property, the
      credit and security documents.

(b)   A copy of the credit document or a
      description of its terms.

(c)   Insofar as the information was available,
      a statement regarding the principal terms
      and conditions of each recorded senior
      lien on the property including the
      original balance, current balance,
      periodic payment, balloon payment,
      interest rate, maturity date, and whether
      or not there is any current defaults in
      payment.

(d)   A warning that, if refinancing would be
      required under the loan, conventional

- next page -

ANALYSIS CONTINUED:                PAGE:    3      BILL NUMBER:    AB 3531

1
2       financing might be difficult or
3       impossible to obtain in the conventional
4       mortgage market.
5
6   (e)  A disclosure and explanation of its
7       potential effect if negative amortization
8       could occur as a result of any variable
9       or adjustable rate financing arranged.
10
11  (f)  In a case of an all-inclusive trust deed,
12      a statement of whether the contract
13      documents specified the party liable for
14      payment or responsible for a defense
15      should the lender under the prior
16      encumbrance attempt to accelerate the
17      loan and the responsibilities and rights
18      of the parties should repayment of a
19      local secured by a prior lien be
20      required.
21
22  (g)  In cases involving an all inclusive trust
23      deed or a real property sales contract,
24      the person responsible for loan
25      servicing, and a warning that if the
26      person was not a neutral third party, the
27      parties could designate a neutral third
28      party for that purpose.
29
30  (h)  If the financing could result in a
31      balloon payment, the date and amount of
32      the payment due, and the lack of
33      assurance that new financing or a loan
34      extension would be available at the time
35      the balloon payment became available.
36
37  (i)  A statement concerning the occupation,
38      employment, income and credit data of the
39      prospective purchaser as represented to
40
41      the arranger of credit by the purchaser,
42      or a specific statement that no
43      representation was made by the arranger
44      of credit.  The statement would also
45      include a warning that any recovery by
46      the seller in the event of foreclosure
47      would be limited to the net proceeds of
48      the sale of the property.
49
50  (j)  A statement that the seller would be
51      protected by loss payee clauses in the
52      property insurance, or that the seller
53      should consider protecting himself or
54      herself by securing such clauses if such
55      provisions had not been made.
56
57                                              - next page -

ANALYSIS CONTINUED:                    PAGE:    4        BILL NUMBER:  AB 3531

(k)  A statement that a request for notice of
     default had been recorded, or that, if it
     had not been recorded, the seller should
     consider recording a request.

(l)  A statement that a policy of title
     insurance had been or would be obtained
     and furnished to both parties insuring
     the respective interest of each, or that
     both parties individually should consider
     obtaining such a policy.

(m)  A statement that a tax service had been
     arranged to report to the seller whether
     property taxes had been paid on the
     property, or that the seller should
     ascertain for himself that the taxes have
     been paid.

(n)  A statement that the security documents
     on the financing had been or would be

     recorded, or a statement that the
     security might be subject to intervening
     liens or judgments if the security
     documents were not recorded.

(o)  A disclosure whether the purchaser would
     receive any cash from the proceeds from
     the transaction, along with the
     disclosure of the amount, the source of
     funds, and the purpose of any
     disbursements as represented by the
     purchaser.


ASSEMBLY COAUTHORS:  Greene, Imbrecht, Johnson, La Follette, Rosenthal,
Tucker and Young

SENATE COAUTHORS:  Seymour and Speraw

8-11-82:aj

```
 1 │ SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   │    A Limited Liability Partnership
 2 │    Including Professional Corporations
   │ EDWARD D. VOGEL, Cal. Bar No. 110081
 3 │ JOHN C. DINEEN, Cal. Bar No. 222095
   │ MARK G. RACKERS, Cal. Bar No. 254242
 4 │ 501 West Broadway, 19th Floor
   │ San Diego, California 92101-3598
 5 │ Telephone:    619.338.6500
   │ Facsimile:    619.234.3815
 6 │ E-mail:    evogel@sheppardmullin.com
   │           jdineen@sheppardmullin.com
 7 │           mrackers@sheppardmullin.com
 8 │ Attorneys for Defendant
   │ WELLS FARGO BANK, N.A.
 9 │
10 │         SUPERIOR COURT OF THE STATE OF CALIFORNIA
11 │                  COUNTY OF ALAMEDA
12 │
13 │ JOSEPH WYMAN, an individual,        Case No. RG18889478
   │ individually and on behalf of those
14 │ similarly situated; LISA WYMAN,     DEFENDANT WELLS FARGO BANK,
   │ an individual,                      N.A.'S COMPLEX CASE
15 │                                     MANAGEMENT STATEMENT
   │         Plaintiffs,
16 │                                     ASSIGNED FOR ALL PURPOSES TO:
   │     v.                              JUDGE BRAD SELIGMAN
17 │                                     DEPARTMENT: 23
   │ WELLS FARGO BANK, N.A., a business  DATE: April 24, 2018
18 │ entity; and DOES 1 through 50, inclusive,  TIME: 3:00 p.m.
19 │         Defendants.                 Complaint Filed: January 4, 2018
20 │
21 │
22 │
23 │
24 │
25 │
26 │
27 │
28 │
```

ENDORSED
FILED
ALAMEDA COUNTY

APR 1 0 2018

CLERK OF THE SUPERIOR COURT
By: D. OLIVER, Deputy

1        Pursuant to California Rule of Court 3.750 and Local Rules of the Superior

2    Court of California, County of Alameda 3.260(f), Defendant Wells Fargo Bank, N.A.

3    ("Wells Fargo") submits the following Complex Case Management Statement in advance

4    of the Initial Complex Case Management Conference scheduled for April 24, 2018 at

5    3:00 p.m. in Department 23 before the Honorable Brad Seligman.

6    I.    **BRIEF FACTUAL SUMMARY, ISSUES PRESENTED, AND RELIEF**

7          **SOUGHT**

8              Plaintiffs' Complaint, a putative class action, seeks damages, statutory

9    damages, disgorgement and injunctive relief for alleged violations of California Civil Code

10   § 2966.  Specifically, Plaintiffs allege that Wells Fargo modified their loan, but did not

11   provide them with a notice they contend was required by Civil Code § 2966.  Plaintiffs

12   allege that the Bank's failure to provide that notice meant that Plaintiffs were entitled to an

13   extension of the due date for their final loan payment (which Plaintiffs characterize as a

14   "balloon payment") and therefore, as a result, Wells Fargo sought to collect an inaccurate

15   amount from Plaintiffs.  Plaintiffs seek to represent a class of California mortgage

16   borrowers who received a loan modification from Wells Fargo that contained a "balloon

17   payment" and that did not contain a notice as set forth in California Civil Code § 2966.

18             Wells Fargo's position is as follows:

19             Plaintiffs' sole cause of action against Wells Fargo is fatally defective for at

20   least three independent reasons, any one of which requires dismissal.  First, Plaintiffs'

21   claim is barred by claim preclusion as Plaintiffs already filed, and lost, a lawsuit against

22   Wells Fargo that raised, or could have raised, the same claim against the Bank.  Second,

23   Plaintiffs' claim is barred by the applicable two year statute of limitations.  And third, the

24   disclosure requirements of Civil Code § 2966 are inapplicable to Plaintiffs' loan

25   modification.  The application of the statute is limited to certain residential real estate

26   transactions involving seller take-back financing.  The statute does not apply to loan

27   modifications made by national banks and the claimed statutory violation simply does not

28   exist. (There are also no statutory damages available for a Section 2966 claim.)  For each

-1-

SMRH:485934448.3
Case No. RG18889478
WELLS FARGO BANK'S COMPLEX CASE MANAGEMENT STATEMENT

1  of these reasons, Wells Fargo plans to file a demurrer, which should be sustained without

2  leave to amend.

3  **II.    PROCEDURAL POSTURE OF THE CASE AND MISCELLANEOUS**

4  **ISSUES**

5            This case was deemed complex on March 20, 2018, by Judge Brad

6  Seligman.  After meeting and conferring with Plaintiff's counsel on March 21, 2018, Wells

7  Fargo decided to file its demurrer to Plaintiff's complaint and secured a hearing date for

8  May 22, 2018, at 3:00 p.m. in Dept. 23.  There are no known jurisdiction or venue issues.

9  **III.    SUBJECTS FOR CONSIDERATION AT THE CONFERENCE**

10            Pursuant to California Rule of Court 3.750, the Court should consider the

11  subjects listed in 3.750(b) at a complex case management conference.  Below is Wells

12  Fargo's position on each subject:

13        (1)  Wells Fargo is unaware of any parties that are named in the Complaint that

14        have not been served, appeared or dismissed;

15        (2)  To the best of Wells Fargo's knowledge, all relevant parties have been included

16        in this action;

17        (3)  Wells Fargo is not aware of any additional initial pleadings that need to be filed

18        and/or additional parties that need to be served;

19        (4)  Severance, consolidation or coordination with other actions is not desirable, and

20        Wells Fargo is unaware of any ongoing related cases within the meaning of

21        California Rule of Court 3.300(a).

22        (5)  Discovery is not yet underway and should not commence until Wells Fargo's

23        demurrer has been heard.  Wells Fargo's demurrer is pending and, as Plaintiffs'

24        defective claim cannot be cured by amendment, the Bank believes the case should

25        be dismissed with prejudice.

26        (6)  The Parties have not yet discussed ADR.  Any settlement discussions are

27        premature in this action until Wells Fargo's demurrer is resolved (which hearing is

28        presently set for May 22, 2018 at 3:00 p.m.)

-2-

(7)  Plaintiffs are represented by Matthew D. Mellen and Jessica Galletta of Mellen Law Firm. Wells Fargo is represented by Edward D. Vogel and John C. Dineen of Sheppard Mullin Richter & Hampton, LLP. There is no need for the appointment of additional counsel.

(8)  If this action is not resolved on demurrer, then Wells Fargo anticipates filing a motion for summary judgment on the grounds of claim preclusion, Wells Fargo's statute of limitations defense, and whether Civil Code § 2966 applies to Plaintiffs' loan modification.

(9)  Wells Fargo believes that discovery should be stayed pending a ruling on its demurrer.  Moreover, given that a key issue in this matter is of statutory interpretation, Wells Fargo anticipates that very few fact witness depositions will be necessary in this case.

(10)  At this time, Wells Fargo is unaware of any reason that the Parties will require an electronic document depository.

(11)  Wells Fargo is not aware of any reason that a special master would need to be appointed.

(12)  Given that there are only two parties in the case, Wells Fargo is unaware of any reason that this case would require a case-based web site or other means to provide a current master list of addresses and telephone numbers of counsel.

(13)  Wells Fargo is amenable to the scheduling of further conferences as the Court deems necessary.

## IV.   **MEET AND CONFER**

On March 21, 2018, the Parties extensively met and conferred regarding Wells Fargo's anticipated demurrer and discussed Wells Fargo's anticipated challenges to Plaintiffs' claim in significant detail.  The Parties have not yet met and conferred regarding discovery, the filing of a summary judgment motion and the potential for alternative dispute resolution, because prior to the hearing on the Bank's demurrer, those issues are

1  premature.

2

3  **V.    PROPOSED SCHEDULE FOR CONDUCT OF LITIGATION**

4           Wells Fargo respectfully requests that no trial date be set for this matter at

5  this time.  The case is not yet at issue.  Wells Fargo's demurrer is yet to be heard.  If

6  Plaintiffs' claim survives demurrer (and it should not), an additional conference should be

7  set to discuss scheduling for discovery, class certification, summary judgment, ADR and

8  other pre-trial matters.

9

10  Dated:  April 9, 2018

11                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

12               By

13                          EDWARD D. VOGEL
                            JOHN C. DINEEN
14

15                          Attorneys for Defendant
                            WELLS FARGO BANK, N.A.
16

17

18

19

20

21

22

23

24

25

26

27

28

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2     Including Professional Corporations
   EDWARD D. VOGEL, Cal. Bar No. 110081
3  JOHN C. DINEEN, Cal. Bar No. 222095
   MARK G. RACKERS, Cal. Bar No. 254242
4  501 West Broadway, 19th Floor
   San Diego, California 92101-3598
5  Telephone:    619.338.6500
   Facsimile:    619.234.3815
6  E mail         evogel@sheppardmullin.com
                  jdineen@sheppardmullin.com
7                 mrackers@sheppardmullin.com

8  Attorneys for Defendant
   WELLS FARGO BANK, N.A.

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11          COUNTY OF ALAMEDA, RENE C. DAVIDSON COURTHOUSE

12

13  JOSEPH WYMAN, an individual,            Case No. RG18889478
    individually and on behalf of those
14  similarly situated; LISA WYMAN,         **PROOF OF SERVICE**
    an individual,
15                                          Date:
                  Plaintiffs,               Time:
16                                          Dept.:    23
          v.
17                                          [Complaint Filed: January 4, 2018]
    WELLS FARGO BANK, N.A., a business
18  entity; and DOES 1 through 50, inclusive,   René C. Davidson Courthouse
                                                1225 Fallon St,
19                Defendants.                    Oakland, CA  94612

20

21

22

23

24

25

26

27

28

---

SMRH:485531522.1

                                          Case No. RG18889478
                                          PROOF OF SERVICE

1  *Wyman v. Wells Fargo Bank, N.A.*
   Alameda Superior Court, Case No. RG18889478
2
3                          PROOF OF SERVICE
4              STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

5      At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Diego, State of California. My business address is 501 West Broadway, 19th Floor, San Diego, CA 92101-3598.
6
       On April 9, 2018, I served true copies of the following document(s) described as
7
8  **DEFENDANT WELLS FARGO BANK'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFFS' COMPLAINT; DECLARATION OF JOHN C. DINEEN IN SUPPORT OF DEMURRER [C.C.P. § 430.41]**
9
10 **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT WELLS FARGO BANK, N.A.'S DEMURRER TO PLAINTIFFS' COMPLAINT**
11
12 **DEFENDANT WELLS FARGO BANK'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS DEMURRER TO PLAINTIFFS' COMPLAINT**
13
   **DEFENDANT WELLS FARGO BANK'S COMPLEX CASE MANAGEMENT CONFERENCE STATEMENT**
14
15 on the interested parties in this action as follows:

16                          **SERVICE LIST**

17 Matthew D. Mellen, Esq.           Attorneys for Plaintiffs Joseph and Lisa
   Mellen Law Firm                   Wyman and the purported class
18 One Embarcadero Center, Fifth Floor
   San Francisco, CA 94111
19 Tel 415-315-1653: Fax 415-276-1902

20
21     **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar
22 with the firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the
23 ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing
24 occurred.

25
26
27
28

                                    -1-              Case No. RG18889478
   SMRH:485531522.1                                  PROOF OF SERVICE

            172            Exhibit A - Page 177

1

    I declare under penalty of perjury under the laws of the State of California that the
2   foregoing is true and correct.

3       Executed on April 9, 2018, at San Diego, California.

4

5                                                       Margaret P. Tolbert

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APR. 12. 2018  2:03PM                                          NO. 3592   P. 2

| | |
|---|---|
| 1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| | A Limited Liability Partnership |
| 2 | Including Professional Corporations |
| | EDWARD D. VOGEL, Cal. Bar No. 110081 |
| 3 | JOHN C. DINEEN, Cal. Bar No. 222095 |
| | MARK G. RACKERS, Cal. Bar No. 254242 |
| 4 | 501 West Broadway, 19th Floor |
| | San Diego, California 92101-3598 |
| 5 | Telephone:   619.338.6500 |
| | Facsimile:   619.234.3815 |
| 6 | E-mail:       evogel@sheppardmullin.com |
| | jdineen@sheppardmullin.com |
| 7 | mrackers@sheppardmullin.com |
| 8 | Attorneys for Defendant |
| | WELLS FARGO BANK, N.A. |
| 9 | |

**FILED BY FAX**
ALAMEDA COUNTY

April 12, 2018

CLERK OF
THE SUPERIOR COURT
By Alicia Espinoza, Deputy

CASE NUMBER:
RG18889478

| | |
|---|---|
| 10 | SUPERIOR COURT OF THE STATE OF CALIFORNIA |
| 11 | COUNTY OF ALAMEDA |
| 12 | |
| 13 | JOSEPH WYMAN, an individual, |
| | individually and on behalf of those |
| 14 | similarly situated; LISA WYMAN, |
| | an individual, |
| 15 | |
| 16 | Plaintiffs, |
| 17 | v. |
| 18 | WELLS FARGO BANK, N.A., a business |
| | entity; and DOES 1 through 50, inclusive, |
| 19 | Defendants. |
| 20 | |

Case No. RG18889478

ASSIGNED FOR ALL PURPOSES TO:
JUDGE BRAD SELIGMAN
DEPARTMENT 23

**DECLARATION OF PREJUDICE PER
C.C.P. § 170.6
(PEREMPTORY CHALLENGE)**

[Proposed] Order filed concurrently
herewith

Complaint Filed: January 4, 2018

| | |
|---|---|
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

-1-

SMRH:485928493.1

Case No. RG18889478
WELLS FARGO BANK'S PEREMPTORY CHALLENGE

<u>DECLARATION OF EDWARD D. VOGEL</u>

I, Edward D. Vogel, say that:

       I am an attorney for Defendant Wells Fargo Bank, N.A. in the within action. The Honorable Brad Seligman, the judge before whom this case is pending, is prejudiced against the Defendant or the Defendant's attorneys or the interest of the Defendant or of the Defendant's attorneys such that the declarant believes that the Defendant cannot have a fair and impartial trial or hearing before such judge.

       This challenge is timely as counsel for Wells Fargo was notified for the first time today by the clerk in Department 23 that the matter has been assigned to Judge Seligman and Judge Seligman has not made any ruling on a contested issue of fact. Moreover, Wells Fargo has not yet made an appearance in this action by filing its demurrer or other pleading responsive to Plaintiffs' complaint.

       Pursuant to the provisions of Code of Civil Procedure § 170.6, Defendant respectfully requests that its peremptory challenge be granted and the matter assigned to another judge.

       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:  April 6, 2018

_____
EDWARD D. VOGEL



1
2
3
4
5
6
7
8
9
10              SUPERIOR COURT OF THE STATE OF CALIFORNIA
11                        COUNTY OF ALAMEDA
12
13   JOSEPH WYMAN, an individual,          Case No. RG18889478
     individually and on behalf of those
14   similarly situated; LISA WYMAN,       ASSIGNED FOR ALL PURPOSES TO:
     an individual,                        JUDGE BRAD SELIGMAN
15                                          DEPARTMENT 23
              Plaintiffs,
16                                          **[PROPOSED] ORDER GRANTING
         v.                                 PEREMPTORY CHALLENGE
17                                          C.C.P. § 170.6**
     WELLS FARGO BANK, N.A., a business
18   entity; and DOES 1 through 50, inclusive,
19            Defendants.                   Complaint Filed: January 4, 2018
20
21
22
23
24
25
26
27
28

                                -1-

<u>ORDER</u>

IT IS ORDERED that Defendant's Peremptory Challenge pursuant to Code of Civil Procedure § 170.6 as to the Honorable Brad Seligman is GRANTED.

Dated:  April ___, 2018

_____
JUDGE OF THE SUPERIOR COURT

-2-

SMRH:485929026.1

Case No. RG18889478
[PROPOSED] ORDER GRANTING PEREMPTORY CHALLENGE

Fax Server          4/12/2018 3:41:50 PM   PAGE   1/001   Fax Server

APR. 12. 2018  2:03PM                                      NO. 3592   P. 6

1    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP        **FILED BY FAX**
       A Limited Liability Partnership                ALAMEDA COUNTY
2       Including Professional Corporations
     EDWARD D. VOGEL, Cal. Bar No. 110081               April 12, 2018
3    JOHN C. DINEEN, Cal. Bar No. 222095               CLERK OF
     MARK G. RACKERS, Cal. Bar No. 254242           THE SUPERIOR COURT
4    501 West Broadway, 19th Floor                  By Alicia Espinoza, Deputy
     San Diego, California 92101-3598
5    Telephone:   619.338.6500                      CASE NUMBER:
     Facsimile:   619.234.3815                       **RG18889478**
6    E mail       evogel@sheppardmullin.com
                  jdineen@sheppardmullin.com
7                 mrackers@sheppardmullin.com

8    Attorneys for Defendant
     WELLS FARGO BANK, N.A.
9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11          COUNTY OF ALAMEDA, RENE C. DAVIDSON COURTHOUSE

12

13   JOSEPH WYMAN, an individual,            Case No. RG18889478
     individually and on behalf of those
14   similarly situated; LISA WYMAN,         **PROOF OF SERVICE**
     an individual,
15                                           [Complaint Filed: January 4, 2018]
              Plaintiffs,
16                                           René C. Davidson Courthouse
         v.                                  1225 Fallon St,
17                                           Oakland, CA 94612
     WELLS FARGO BANK, N.A., a business
18   entity; and DOES 1 through 50, inclusive,

19            Defendants.

20

21

22

23

24

25

26

27

28
                                                      Case No. RG18889478
     SMRH:485531522.1                                 PROOF OF SERVICE

1  *Wyman v. Wells Fargo Bank, N.A.*
   Alameda Superior Court, Case No. RG18889478

2

3                        PROOF OF SERVICE

                STATE OF CALIFORNIA, COUNTY OF SAN DIEGO
4

5          At the time of service, I was over 18 years of age and **not a party to this action**. I
   am employed in the County of San Diego, State of California. My business address is
6  501 West Broadway, 19th Floor, San Diego, CA 92101-3598.

7          On April 12, 2018, I served true copies of the following document(s) described as
   **DECLARATION OF PREJUDICE PER C.C.P. § 170.6 (PEREMPTORY
   CHALLENGE); and [PROPOSED] ORDER GRANTING PEREMPTORY
8  CHALLENGE C.C.P. § 170.6** on the interested parties in this action as follows:

9                            SERVICE LIST

10  Matthew D. Mellen, Esq.              Attorneys for Plaintiffs Joseph and Lisa
    Mellen Law Firm                       Wyman and the purported class
11  One Embarcadero Center, Fifth Floor  Tel 415-315-1653; Fax 415-276-1902
    San Francisco. CA  94111
12

13         **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed
    to the persons at the addresses listed in the Service List and placed the envelope for
14  collection and mailing, following our ordinary business practices. I am readily familiar
    with the firm's practice for collecting and processing correspondence for mailing. On the
15  same day that correspondence is placed for collection and mailing, it is deposited in the
    ordinary course of business with the United States Postal Service, in a sealed envelope
16  with postage fully prepaid. I am a resident or employed in the county where the mailing
    occurred.
17
           I declare under penalty of perjury under the laws of the State of California that the
18  foregoing is true and correct.

19         Executed on April 12, 2018, at San Diego, California.

20

21                                     *Pamela Parker*

22                                     Pamela Parker

23

24

25

26

27

28

                                      -1-               Case No. RG18889478
   SMRH:485531522.1                                     PROOF OF SERVICE

Mellen Law Firm
Attn: Mellen, Matthew
One Embarcadero Center
Fifth Floor
San Francisco, CA   94111____

Sheppard Mullin Richter & Hampton LLP
Attn: Dineen, John C.
501 W Broadway
19th Floor
San Diego, CA   92101-3598

---

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

---

Wyman

Plaintiff/Petitioner(s)

VS.

Wells Fargo Bank N.A.

Defendant/Respondent(s)
(Abbreviated Title)

No. RG18889478

Declaration Re: Peremptory Challenge
as to Brad Seligman Granted

IT IS ORDERED that the Defendant's Declaration Re: Peremptory Challenge as to Brad Seligman is granted.

Dated:  04/16/2018

digital

Judge Brad Seligman

### Superior Court of California, County of Alameda



### Notice of Reassignment of Judge for All Purposes

Case Number: RG18889478
Case Title:     Wyman  VS Wells Fargo Bank N.A.
Date of Filing: 01/04/2018

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby reassigned by the Presiding Judge for all purposes to:**

| | |
|---|---|
| Judge: | Winifred Y. Smith |
| Department: | 21 |
| Address: | Administration Building |
| | 1221 Oak Street |
| | Oakland  CA  94612 |
| Phone Number: | (510) 267-6937 |
| Fax Number: | |
| Email Address: | Dept.21@alameda.courts.ca.gov |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure section 170.6 must be exercised within the time period provided by law.  (See Code Civ. Proc. §§ 170.6, subd. (a)(2) and 1013.)**

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording.

Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

General Procedures

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the René C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

<div align="center">
ASSIGNED FOR ALL PURPOSES TO<br>
JUDGE Winifred Y. Smith<br>
DEPARTMENT 21
</div>

All parties are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at: http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processes (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days". Plaintiff received that form in the ADR information package at the time the complaint was filed. The court's Web site also contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

Email is the preferred method of communicating with court staff in Department 21, particularly for scheduling of law and motion, ex parte application, and case management events. Telephone communications are possible, but use of email will greatly facilitate a prompt response to your inquiries. When a copy of a document must be transmitted to court staff, an email attachment is preferable to fax. Use of an email attachment or fax, however, is not a substitute for filing of pleadings or other documents. All email communications should be copied to all parties for whom an email address is available, so inclusion of available email addresses in the caption of all filed papers, as required by California Rule of Court 2.111(1) is critical.

Schedule for Department 21

> The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions.
>
> - Trials generally are held: Trial call is Monday at 9:00 am. Trials run Mondays through Thursdays at 9:00 am/9:30 am to 4:30 pm; expect to be in the courtroom from 9 to 5. Cases may "trail" a trial in progress.
>
> - Case Management Conferences are held: Initial CMC's on Mondays and Tuesdays at 8:30 a.m; Continued CMC's on Mondays and Tuesdays at 8:45 a.m. Timely filed and complete CMC statements allow the court to post tentative CMC orders.
>
> - Law and Motion matters are heard: Fridays at 10:00 am, 11:00 am, and *2:00 pm. *Only Asbestos matters are set at 2:00 pm.
>
> - Settlement Conferences are heard: As specially set.

- Ex Parte matters are heard:  The court prefers to resolve ex parte applications on the papers only. Before submitting an ex parte application on the papers, (a) email Dept. 21 to advise when papers will be filed, and (b) provide CRC 3.1203(a) notice to all parties.

- (ExParte Cont'd) Any written opposition must be filed within 24 hours of receipt of notice. If a matter is time sensitive, opposition is expected, and/or personal appearances are otherwise warranted, the parties may request a time for appearance via email to Dept. 21, copied to all parties. Such appearances, when permitted, will normally be specially set, and compliance with CRC 3.1203(a) will be strictly enforced. All other matters are specially set. Always check the website the day before the hearing for developments on your case. See link to above "List of documents" for more information on the department.

- Pretrial Conferences are held: Fridays at 9:00 a.m. The hearings are scheduled on a Continued Case Management Conference.

## Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
  Email:      Dept.21@alameda.courts.ca.gov

  When requesting to reserve a hearing, include the case name & number, title of the motion and identity of the moving party. The court may set a CMC on shortened time before allowing a discovery motion to be filed.

- Ex Parte Matters
  Email:      Dept.21@alameda.courts.ca.gov


## Tentative Rulings

The court may issue tentative rulings in accordance with the Local Rules.  Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website:  www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 21

- Phone:  1-866-223-2244

Dated:  04/16/2018

_Ley - S. Court_
Facsimile
_____
Presiding Judge,
Superior Court of California, County of Alameda

_____

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as attached hereto and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 04/17/2018

By   _Gordon Perry_
     Deputy Clerk

| SHORT TITLE: Wyman  VS Wells Fargo Bank N.A. | CASE NUMBER: RG18889478 |
|---|---|

ADDITIONAL ADDRESSEES

Mellen Law Firm
Attn:  Mellen, Matthew
One Embarcadero Center
Fifth Floor
San Francisco, CA   94111____

Sheppard Mullin Richter & Hampton LLP
Attn:  Dineen, John C.
501 W Broadway
19th Floor
San Diego, CA   92101-3598

1  Matthew D. Mellen (Bar No. 233350)
2  MELLEN LAW FIRM
   One Embarcadero Center, Fifth Floor
3  San Francisco, CA 94111
   Telephone:    (415) 315-1653
4  Facsimile:    (415) 276-1902

5  Attorney for Plaintiffs,
6  JOSEPH WYMAN
   LISA WYMAN

**FILED BY FAX**
ALAMEDA COUNTY

April 18, 2018

CLERK OF
THE SUPERIOR COURT
By Burt Moskaira, Deputy

CASE NUMBER:

**RG18889478**

7              **SUPERIOR COURT OF THE STATE OF CAIFORNIA**

8                          **ALAMEDA COUNTY**

9

10  JOSEPH WYMAN, an individual,  individually        Case No.: RG18889478
    and on behalf of all those similarly situated;
11  LISA WYMAN, an individual                         **NOTICE OF POSTING JURY FEES**

12              Plaintiffs,

13          vs.

14  WELLS FARGO BANK, N.A., a business
    entity; and DOES 1 through 50, inclusive,
15
16              Defendants.

17

18  TO THE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

19              PLEASE TAKE NOTICE that Plaintiff hereby submits a jury fee deposit in the

20  amount of $150 in the above-entitled action pursuant to California Code of Civil Procedure

21  Section 631(b).

22  DATED: April 17, 2018                    Respectfully Submitted,

23                                           MELLEN LAW FIRM

24

25

26                                           _____
                                             Allen T. Koster
27                                           Attorney for Plaintiffs
                                             JOSEPH WYMAN
28                                           LISA WYMAN

                                    1
                        NOTICE OF POSTING JURY FEES

Matthew D. Mellen (Bar No. 233350)
MELLEN LAW FIRM
One Embarcadero Center, Fifth Floor
San Francisco, CA 94111
Telephone:    (415) 315-1653
Facsimile:    (415) 276-1902

Attorney for Plaintiffs,
JOSEPH WYMAN
LISA WYMAN

**FILED BY FAX**
ALAMEDA COUNTY

April 18, 2018

CLERK OF
THE SUPERIOR COURT
By Burt Moskaira, Deputy

CASE NUMBER:
**RG18889478**

## SUPERIOR COURT OF THE STATE OF CAIFORNIA

## ALAMEDA COUNTY

| | |
|---|---|
| JOSEPH WYMAN, an individual, individually and on behalf of all those similarly situated; LISA WYMAN, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., a business entity; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: RG 18889478<br><br>**PLAINITFF'S COMPLEX CASE MANAGEMENT STATEMENT**<br><br>Date:    April 24, 2018<br>Time:    3:00 p.m.<br>Dept:    23<br>Judge:   Hon. Brad Seligman<br><br>Complaint Filed:  January 4, 2018<br>Trail Date:       None Set |

Pursuant to Cal. Rules of Court 3.750 and Local Rules of the Superior Court of California, County of Alameda 3.260(f), Plaintiff submits the following Case Management Statement.

## SUMMARY

In the case at hand, Defendants transformed Plaintiffs' fully amortizing loan into a balloon-payment loan without providing Plaintiffs notice of their newly acquired balloon-payment, as required by California law. Specifically, Defendant modified Plaintiffs' loan by creating a "New Principal Balance" and then breaking down the "New Principal Balance" into a "Secondary Principal Balance" and an "Interest Bearing Principal Balance". However, the loan agreement wholly fails to place Plaintiffs on notice that they would be responsible for a balloon

1

payment at loan maturity, as required by California law. Plaintiffs believe that this conduct is an unlawful business practice by Defendant warranting class action treatment.

Defendant's conduct, as alleged above, constitutes a violation of Civil Code § 2966. California Civil Code § 2966(d) provides, "[e]very note subject to the provisions of this section shall include the following statement: This note is subject to Section 2966 of the Civil Code, which provides that the holder of this note shall give written notice to the trustor, or his successor in interest, of prescribed information at least 90 and not more than 150 days before any balloon payment is due."

Pursuant to Cal. Civ. Code § 2966(b), Defendants' failure to provide Plaintiff with the required notice entitles Plaintiff to an extension of the due date for the balloon payment pursuant to the terms of his loan.

## PARTIES

Plaintiffs JOSEPH WYMAN and LISA WYMAN ("Plaintiffs") are adult residents of Alameda County. Plaintiffs are the owners of the Property located at 4903 Stoneridge Court, Oakland, CA 94605 (the "Property").

The Class are all identifiable, similarly situated persons living in California, whose loans were modified into balloon-payment loan agreements without being notified of the creation of a balloon payment by a loan modification agreement.

Wells Fargo Bank, N.A. is the sole identified Defendant.

## PROCEDURAL POSTURE

The case was deemed complex by the court on March 20, 2018 by Judge Brad Seligman. Defendants have filed a demurrer to the complaint with a hearing date of May 22, 2018 at 3:00 p.m. in Dept. 23.

(1) Plaintiff is not aware of any unserved parties at this time;

(2) Plaintiff is not aware of any unserved and/or unfiled cross-complaints;

(3) Plaintiff is not aware of any related actions pending in any jurisdiction and the potential for coordination or consolidation;

(4) No jurisdictional issues are anticipated;

(5) No discovery has yet been propounded, Plaintiff anticipates taking depositions and propounding written discovery, Plaintiff does not anticipate any discovery issues;

(6) There is a demurrer by Defendant Wells Fargo pending with a hearing set for May 22, 2018;

(7) No ADR proceedings have been ordered or initiated, Plaintiff is amenable to ADR;

(8) No severance of issues for trial is anticipated;

(9) Plaintiffs' Counsel has the following calendar conflicts with regards to trial setting: 2018: Jun 11-15; Jul 30 - Aug 10; Aug 16- 22; Aug. 27-31; Sept 21- 25; Oct. 18-25; Nov. 21-28; 2019: Jan. 14-18; Jan 28 - Feb 1; Feb. 7-14; Mar 25-29.

## PROPOSED SCHEDULE

Plaintiff requests that no trial be set at this point in the litigation: there is a demurrer hearing on May 22, 2018.  Plaintiff believes that setting a schedule for litigation will have to occur after the hearing on the demurrer and after Defendant answers the complaint as Plaintiff is unsure of what motion work is going to happen subsequent to the ruling on the demurrer.

DATED: April 17, 2018                        Respectfully Submitted,

                                             MELLEN LAW FIRM


                                             Allen T. Koster
                                             Attorney for Plaintiffs
                                             JOSEPH WYMAN
                                             LISA WYMAN

3

PLAINTIFF'S COMPLEX CASE MANAGEMENT STATEMENT

*Recd 4/23/18*
*269489*

Mellen Law Firm
Attn: Mellen, Matthew
One Embarcadero Center
Fifth Floor
San Francisco, CA   94111____

Sheppard Mullin Richter & Hampton
LLP
Attn:  Dineen, John C.
501 W Broadway
19th Floor
San Diego, CA   92101-3598

---

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Wyman

       Plaintiff/Petitioner(s)

   VS.

Wells Fargo Bank N.A.

       Defendant/Respondent(s)
      (Abbreviated Title)

No. RG18889478

NOTICE OF HEARING (AMENDED)

Case Management Conference on 04/24/2018 has
been vacated and rescheduled.

---

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above entitled action has been set for:
    Case Management Conference

You are hereby notified to appear at the following Court location on the date and
time noted below:

Case Management Conference:
DATE: 05/30/2018    TIME:  09:00 AM    DEPARTMENT:  21
LOCATION:  Administration Building, Fourth Floor
      1221 Oak Street, Oakland

Failure to appear, comply with local rules or provide a Case Management Conference statement
may result in sanctions under Local Rule 3.90.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing (CDH)
must be scheduled in the same department as that hearing.

If the information contained in this notice requires change or clarification, please call the
courtroom clerk for the department where the CDH is scheduled.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by
contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled
conference. Parties can make arrangements by calling 1-888-882-6878, or faxing a service request
form to 1-888-882-2946. This service is subject to charges by the vendor.

Dated: 04/18/2018    Chad Finke  Executive Officer / Clerk of the Superior Court

       By  *C. W.*

                 Deputy Clerk

---

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to
this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by
sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the
date stated below, in the United States mail at Alameda County, California, following standard court
practices.

Executed on 04/18/2018.

By

_____
Deputy Clerk

Mellen Law Firm
Attn: Mellen, Matthew
One Embarcadero Center
Fifth Floor
San Francisco, CA  94111____

Sheppard Mullin Richter & Hampton
LLP
Attn:  Dineen, John C.
501 W Broadway
19th Floor
San Diego, CA  92101-3598

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Wyman

Plaintiff/Petitioner(s)

VS.

Wells Fargo Bank N.A.

No. RG18889478

NOTICE OF HEARING (AMENDED)

Civil Law and Motion on 05/22/2018 has been
vacated and rescheduled.

Defendant/Respondent(s)
(Abbreviated Title)

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above entitled action has been set for:

Civil Law and Motion: Demurrer to Complaint

You are hereby notified to appear at the following Court location on the date and
time noted below:

Civil Law and Motion:
DATE: 06/01/2018    TIME: 10:00 AM    DEPARTMENT: 21
LOCATION:  Administration Building, Fourth Floor
            1221 Oak Street, Oakland

Dated: 04/18/2018            Chad Finke  Executive Officer / Clerk of the Superior Court

By

Deputy Clerk

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to
this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by
sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date
stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 04/18/2018.

By

Deputy Clerk

Exhibit A - Page 197

*filed 4/19/18*

1  Matthew D. Mellen (Bar No. 233350)
   MELLEN LAW FIRM
2  One Embarcadero Center, Fifth Floor
3  San Francisco, CA 94111
   Telephone:   (415) 315-1653
4  Facsimile:   (415) 276-1902

5  Attorney for Plaintiffs,
   JOSEPH WYMAN
6  LISA WYMAN

7
              **SUPERIOR COURT OF THE STATE OF CAIFORNIA**
8
                         **ALAMEDA COUNTY**
9

| | |
|---|---|
| JOSEPH WYMAN, an individual, individually and on behalf of all those similarly situated; LISA WYMAN, an individual | Case No.: RG 18889478 |
| Plaintiffs, | **PLAINITFF'S COMPLEX CASE MANAGEMENT STATEMENT** |
| vs. | Date:   April 24, 2018<br>Time:   3:00 p.m.<br>Dept:   23<br>Judge:  Hon. Brad Seligman |
| WELLS FARGO BANK, N.A., a business entity; and DOES 1 through 50, inclusive, | |
| Defendants. | Complaint Filed: January 4, 2018<br>Trail Date:       None Set |

18        Pursuant to Cal. Rules of Court 3.750 and Local Rules of the Superior Court of California,
19
20  County of Alameda 3.260(f). Plaintiff submits the following Case Management Statement.

                              **SUMMARY**
21
22        In the case at hand, Defendants transformed Plaintiffs' fully amortizing loan into a

balloon-payment loan without providing Plaintiffs notice of their newly acquired balloon-
23
24  payment, as required by California law. Specifically, Defendant modified Plaintiffs' loan by
25  creating a "New Principal Balance" and then breaking down the "New Principal Balance" into a
26  "Secondary Principal Balance" and an "Interest Bearing Principal Balance".  However, the loan
27  agreement wholly fails to place Plaintiffs on notice that they would be responsible for a balloon

28

                                      1

payment at loan maturity, as required by California law. Plaintiffs believe that this conduct is an unlawful business practice by Defendant warranting class action treatment.

Defendant's conduct, as alleged above, constitutes a violation of Civil Code § 2966. California Civil Code § 2966(d) provides, "[e]very note subject to the provisions of this section shall include the following statement: This note is subject to Section 2966 of the Civil Code, which provides that the holder of this note shall give written notice to the trustor, or his successor in interest, of prescribed information at least 90 and not more than 150 days before any balloon payment is due."

Pursuant to Cal. Civ. Code § 2966(b), Defendants' failure to provide Plaintiff with the required notice entitles Plaintiff to an extension of the due date for the balloon payment pursuant to the terms of his loan.

## PARTIES

Plaintiffs JOSEPH WYMAN and LISA WYMAN ("Plaintiffs") are adult residents of Alameda County. Plaintiffs are the owners of the Property located at 4903 Stoneridge Court, Oakland, CA 94605 (the "Property").

The Class are all identifiable, similarly situated persons living in California, whose loans were modified into balloon-payment loan agreements without being notified of the creation of a balloon payment by a loan modification agreement.

Wells Fargo Bank, N.A. is the sole identified Defendant.

## PROCEDURAL POSTURE

The case was deemed complex by the court on March 20, 2018 by Judge Brad Seligman. Defendants have filed a demurrer to the complaint with a hearing date of May 22, 2018 at 3:00 p.m. in Dept. 23.

(1) Plaintiff is not aware of any unserved parties at this time;

(2) Plaintiff is not aware of any unserved and/or unfiled cross-complaints;

(3) Plaintiff is not aware of any related actions pending in any jurisdiction and the potential for coordination or consolidation;

(4) No jurisdictional issues are anticipated;

2

(5) No discovery has yet been propounded, Plaintiff anticipates taking depositions and

    propounding written discovery, Plaintiff does not anticipate any discovery issues;

(6) There is a demurrer by Defendant Wells Fargo pending with a hearing set for May 22,

    2018;

(7) No ADR proceedings have been ordered or initiated, Plaintiff is amenable to ADR;

(8) No severance of issues for trial is anticipated;

(9) Plaintiffs' Counsel has the following calendar conflicts with regards to trial setting: 2018:

    Jun 11-15; Jul 30 - Aug 10; Aug 16- 22; Aug. 27-31; Sept 21- 25; Oct. 18-25; Nov. 21-28;

    2019: Jan. 14-18; Jan 28 - Feb 1; Feb. 7-14; Mar 25-29.

### PROPOSED SCHEDULE

    Plaintiff requests that no trial be set at this point in the litigation: there is a demurrer hearing on May 22, 2018.  Plaintiff believes that setting a schedule for litigation will have to occur after the hearing on the demurrer and after Defendant answers the complaint as Plaintiff is unsure of what motion work is going to happen subsequent to the ruling on the demurrer.

DATED: April 17, 2018             Respectfully Submitted,

                           MELLEN LAW FIRM

                           Allen T. Koster
                           Attorney for Plaintiffs
                           JOSEPH WYMAN
                           LISA WYMAN



1   Matthew Mellen (Bar No. 233350)
    MELLEN LAW FIRM
2   One Embarcadero Center, Fifth Floor
    San Francisco, CA 94111
3   Telephone: (415) 315-1653
    Facsimile: (415) 276-1902
4

5

6   Attorney for Plaintiff,
    JOSEPH WYMAN
7   LISA WYMAN

8

9
                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10
                          **COUNTY OF ALAMEDA**
11

12
    JOSEPH WYMAN, an individual, individually and        Case No.: RG 18889478
13  on behalf of all those similarly situated; LISA
    WYMAN, an individual                                 **PROOF OF SERVICE**
14

15            Plaintiffs,

16       vs.

17  WELLS FARGO BANK, N.A., a business entity;
    and DOES 1 through 50, inclusive,
18

19                    Defendants.

20

21

22

23

24

25

26

27

28

                                       1

1

2

### PROOF OF SERVICE

3

    I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am
employed in the City of San Francisco California; my business address is Mellen Law Firm, One
Embarcadero Center, Fifth Floor, San Francisco, CA 94111.

4

5

    On April 17, 2018 I served the following documents described as:

6

**PLAINITFF'S COMPLEX CASE MANAGEMENT STATEMENT**

7

8

on the interested parties in this action by placing true and correct copies thereof enclosed in a sealed
envelope with postage prepaid in the United States Mail at San Francisco, California, addressed as
follows:

9

10

Mark G. Rackers
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
501 West Broadway, 19th Floor
San Diego, California 92101

11

12

13

*Counsel for Defendant*

14

15

16

**[X] BY MAIL** – I am readily familiar with the firm's practice for the collection and processing
of correspondence for mailing with the United States Postal Service; it is deposited with the
United States Postal Service on the same date in the ordinary course of business at the business
address shown above; I am aware that on motion of the party served, service is presumed invalid
if the postal cancellation date or postage meter date is more than one day after the date of deposit
for mailing contained in this declaration.

17

18

19

20

    I declare under penalty of perjury under the laws of the State of California that the foregoing is
true and correct. Executed April 17, 2018 at San Francisco, California.

21

22

23

ALLEN T. KOSTER

24

25

26

27

28

2
PROOF OF SERVICE

1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
       A Limited Liability Partnership
2      Including Professional Corporations
    EDWARD D. VOGEL, Cal. Bar No. 110081
3   JOHN C. DINEEN, Cal. Bar No. 222095
    MARK G. RACKERS, Cal. Bar No. 254242
4   501 West Broadway, 19th Floor
    San Diego, California 92101-3598
5   Telephone:   619.338.6500
    Facsimile:   619.234.3815
6   E mail        evogel@sheppardmullin.com
                  jdineen@sheppardmullin.com
7                 mrackers@sheppardmullin.com

8   Attorneys for Defendant
    WELLS FARGO BANK, N.A.
9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                        COUNTY OF ALAMEDA

12

13  JOSEPH WYMAN, an individual,          Case No. RG18889478
    individually and on behalf of those
14  similarly situated; LISA WYMAN,       **PROOF OF SERVICE OF COURT'S
    an individual,                        (1) NOTICE OF REASSIGNMENT OF
15                                         JUDGE FOR ALL PURPOSES; (2)
                   Plaintiffs,            NOTICE OF HEARING (AMENDED)**
16
              v.                          Dept.:   21
17
    WELLS FARGO BANK, N.A., a business    The Hon. Winifred Y. Smith
18  entity; and DOES 1 through 50, inclusive,
                                          Administration Building
19                 Defendants.            1221 Oak St.
                                          Oakland, CA  94612
20
                                          Complaint Filed: January 4, 2018
21

22

23

24

25

26

27

28

                                                    Case No. RG18889478
    SMRH:485531522.1                                PROOF OF SERVICE

198                              Exhibit A - Page 203

1   *Wyman v. Wells Fargo Bank, N.A.*
    Alameda Superior Court, Case No. RG18889478
2

3                            PROOF OF SERVICE

4           STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

         At the time of service, I was over 18 years of age and **not a party to this action**. I
5 am employed in the County of San Diego, State of California. My business address is
  501 West Broadway, 19th Floor, San Diego, CA 92101-3598.
6

         On April 18, 2018, I served true copies of the following document(s) described as
7 **PROOF OF SERVICE OF COURT'S (1) NOTICE OF REASSIGNMENT OF
  JUDGE FOR ALL PURPOSES; (2) NOTICE OF HEARING (AMENDED)** on the
8 interested parties in this action as follows:

9                            **SERVICE LIST**

10   Matthew D. Mellen, Esq.            Attorneys for Plaintiffs Joseph and Lisa
    Mellen Law Firm                 Wyman and the purported class
11   One Embarcadero Center, Fifth Floor   Tel 415-315-1653; Fax 415-276-1902
    San Francisco. CA  94111           email@mellenlawfirm.com
12

13         **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed
  to the persons at the addresses listed in the Service List and placed the envelope for
14 collection and mailing, following our ordinary business practices. I am readily familiar
  with the firm's practice for collecting and processing correspondence for mailing. On the
15 same day that correspondence is placed for collection and mailing, it is deposited in the
  ordinary course of business with the United States Postal Service, in a sealed envelope
16 with postage fully prepaid. I am a resident or employed in the county where the mailing
  occurred.
17

         I declare under penalty of perjury under the laws of the State of California that the
18 foregoing is true and correct.

19     Executed on April 18, 2018, at San Diego, California.

20

21

22                                   Phyllis Chavez

23

24

25

26

27

28

Case No. RG18889478
PROOF OF SERVICE

SMRH:485531522.1

Matthew D. Mellen (Bar No. 233350)
Allen T. Koster (Bar No. 313562)
MELLEN LAW FIRM
One Embarcadero Center, Fifth Floor
San Francisco, CA 94111
Telephone:    (415) 315-1653
Facsimile:    (415) 276-1902

Attorney for Plaintiffs,
JOSEPH WYMAN
LISA WYMAN

## SUPERIOR COURT OF THE STATE OF CAIFORNIA

## ALAMEDA COUNTY

| | |
|---|---|
| JOSEPH WYMAN, an individual, individually and on behalf of all those similarly situated; LISA WYMAN, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., a business entity; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: RG18889478<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>1.  Violation of 15 U.S.C. 1692e<br><br>2.  Violation of 12 C.F.R. 1026.37<br><br>3.  Violation of Civil Code § 2966<br><br>4.  Violation of Cal. Business & Professions Code § 10241.4<br><br>**CLASS ACTION**<br>(CCP § 378)<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW PLAINTIFFS, JOSEPH WYMAN and LISA WYMAN, who allege as follows:

### PRELIMINARY ALLEGATIONS

1.    In the case at hand, Defendants transformed Plaintiffs' fully amortizing loan into a balloon-payment loan without providing Plaintiffs notice of their newly acquired balloon-payment, as required by both California and Federal law. Specifically, Defendant modified Plaintiffs' loan by creating a "New Principal Balance" and then breaking down the "New Principal Balance" into a "Secondary Principal Balance" and an "Interest Bearing Principal

1

1  Balance". However, the loan agreement wholly fails to place Plaintiffs on notice that they would

2  be responsible for a balloon payment at loan maturity.

3  2.    Plaintiffs believe that this conduct is an unlawful business practice by Defendant

4  warranting class action treatment. This lawsuit follows.

5                          **JURISDICTION AND VENUE**

6  3.    This is an action asserting violations of California State Law.  Plaintiffs are adult residents

7  of Alameda County and bring this action as a result of Defendant's misconduct relating to an

8  ongoing mortgage relationship with Defendant for the property located at 4903 Stoneridge Court,

9  Oakland, CA 94605.

10  4.    This court has personal jurisdiction over the parties as Defendants engage in business

11  within the State of California and in the City of Oakland and County of Alameda.

12  5.    Venue is proper in this Court because a substantial part of the events giving rise to the

13  claims herein occurred in the City of Oakland and County of Alameda.  Venue is therefore proper

14  in Alameda, County.

15                                **PARTIES**

16  6.    Plaintiffs JOSEPH WYMAN and LISA WYMAN ("Plaintiffs") are adult residents of

17  Alameda County. Plaintiffs are the owners of the Property located at 4903 Stoneridge Court,

18  Oakland, CA 94605 (the "Property").

19  7.    The term "the Class" includes Plaintiffs and all class members.

20  8.    Plaintiffs are individuals residing in California, as are all members of the Class.

21  9.    Plaintiffs and the Class are all identifiable, similarly situated persons whose loans were

22  modified into balloon-payment loan agreements without being notified of the creation of a

23  balloon payment by a loan modification agreement.

24  10.    Plaintiffs are informed and believe and thereon allege that Defendant Wells Fargo Bank,

25  N.A. (hereafter "Wells Fargo") , is diversified financial marketing and/or services company

26  engaged in residential mortgage banking and/or related businesses Plaintiffs are informed and

27  believe and thereon allege that Defendant Wells Fargo is the current owner and/or servicer of

28  Plaintiffs' loan for the property located at 4903 Stoneridge Court, Oakland, CA 94605 (the

2

1  "Property"). Plaintiffs are informed and believe and thereon allege that Defendant Wells Fargo

2  regularly conducts business in Alameda County, California.

3  11.     Plaintiffs are informed and believe and thereon allege that at all times herein mentioned,

4  each of the Defendants was acting as the agent, servant, employee, partner, co-conspirator, and/or

5  joint venture of each of the remaining Defendants, and was acting in concert with each remaining

6  Defendant in doing the things herein alleged, and, additionally has inherited any violations and/or

7  the liability of their predecessors-in-interest, and has also passed on liability to their successors-

8  in-interest, and at all times was acting within the course and scope of such agency, employment,

9  partnership, and/or concert of action.

10                             **STATEMENT OF FACTS**

11  12.     In or around August 2006, Plaintiffs purchased the Property, obtaining financing for the

12  purchase with Wells Fargo Bank, N.A.  To secure financing, Plaintiffs executed a Promissory

13  Note and Deed of Trust in favor of Defendant Wells Fargo.

14  13.     Plaintiffs' August 2006 loan was an Adjustable Rate mortgage loan, which fully

15  amortized over thirty years. The last scheduled payment for the loan was in September 1, 2036.

16  14.     In February 2012, Plaintiffs' received a loan modification.

17  15.     Section 1 of the loan modification provides:

18         As of FEBRUARY 9, 2012, the new amount payable under the Note and the

19         Security Instruments U.S. $722,770.50 ("New Principal Balance"), consisting of

20         the unpaid amount(s) loaned to Borrower by Lender plus any interest and other

21         amounts capitalized with this modification. $30,659.32 of the New Principal

22         Balance shall be deferred (the "Secondary Principal Balance") and I will not pay

23         interest or make monthly payments on this amount.

24  16.     Section 2 of the loan modification provides:

25         Borrower promises to pay U.S. $692,118.18 (the "Interest Bearing Principal

26         Balance"), plus interest, to the order of Lender. Interest will be charged on the

27         Interest-Bearing Principal Balance less any principal reduction due to payments

28         from Borrower at the yearly rate of 6.5000% from FEBRUARY 1, 2012. The

                                    3
              FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

1   interest rate Borrower will pay will change 60 months from the date of the Loan

2   Modification Agreement. Borrower promises to pay monthly payments of

3   INTEREST ONLY of U.S. $3,748.94, beginning MARCH 1, 2012 until

4   FEBRUARY 1, 2017.  Effective FEBRUARY 1, 2017, interest will be charged on

5   the Interest-Bearing Principal Balance from the Borrower at the yearly rate of

6   6.5000% and the Borrower promises to pay monthly payments of INTEREST

7   ONLY of U.S. $3,748.94, beginning on MARCH 1, 2017 until the EXPIRATION

8   OF THE INTEREST ONLY PERIOD on OCTOBER 1, 2016 (the "Conversion

9   Date"), which is in accordance with the Note.  As of the Conversion Date, the

10   original terms regarding the determination of the interest only rate and monthly

11   payment will change in accordance with the terms of the Note. Borrower will

12   continue to make monthly payments on the same day of each succeeding month

13   until principal and interest are paid in full, except that, if not sooner paid, the final

14   payment of principal and interest are payable on SEPTEMBER 1, 2036 (the

15   "Maturity Date").

16 17.   Section 3 of the Loan Modification Agreement provides:

17   Borrower promises to pay the Secondary Principal Balance without interest

18   thereon, to the order of the Lenders and any other amounts still owed under the

19   Note and Security Instrument by the earliest of the date I sell or transfer an

20   interest in the property or am in default.

21 18.   Section 4 of the Loan Modification Agreement provides:

22   If on the Maturity Date, Borrower still owes amounts under the Note and Security

23   Instrument, as amended by this Agreement, Borrower will pay these amounts in

24   full on the Maturity Date

25 19.   The loan modification agreement makes no other reference to the amounts due on the

26 maturity date.

27 **CLASS ACTION ALLEGATIONS**

28

20.    Plaintiffs bring this action on behalf of themselves and all others similarly situated.

Therefore, under California Code of Civil Procedure §378, Plaintiffs will ask the Court to certify

the following Class defined as: all persons residing in California in a contractual relationship with

Defendant, subject to California law, who received balloon payment loan modifications which in

which the loan modification agreement did not contain the requisite balloon payment notice

require by California Civil Code § 2966.

1.    This claim is particularly well-suited for class treatment because of the following:

    (a)    Predominance: The applicability of Civil Code §2966 is universal to balloon
payment mortgage loans under California law. Therefore, questions of law and fact
common to the Class predominate over the questions affecting only individual
members of the Class.

    (b)    Superiority: A class action is superior to other available means for the fair and
efficient adjudication of this dispute. Additionally, effective redress for each and
every class member against Defendant, in his or her own lawsuit, would be
difficult or unlikely because of the difficulty in finding or affording competent
counsel in this field of law and the cost of individual lawsuits would be
prohibitive. Even if individual class members could afford or justify the
prosecution of their separate claims, the court system may not be up to the task.
Individualized litigation may lead to incongruous and conflicting judgments
against Defendant.  To the contrary, a class action procedure involving all class
members, Defendant and the court present fewer management difficulties, and
provide the benefit of a single adjudication, economy of scale, and judicial
efficiency and fairness. Furthermore, Defendant is in possession of all the names
and contact information of individuals whose loans have been modified to include
balloon payments.

    (c)    Numerosity: Defendant services thousands of loans. Plaintiffs are informed and
believes that it is standard practice for Defendant to modify mortgage loans into
balloon payment loans without providing the requisite notice to borrowers. Thus,

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

the Class involved is so numerous that joinder of all members individually would be impracticable. The precise identities, numbers, and addresses of members of the Class are unknown to Plaintiffs, but are easily known to Defendant.

(d)    Commonality: There are questions of law and/or fact that are common to each member of the class. The common questions of law and fact are:

(1) Did Defendant include the notice require by Civil Code 2966 in the loan modification agreements it offered for loans which were modified to include balloon payments?

(e)    Typicality: Plaintiffs' claims are typical of the claims of the members of the Class because the class is defined as those individuals who suffered from the exact same conduct, namely the modification of a mortgage loan into a balloon payment mortgage loan, without proper notice of the balloon payment. This would be the identical allegation for every other Class member. Plaintiffs and all members of the Class have suffered a similar harm arising from Defendant's violations of law.

(f)    Adequacy of Representation: Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs have retained competent counsel for this class action and Plaintiffs intend to prosecute this action vigorously. Counsel for Plaintiffs is experienced in class action jurisprudence, has defended numerous wage and hour class actions successfully, and has successfully obtained certification and litigated to completion a prevailing wage class action. Likewise, counsel for Plaintiffs is extremely experience in mortgage litigation, having represented over one thousand individuals against their lenders in the last seven years. Plaintiffs and their counsel will fairly and adequately protect the interests of all of the members of the Class.

<div align="center">

**FIRST CAUSE OF ACTION**
**Violation of 15 U.S.C. 1692e**
(Against All Defendants)

</div>

<div align="center">6</div>

21.    Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

22.    Defendant's conduct, as alleged above, constitutes violations of the Fair Debt Collection Practices Act, codified in 15 U.S.C. § 1692, et seq.

23.    The debt that Defendant Wells Fargo seeks to collect from Plaintiffs is a consumer debt within the meaning of the FDCPA, and Defendant is a debt collector as defined therein.

24.    Defendant is liable for violations 15 U.S.C. § 1692e because it made communications which would be confusing and misleading to the least sophisticated debtor. The miscommunications in the modification include, but are not limited to, (1) the failure to include an explanation as to how the balloon payment was calculated, (2) the failure to provide an amortization schedule, and (3) the failure to inform Plaintiff about the existence of a balloon payment at maturity. In short, the modification agreement included false or misleading representations concerning the balloon payment, if any, that Plaintiff would owe at maturity.

25.    As a result of these misrepresentations, Plaintiffs are entitled to statutory damages and attorney's fees.

### SECOND CAUSE OF ACTION
#### Violation of 12 C.F.R. 1026.37
(Against All Defendants)

26.    Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

27.    Defendant's conduct, as alleged above, constitutes violations of 12 C.F.R. 1026.17. Defendant is a creditor under 12 C.F.R. 1026.2.

28.    Specifically, 12 CFR 1026.37 requires certain disclosures be provided to Plaintiffs regarding the existence of a balloon payment, including and amortization schedule, so that Plaintiffs are fully informed of the fact that the loan was not fully amortizing and required a balloon payment at maturity. Defendant's failure to include the required disclosures about the balloon payment resulted in Plaintiffs not being informed that there was a substantial balloon payment on their loans, which would have had a substantial effect on whether Plaintiffs would have accepted the modification.

7

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

29.     As a proximate result, Plaintiff has suffered, and will continue to suffer, substantial and irreparable injury. As a result, Plaintiff is entitled to statutory damages and actual damages. Further, Plaintiff is entitled to attorneys' fees.

//

### THRD CAUSE OF ACTION
#### Violation of Civil Code § 2966
(Against All Defendants)

30.     Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

31.     Defendant's conduct, as alleged above, constitutes a violation of Civil Code § 2966.

32.     California Civil Code § 2966(d) provides, "[e]very note subject to the provisions of this section shall include the following statement:

> This note is subject to Section 2966 of the Civil Code, which provides that the holder of this note shall give written notice to the trustor, or his successor in interest, of prescribed information at least 90 and not more than 150 days before any balloon payment is due.

33.     In August 2006, Plaintiffs purchased the Property, securing the purchase through financing obtained from Wells Fargo Bank. Plaintiffs' original loan was an adjustable rate mortgage loan, which fully amortized over thirty years.

34.     In February 2012, Defendant Wells Fargo modified Plaintiffs' loan. However, despite transforming Plaintiffs' loan into a balloon bearing loan agreement, Defendant failed to provide Plaintiffs the notice required by California law.

35.     In fact, to date, Defendant has never provided Plaintiffs the noticed required by Civil Code 2966.

36.     Pursuant to Cal. Civ. Code § 2966(b), Defendants' failure to provide Plaintiff with the required notice entitles Plaintiff to an extension of the due date for the balloon payment pursuant to the terms of his loan.

### FOURTH CAUSE OF ACTION
#### Violation of Cal. Business & Professions Code § 10241.4
(Against All Defendants)

8

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

37.     Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

38.     Defendant's violated Business and Professions Code § 10241.4 which provides that, prior to a borrower becoming obligated on a loan that provides for a balloon payment, notice must be given to the borrower as set forth in the statute in clear and conspicuous typeface and language.

39.     Defendant failed to include this language in the loan modification agreement, in fact, to date, Defendant has never provided Plaintiffs the noticed required, thus, entitling Plaintiffs to damages and attorney's fees.

## DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES

WHEREFORE, Plaintiffs JOSEPH WYMAN and LISA WYMAN demand a trial by jury.

Plaintiffs pray for judgment and order against Defendant, as follows:

1. That judgment is entered in Plaintiffs' favor and against Defendants, and each of them;

2. For an order requiring Defendant to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of the action;

3. For damages, disgorgement, and injunctive relief;

4. For compensatory and statutory damages, attorneys' fees, and costs according to proof at trial;

5. For exemplary damages in an amount sufficient to punish Defendant's wrongful conduct and deter future misconduct;

6. For such other and further relief as the Court may deem just and proper.

DATED: May 9, 2018                    Respectfully Submitted,

                                      MELLEN LAW FIRM


                                      Allen T. Koster
                                      Attorney for Plaintiffs
                                      JOSEPH WYMAN
                                      LISA WYMAN

10

FILED BY FAX
ALAMEDA COUNTY

May 09, 2018

CLERK OF
THE SUPERIOR COURT
By Alicia Espinoza, Deputy

CASE NUMBER:

**RG18889478**

1   Matthew Mellen (Bar No. 233350)
    Allen T. Koster (SBN: 313562)
2   MELLEN LAW FIRM
    One Embarcadero Center, Fifth Floor
3   San Francisco, CA 94111
    Telephone: (415) 315-1653
4   Facsimile: (415) 276-1902
5   email@mellenlawfirm.com

6   Attorney for Plaintiffs,
    JOSEPH WYMAN
7   LISA WYMAN

8

9

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                          **ALAMEDA COUNTY**

12

13   JOSEPH WYMAN, an individual, individually and    Case No.: RG18889478
     on behalf of all those similarly situated; LISA
14   WYMAN, an individual                             **PROOF OF SERVICE**

15                  Plaintiffs,

16          vs.

17

18   WELLS FARGO BANK, N.A., a business entity;
     and DOES 1 through 50, inclusive,
19
                    Defendants.
20

21

22

23

24

25

26

27

28

1
PROOF OF SERVICE

## PROOF OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action.  I am employed in the City of San Francisco California; my business address is Mellen Law Firm, One Embarcadero Center, Fifth Floor, San Francisco, CA 94111.

On May 9, 2018 I served the following documents described as:

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

on the interested parties in this action by placing true and correct copies thereof enclosed in a sealed envelope with postage prepaid in the United States Mail at San Francisco, California, addressed as follows:

Ed Vogel
Sheppard Mullin Richter & Hampton LLP
501 West Broadway, 19th Floor
San Diego, CA 92101-3598

*Counsel for Defendant Wells Fargo*

[X] BY MAIL – I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service; it is deposited with the United States Postal Service on the same date in the ordinary course of business at the business address shown above; I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing contained in this declaration.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed  May 9, 2018 at San Francisco, California.

ALLEN T. KOSTER

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Wyman <br>             Plaintiff/Petitioner(s) <br><br> VS. <br><br> Wells Fargo Bank N.A. <br>             Defendant/Respondent(s) <br> (Abbreviated Title) | No. RG18889478 <br><br> Case Management Order <br><br> Date: 05/30/2018 <br> Time: 09:00 AM <br> Dept: 21 <br> Judge: Robert McGuiness |

ORDER re: CASE MANAGEMENT

The Court has ordered the following after review of the case, including timely filed Case Management Statements, without a conference.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 06/01/2018 at 10:00 AM in Dept. 21.

NOTICES

The Court orders counsel and/or self-represented parties to obtain a copy of this order from the court's website  http://www.alameda.courts.ca.gov/domainweb.

Any delay in the trial, caused by non-compliance with any order contained herein, shall be the subject of sanctions pursuant to CCP 177.5.

Dated:  05/30/2018

                                       - facsimile <br> _____ <br> Judge Robert McGuiness

Exhibit A - Page 217

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Wyman<br>_Plaintiff/Petitioner(s)_<br><br>VS.<br><br>Wells Fargo Bank N.A.<br>_Defendant/Respondent(s)_<br>(Abbreviated Title) | No. RG18889478<br><br>Tentative Case Management Order |

This Tentative Case Management Order is issued by Judge Winifred Y. Smith on 05/29/2018.

ORDER re: CASE MANAGEMENT

The Court has ordered the following after review of the case, including timely filed Case Management Statements, without a conference.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 06/01/2018 at 10:00 AM in Dept. 21.

NOTICES

The Court orders counsel and/or self-represented parties to obtain a copy of this order from the court's website http://www.alameda.courts.ca.gov/domainweb.

Any delay in the trial, caused by non-compliance with any order contained herein, shall be the subject of sanctions pursuant to CCP 177.5.

Case Details - DomainWeb                                              Page 1 of 5

THE SUPERIOR COURT OF CALIFORNIA

## COUNTY OF ALAMEDA

Log In

# DomainWeb

*your resource for case filing information*

**Buy Credits**          **Checkout (0 item(s))**
0 Credit(s)

**DomainWeb**    **How This Site Works**    **FAQ**

---

## Case Details

**Case Number: RG18889478**        **Title: Wyman VS Wells Fargo Bank N.A.**

| Case Summary | Register of Action | Participants |
| Tentative Rulings | Future Hearings | Minutes |

| Date | Description | Pages | Price | Select ☐ |
|------|-------------|-------|-------|----------|
| 5/30/2018 | Case Management Conf Continuance 06/01/2018 10:00 AM D-21 | | | |
| 5/30/2018 | Case Management Conference Order Issued | 1 | | View |
| 5/30/2018 | Case Management Conference Commenced and Completed | 1 | | View |

Case Details - DomainWeb                                                    Page 2 of 5

| Date | Description | Pages | Price | | Select ☐ |
|------|-------------|-------|-------|--|----------|
| 5/30/2018 | TR - Demurrer to Complaint - Dropped | | | | |
| 5/9/2018 | Proof of Service Filed | 2 | $2.00 | Half Page Preview | ☐ |
| 5/9/2018 | First Amended Complaint Filed | 10 | $7.50 | Half Page Preview | ☐ |
| 4/18/2018 | Hearing Reset to Demurrer to Complaint 06/01/2018 10:00 AM D-21 | 1 | $1.00 | Half Page Preview | ☐ |
| 4/18/2018 | Hearing Reset to Case Management Conference 05/30/2018 09:00 AM D-21 | 2 | | View | |
| 4/18/2018 | Notice of Posting Jury Fees Filed | 1 | $1.00 | Half Page Preview | ☐ |
| 4/18/2018 | Case Management Statement of Joseph Wyman, Lisa Wyman Filed | 3 | $3.00 | Half Page Preview | ☐ |
| 4/16/2018 | Notice of Judicial Reassignment for All Purposes Issued | 5 | $5.00 | Half Page Preview | ☐ |
| 4/16/2018 | Declaration Re: Peremptory Challenge as | 1 | $1.00 | Half Page Preview | ☐ |

| Date | Description | Pages | Price | | Select ☐ |
|------|-------------|-------|-------|--|--------|
| | to Brad Seligman Granted | | | | |
| 4/12/2018 | Proof of Service Filed | 2 | $2.00 | Half Page Preview | ☐ |
| 4/12/2018 | Declaration Re: Peremptory Challenge as to Brad Seligman Filed for Wells Fargo Bank N.A. | 4 | $4.00 | Half Page Preview | ☐ |
| 4/10/2018 | Demurrer to Complaint Hearing Confirmed for 05/22/2018 03:00 PM D-23 | | | | |
| 4/10/2018 | Case Management Statement of Wells Fargo Bank N.A. Filed | 5 | $5.00 | Half Page Preview | ☐ |
| 4/10/2018 | Demurrer to Complaint Filed by Wells Fargo Bank N.A. | 142 | $40.00 | Half Page Preview | ☐ |
| 4/9/2018 | Order re Case Management Filed | 6 | $5.50 | Half Page Preview | ☐ |
| 3/20/2018 | Motion Granted | 3 | $3.00 | Half Page Preview | ☐ |
| 3/20/2018 | Complex Determination Hearing Commenced | 2 | $2.00 | Half Page Preview | ☐ |

| Date | Description | Pages | Price | | Select ☐ |
|------|-------------|-------|-------|--|----------|
| | and Completed | | | | |
| 3/12/2018 | Proof of Service on Complaint As to Wells Fargo Bank N.A. Filed | 1 | $1.00 | Half Page Preview | ☐ |
| 1/24/2018 | Case Management Conference 04/24/2018 03:00 PM D-23 | 2 | | View | |
| 1/24/2018 | Complex Determination Hearing 03/20/2018 03:00 PM D-23 | | | | |
| 1/4/2018 | Summons on Complaint Issued and Filed | 1 | $1.00 | Half Page Preview | ☐ |
| 1/4/2018 | Complaint Other Real Property Filed | 8 | $6.50 | Half Page Preview | ☐ |
| 1/4/2018 | Complex Designation Requested | | | | |
| 1/4/2018 | Civil Case Cover Sheet Filed for Joseph Wyman | 2 | $2.00 | Half Page Preview | ☐ |

Page: 1 of 1

**Add Item(s) to buy**

Back to Search Results